UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_05/04/2020__
```

------------------------------------------------------------X

ANDREW SNITZER and PAUL LIVANT,      :
individually and as representatives of a class of   :
similarly situated persons, on behalf of the     :
American Federation of Musicians and Employers'  :
Pension Plan,                    :
                          :
                  Plaintiffs,   :
                          :
          -against-             :
                          :
THE BOARD OF TRUSTEES OF THE         :
AMERICAN FEDERATION OF MUSICIANS     :
AND EMPLOYERS' PENSION FUND, THE     :          17-CV-5361 (VEC)
INVESTMENT COMMITTEE OF THE BOARD    :
OF TRUSTEES OF THE AMERICAN         :            ORDER
FEDERATION OF MUSICIANS AND         :
EMPLOYERS' PENSION FUND, RAYMOND M.  :
HAIR, JR., AUGUSTIN GAGLIARDI, GARY   :
MATTS, WILLIAM MORIARITY, BRIAN F.    :
ROOD, LAURA ROSS, VINCE TROMBETTA,   :
PHILLIP E. YAO, CHRISTOPHER J.G      :
BROCKMEYER, MICHAEL DEMARTINI,       :
ANDREA FINKELSTEIN, ELLIOT H. GREENE, :
ROBERT W. JOHNSON, ALAN H. RAPHAEL,  :
JEFFREY RUTHIZER, BILL THOMAS,        :
MAUREEN B. KILKELLY, and DOES NO. 1-6, :
WHOSE NAMES ARE CURRENTLY          :
UNKNOWN,                      :
                          :
                  Defendants.   :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

WHEREAS the Court has received emails and letters from Martin Stoner, a putative class

member who opposes preliminary approval of the parties' proposed settlement;

IT IS HEREBY ORDERED that the attached communications are filed on the docket to

preserve the public's right to access judicial documents.

**SO ORDERED.**

**Date:   May 4, 2020**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**

MARTIN STONER
900 West End Avenue
New York, New York 10025
(212) 866-5447

The Honorable Valerie E. Caproni
United States District Judge Southern District of New York 40
Foley Square, Room 240
New York, New York 10007
Email: CaproniNYSDChambers@nysd.uscourts.gov

Re: *Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians and Employers' Pension Fund, et al.,* 17-cv-5361 (VEC)

Dear Judge Caproni:

I write as a member of the class in the above-referenced matter who desires not only to participate in the telephone conference Your Honor has scheduled for tomorrow, Wednesday, April 8, 2020 at 2:00 Pm or, in the alternative, to potentially file a legal memorandum of law in support of my attached motion to intervene in this case, if my interests cannot be adequately represented at the hearing tomorrow.

As an initial matter, I am not currently represented by counsel but am in the process of searching for adequate representation. I apologize for not using the ECF method to communicate with the Court, but as I am currently unrepresented, I have no other option now to communicate quickly with the Court given the proximity of the Telephone conference tomorrow (Wednesday) at 2:00 PM. Thus, at this point, having no other recourse except to email Chambers directly, again I apologize to the Court profusely.

As this Court already is already aware, the Trustees filed an

The Honorable Valerie E. Caproni
Page 2
April 7, 2020

application for a reduction in benefits with the Department of
Treasury on December 29, 2019. The Treasury Department then
has 225 days to consider the Trustees Multiemployer Pension
Reform Act of 2014 ("MPRA") application before rendering a
decision. Currently, we are in the "Comments" period of the
MPRA application, with comments by Plan Participants due to
Treasury no later than April 20, 2020.

I argue that my interests as a member of the class are not
adequately represented by counsel. The Snitzer litigation and the
MPRA application have both facts and legal issues in common yet
both Counsel have refused to cooperate with my repeated interest
to apply to the Court to have relevant sealed discovery from the
Snitzer litigation released to the Treasury Department.

Writing to me via email on January 15, 2020, Attorney Steven
Schwarz stated, "With respect to the discovery information in
our *Snitzer* case that the defendant Trustees have designated as
confidential pursuant to the protective order…..the confidentiality
designation of the discovery materials produced by the Trustees
has been made by the defendant Trustees, and not Plaintiffs Snitzer
and Livant. If you think that information is relevant to the MPRA
process, then that is an issue that you can take up in connection
with the MPRA process or some other action you file in your own
case in a court of competent jurisdiction or with the appropriate
governmental agency." However, what Mr. Schwartz failed to
mention was that there is not an opt out provision in the settlement
and therefore I would not be permitted to litigate any common
issues or facts once the settlement was approved.

Counsel's position therefore directly conflicts with, negatively The

Honorable Valerie E. Caproni
Page 4
April 7, 2020

affects, and prejudices my interests as a member of the class re: the MPRA Application.  I am therefore planning to request during the telephone hearing tomorrow that the Court consider releasing all relevant sealed discovery to be made available to the Treasury Department to protect both the public interest, that  of other class members, as well as  my personal interests as a 70 year-old class member facing imminent threat of a 33% cut to my pension beginning on January 1, 2020.

While this Court may assume that I am coming rather late to the process, I have only had actual knowledge of the possible filing by the Trustees of a MPRA application for cuts in June 2019, and of the likely filing of an application for cuts in the time period July/August 2019.

I first wrote to Defendant's counsel prior to the filing of the Trustees application for cuts in December 2019 asking that they postpone the filing of their MPRA application, until after the trial and final conclusion of the Snitzer litigation. They refused and went ahead and filed anyway.

Subsequently, I asked both counsel if they would approve my filing a motion to intervene under Rule 24 (requesting intervention both as a right and permissively). Both counsel opposed my motion to intervene and asserted in their letters to me that there was absolutely no overlap between MPRA and the instant litigation (and Plaintiff's counsel suggested that I retain counsel).

However, all other counsel that I have approached to date have either been unwilling to take my case on an expenses-only basis (to file my motion to intervene) insisting that money and the

Honorable Valerie E. Caproni
Page 5
April 7, 2020

possibility of a  "big settlement" was their only interest from a
legal point of view and that the phrase "in the interests of justice"
or "in the public interest" meant "nothing" to them.

Therefore, for your perusal I am attaching below my preliminary
Motion to Intervene, and a letter dated January 6, 2020 from
Defendant's Counsel explaining that they would oppose my
request to unseal relevant discovery as it pertains to the Trustees
ongoing MPRA application.

Thank you very much for your courtesy.

Sincerely,

Martin Stoner

Enclosures
Preliminary Motion to intervene
Letter from Counsel Jani Rachelson to Martin Stoner

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK_____
                                          :

ANDREW SNITZER and PAUL LIVANT,  :
individually and as representatives of a class of
similarly situated persons, on behalf of the
American Federation of Musicians Pension Plan,

                       Plaintiffs,        :

                   v.             :

                                         :

THE BOARD OF TRUSTEES OF THE
AMERICAN FEDERATION OF MUSICIANS :
AND EMPLOYERS PENSION PLAN, et al.  :
                                       :

                    Defendant,      :

                                       :

MARTIN STONER,                 :

                                       :

                    Movant Seeking    :
                    Intervention       :
_____:

    MOTION TO INTERVENE
    PURSUANT TO FEDERAL
    RULE OF CIVIL
    PROCEDURE 24

    CIVIL ACTION
    No. 1:17-cv-05361-VEC

    JUDGE VALERIE E. CAPRONI

PLEASE TAKE NOTICE THAT Martin D. Stoner ("Martin Stoner") respectfully

moves this Court for an Order granting him leave to intervene in this case, as of right

under Federal Rule of Civil Procedure 24(a), Fed. R. Civ. P 24(a), or in the alternative, as

a matter of permissive intervention under Federal Rule of Civil Procedure 24(b), Fed. R.

Civ. P. 24(b). The matter will be set for a date and time to be determined by the Court.

Martin Stoner seeks intervention for the limited purpose of objecting to the

Proposed Settlement which plaintiffs Snitzer and Livant and defendant American

Federation of Musicians and Employers Pension Plan ("the Plan") have agreed to and

submitted to the Court for approval. If permitted to intervene, Martin Stoner will, without

delay, oppose the Proposed Settlement on the grounds that it is not fair, reasonable,

adequate, or in the public interest as explained more fully in the attached Memorandum

1

in Opposition to Proposed Settlement, attached hereto as required by Federal Rule of

Civil Procedure 24(c), Fed. R. Civ. P. 24(c).

 The grounds for intervention as a right by Martin Stoner are as follows, as

explained more fully in the Accompanying Memorandum of Law in Support of Motion to

Intervene ("Memorandum of Law"), filed herewith:

1. The Motion to intervene is timely.

2. Martin Stoner has an interest relating to the property or transaction that is the

   subject of the action.

3. Martin Stoner is so situated that disposing of the action may as a practical

   matter impair or impede his ability to protect his interest.

4. The existing parties do not adequately represent the interests of Martin Stoner.

   The grounds for permissive intervention by Martin Stoner are as follows, also

   as explained more fully in the accompanying Memorandum of Law:

 1. The Motion to Intervene is timely.

 2. Martin Stoner has a claim or defense that shares with the main action a

  common question of law or fact.

5. 3. The intervention of Martin Stoner will not unduly delay or prejudice the

   adjudication of the original parties' rights.

6.  4. If granted leave to intervene, Martin Stoner will significantly contribute to the

full, just, and equitable adjudication of the legal question presented.

 Martin Stoner also moves for such further and other relief as the Court may deem

just and proper.

 For the reasons set forth above and in the accompanying Memorandum of Law,

Martin Stoner requests that the Court grant the Motion to Intervene and allow him to

participate in the Fairness Hearing upon its scheduling by the Court, and, thereby, not

delay or disrupt the Court's current orders and pending proceedings.

Dated:  New York, New York                              Respectfully submitted,
            March ____, 2020

                                               _____
                                               Martin D. Stoner
                                               jilmar_10025@yahoo.com
                                               900 West End Avenue
                                               New York, New York 10025
                                               Tel. 212-866-5447



**Jani K. Rachelson, Partner**
Tel:    212.356.0221
Fax:   646.473.8221
Cell:   917.224.2812
jrachelson@cwsny.com
www.cwsny.com

900 Third Avenue, Suite 2100 • New York, NY 10022-4869

January 14, 2020

<u>By Email</u>

Martin Stoner
900 West End Avenue
New York, New York 10025

Re:     *Your January 8 Email Regarding a Motion to Intervene*

Dear Mr. Stoner:

We are in receipt of your email dated January 8, notifying us of your intent to file a motion to intervene in the *Snitzer* action if the Trustees do not withdraw the application for approval of a proposed suspension of benefits in accordance with the Multiemployer Pension Reform Act of 2014 ("MPRA"), which was filed on December 30, 2019.  Your letter states that you intend to ask the Court presiding over the *Snitzer* lawsuit to issue an injunction, requiring the Trustees to withdraw the application pending resolution of the litigation.  You copied plaintiffs' counsel in the *Snitzer* litigation on your email and, for this reason, they are copied here as well.

As I explained in my January 6 letter to you, the pendency of the *Snitzer* litigation did not serve as a basis for delaying the filing of the MPRA application, or withdrawing the same now, because the two proceedings are unrelated, making intervention and an injunction on the *Snitzer* lawsuit inappropriate.  As the Plan has explained in the Notice of Proposed Reduction posted to the Plan's website on January 7, 2020, the proper forum for objecting to the application is with Treasury by filing a comment at www.treasury.gov/mpra at the appropriate time.

Should you nevertheless decide to pursue intervention, the Trustee Defendants will oppose your motion and raise all available defenses, including the attempt to improperly expand the claims raised in the *Snitzer* litigation.

Sincerely yours,

Jani K. Rachelson

JKR:mmb
cc: Steven Schwartz, Esq. (by email)
    Robert J. Kriner, Esq. (by email)

MARTIN STONER
900 West End Avenue
New York, New York 10025
(212) 866-5447

April 8, 2020

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square, Room 240
New York, New York 10007
Email: CaproniNYSDChambers@nysd.uscourts.gov

Re: *Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians and Employers' Pension Fund, et al.,* 17-cv-5361 (VEC)

Dear Judge Caproni:

I write as a member of the class in opposition to Plaintiff's request for cancellation of the conference call today at 2:00 PM. It is only a matter of days before class members are required to submit their evidence in opposition to the MPRA application of the Trustees. Therefore, time is of the essence and a delay would prejudice my rights under both ERISA and MPRA.

Under MPRA, the Trustees are required to demonstrate for approval of their application for a reduction in benefits that they took all reasonable steps to avoid insolvency. I am alleging in my response to the Trustees application that by breaching their fiduciary duty to Plan Participants, the Trustees could not possibly have taken all reasonable steps to avoid insolvency and so the application must be rejected by Treasury. Therefore, much of the sealed evidence is relevant to my MPRA application. See below.

The Honorable Valerie E. Caproni
Page 2
April 7, 2020

Once again I apologize to the Court profusely for contacting
Chambers directly.

Sincerely,

Martin Stoner
Cc via email to all counsel

**DEADLINE**
**Trustees Of Musicians Union Pension Plan, Claiming "Victory", Agree**
**To $26.8 Million Settlement Of Suit That Accused Them Of Making**
**Risky Investments**
By David Robb  *Labor Editor*
March 30, 2020 10:55am

Trustees of the American Federation of Musicians and Employers' Pension
Fund have agreed to a $26.85 million settlement of a class action lawsuit
that claimed they made a series of risky investments that endangered the
pensions of thousands of musicians.

"The settlement is a victory for the Trustees, as the plaintiffs failed to prove
their claims that the defendants had engaged in 'risky' investment decision-
making," the trustees said in announcing the settlement. "The Trustees
settled because at least $17 million in proceeds from the $26.85 million
settlement would be paid to the Plan by the Plan's fiduciary insurers. None
of the current or former Trustees who are defendants are paying a dime. The
alternative was to drag on this sideshow and allow the available insurance to
be further consumed by legal fees and expenses. Recall that the plaintiffs
originally sought recovery of investment losses that they estimated to be in
the hundreds of millions of dollars. The plaintiffs' lawyers can pocket the
balance of the settlement proceeds if it's approved—about $10 million. They
are the ones who profited by using their unsupported mudslinging to push
this case to the eve of trial before agreeing to settle for much less than they
originally demanded."

Re: American Federation of Musicians and Employers Pension Fund

martin stoner <jilmar_10025@yahoo.com>

Mon 4/20/2020 12:34 PM

**To:** Caproni NYSD chambers <CaproniNYSDchambers@nysd.uscourts.gov>; Steven A. Schwartz <steveschwartz@chimicles.com>
**Cc:** Myron Rumeld <mrumeld@proskauer.com>; Jani K. Rachelson <jrachelson@cwsny.com>; Robert J. Kriner <rjk@chimicles.com>

📎 1 attachments (931 KB)

Ray Hair comments February 2015.pdf;

## Dear Judge Caproni:

I write as a member of the class in the above-referenced matter to voice my formal opposition to the preliminary approval of the settlement agreement in the above-referenced matter. I have a range of concerns including, 1) that the settlement does not fall within the range of typical settlement remedies based upon the facts known at the time of the settlement, 2). The proceedings in this case were not conducted at arms length as required under Rule 23(b)(1), 3.) there were several conflicts of interest that should first be reviewed by the Court before the settlement receives preliminary approval, and 4.) the attorneys for Plaintiffs did not adequately represent the interests of the class adequately, and 5. ) the settlement does not adequately address the Trustees recent statement that despite the proposed settlement, the Trustees expect to continue with "business as usual" when it comes to how they invest Plan Assets. . Therefore, even preliminary approval should be withheld until the Court can more appropriately hear full argument on these issues.

As an initial matter, Bruce Simon of the law firm Cohen Weiss & Simon was formally appointed counsel to Local 802 AF of M in 2010 after Pension Fund Trustee, Tino Gagliardi, was appointed President of Local 802 AF of M in New York City. Since the Snitzer complaint covers part of the time that Cohen Weiss was counsel for the Union, how does that not conflict with Cohen's Weiss current representation of Defendant, including Trustee Tino Gagliardi and the rest of the AFM Board of Trustees?

As for Defendants, one of their attorneys was removed as Plan Counsel after he was deposed by Plaintiffs Counsel, yet Proskauer Rose has

continued to represent the Plan in this litigation.

Writing in a Memo Endorsement dated 11/30/2017, Judge Valery J. Caproni wrote, "While the Court will permit these redactions at this stage, the parties are forewarned that if the allegations concerning the advice of Plan Counsel become critical to the Court's reasoning it is likely that the balance of interests will require unsealing of the information contained in these paragraphs."

I therefore argue that the time is ripe for these documents to be unsealed and  provided to members of the class  by Proskauer directly as they bear on the Joint Motion for Preliminary Approval and whether Defendant's Counsel had a conflict of interest and was using its influence as Plan Counsel to protect its firm from allegations of possible misconduct and/or possible wrongdoing on the part  of one of its own attorneys. These conflicts of interest are serious concerns that all class members share cited above and are not easily resolved in any way, shape, or form. The full facts re: these potential conflicts of interests should have been revealed to class members in the Joint Motion for Preliminary Approval. These facts are damaging to the transparency of the settlement and smack of collusion between the Parties for the benefit of their own respective firm interests rather than for the benefit of the best interests of the Class.


Similarly, I argue that at the time that the Snitzer complaint was filed in mid-2017, there was already rising concern among class members, including Plaintiffs Snitzer and Livant, that our Pension Fund was in deep trouble due to the risky and illiquid investments of the Board of Trustees and its Investment Committee. In late December 2014, Congress passed the Multiemployer Pension Reform Act which permitted Plan Trustees for the first time to reduce once-guaranteed pension benefits  of Plan Participants. Additionally, with regard to our own Trustees, two of our members of the Pension Board of Trustees, Christopher Brockmeyer, and William Moriarity worked with the Washington DC lobbying group NCCMP to advocate for, write some of the language, and eventually pass the current bill that now mandates cuts to all class members. Obviously, while this information was at first deliberately kept from Plan Participants in 2014, by 2017 it had already leaked out and was well known by class members including members

Snitzer and Livant. Therefore, Class Counsel failed to represent the important interests of class members by addressing the breach of fiduciary duty with respect to MPRA which continued through out the time period covered in the Snitzer litigation but is not mentioned even once in Court documents, and is not a cause of action with remedies sought on its behalf. This allegation as well must be addressed by both Counsels.

This also smacks of obvious collusion between Counsels and raises obvious questions why it was not in the interests of the class to litigate this issue which occurred in the same period as other allegations referenced in the Snitzer complaint. There is no explanation for this huge omission in the Joint Motion for Approval. Counsel cannot simply stick its head in the sand like an ostrich and pretend that these issues will simply go away. They won't and I am raising them respectfully for the Court's consideration.

Finally, since I do not want to bore the Court here with further lengthy recitals, I ask that the Court pause before deciding on Preliminary Approval in order for these facts to be fully discussed and more importantly revealed thru release of additional sealed documents in this litigation.

Thank you very much for your kind consideration.

Sincerely,

Martin Stoner

Corrected version: American Federation of Musicians and Employers Pension Fund

martin stoner <jilmar_10025@yahoo.com>

Tue 4/21/2020 1:54 PM

**To:** Caproni NYSD chambers <CaproniNYSDchambers@nysd.uscourts.gov>
**Cc:** Robert J. Kriner <rjk@chimicles.com>; Steven A. Schwartz <steveschwartz@chimicles.com>; Jani K. Rachelson <jrachelson@cwsny.com>; Myron Rumeld <mrumeld@proskauer.com>

📎 1 attachments (931 KB)
Ray Hair comments February 2015.pdf;

Dear Judge Caproni,

PS:  I forgot to mention that in my prior email there was a document attached that proves that as early as February 2015, well before the filing of the Snitzer complaint, information about MPRA was already being discussed in Union newsletters like Local 802 New York City's newsletter called "Allegro". In the February 2015 Allegro article, Plan Trustee Ray Hair, who was also then President of Local 802 made statements that were both misleading and false and may have constituted a cause of action for a further  breach of fiduciary duty by the Plan Trustees Fiduciary. Here is the relevant part of what Trustee Ray Hair said in February 2015,
"I want to re-iterate that the AFM-EPF is not severely underfunded under this new law, is not projected to become insolvent, and the new law does not authorize benefit reductions to the AFM-EPF". In a note that precedes the article, Ray Hair also notes "the avalanche of questions received about new pension fund legislation and its impact upon AFM-EPF." For Class Counsel then to have deliberately ignored this obvious class issue in this litigation, is a deliberate move that is not even mentioned in the Joint Motion and MOL. While I respect the Court's desire to litigate only the issues that are raised in the complaint, the very issue of why this obvious breach of fiduciary duty is not addressed at all in the complaint remains a mystery. Perhaps that is where the collusion between the parties also manifests itself?

Similarly, if you look at Exhibit 5 of the Plaintiff's Motion for Preliminary Approval (please see document no. 139, pages 62-84),  you will see that the asset allocation as of December 31, 2019 is still exactly the same as it was in 2017 and 2018 (please see specifically document 139 page 79). It doesn't look like the Snitzer litigation has had any tangible effect so far on the Trustees risky and illiquid investment policies and this settlement won't do enough to alter that course in any event. Thus, the remedies provided are not sufficient given the convincing evidence available at the time.

Therefore, as part of my request for a pause before deciding, I also ask that if the evidence demonstrates that the Trustees willfully hid  and conspired and colluded to hide their role in the passage of MPRA as well as the real possibilities for future cuts  to class members pensions, that the Court should refer this matter to the Assistant District Attorney for the Southern District of New York for possible prosecution of the Trustees, their agents, and assigns for criminal conspiracy to commit fraud.

Once again, thank you for your courtesy.

Sincerely,

Martin Stoner
Enclosures: copy of document previously enclosed in email to Hon. Valery J. Caproni dated 04/20/2020

# THE PRESIDENT'S MESSAGE







## New Pension Law Is a Plus for Defined Benefit Plans

*by Ray Hair, AFM International President*

*Note: Although I promised to provide further details this month concerning newly concluded Federation agreements in Symphonic Media and Motion Picture-TV Film, I will defer until March in order to clarify an avalanche of questions received about new pension fund legislation and its impact upon AFM-EPF. Thanks to Fund Counsel Anne Mayerson for her assistance in preparing this month's column.*

In December, Congress passed the Multiemployer Pension Reform Act of 2014. This legislation is not currently relevant for the American Federation of Musicians & Employers' Pension Fund (AFM-EPF) because it applies only to severely underfunded plans. The AFM-EPF is not severely underfunded.

Contrary to what you might have heard, the new legislation will help to protect the pensions of millions of Americans. Here's why:

### Defined Benefit Plans: Basic Principles

There are two basic types of retirement plans. Under a "defined contribution" plan, the employee contributes (and/or allows the employees to contribute out of wages) a fixed amount of money to each employee's plan account. That money is then invested. When the employee retires, he or she gets whatever is in the account; that is, the fixed contribution, plus investment earnings or minus investment losses.

By contrast, under a "defined benefit" plan, the employer contributes an amount of money required to pay a fixed benefit—the AFM-EPF fixed benefit provides a specified dollar amount per $100 of contributions. The age 65 benefit that has been earned at any particular point during an employee's career generally cannot be reduced by the plan or by the employer.

### The Role of the Pension Benefit Guaranty Corporation

Federal law contains detailed rules to ensure that defined benefit plans have enough money over time to pay all of the benefits that have been earned. However, certain plans in extreme situations become insolvent because they are not able to satisfy these rules. In that case, the plan relies on the Pension Benefit Guaranty Corporation (PBGC) to pay a portion of the benefits.

PBGC is a federal government agency

that serves as an insurance company for defined benefit plans. The PBGC is not funded by tax revenues, but by premiums paid to it by defined benefit plans; in return, the PBGC guarantees a portion of the benefits earned under each plan (the maximum guarantee for a participant in a multiemployer plan is just under $13,000 a year).

The guarantee can be only provided, however, so long as the PBGC remains a viable entity. Unfortunately, the PBGC is on shaky financial ground. Two recent studies, one by the PBGC itself and one by the federal government's General Accounting Office, conclude that the PBGC is likely to run out of money in the near future (the next 10-20 years) and that the insolvency of just two severely underfunded plans would almost entirely deplete its resources. PBGC says funds sponsored by the Electrical Workers and the Teamsters are most at risk.

### Benefit Reductions Under the Recent Pension Legislation

The primary goal of the recent pension legislation was to give severely underfunded plans—*which AFM-EPF is not*—an opportunity to recover from the lingering effects of the economic turbulence of recent years, rather than letting them become insolvent and thereby jeopardizing the viability of the PBGC. It's estimated that, while at least 90% of multiemployer defined benefit pension plans are on solid financial footing, about 5-10% of such plans, covering as many as 1.5 million participants, are severely underfunded. The legislation permits those plans to reduce benefits in certain circumstances, but in no event to a level that is less than 110% of the PBGC guarantee.

Specifically, a severely underfunded multiemployer defined benefit plan may reduce its benefits only if it applies to the government, and the government finds that:

- the plan is in "critical and declining status." That it is, not only in "critical" status under the 2006 Pension Protection

Act, but it also is projected to become insolvent during the current plan year or any of the next 14 plan years (or next 19 plan years, if the plan is less than 80% funded or its nonworking participants outnumber working participants by a ratio of more than two to one), *and*

- the plan's board of trustees has determined that, even though all reasonable measures to avoid insolvency have been taken, the plan is still projected to become insolvent unless benefits are suspended, *and*
- the plan's actuary has certified that the reductions are projected to allow the plan to avoid insolvency, *and*
- a majority of all participants and beneficiaries of the plan have not voted to reject the reduction of benefits (the government can override a negative vote in some circumstances).

Benefits may not be reduced for participants on a disability pension or for those age 80 and older. (Restrictions on reductions also apply to participants between age 75 and 80.)

I want to reiterate that the AFM-EPF is not severely underfunded under this new law, is not projected to become insolvent, and the new law does not authorize benefit reductions to the AFM-EPF. But by protecting PBGC's solvency, the new law is good for AFM-EPF participants, along with participants in the other multiemployer pension plans that are not severely underfunded.

No one I know thinks that reducing pension benefits is a good thing. But ignoring the effect that the economic struggles of a few multiemployer defined benefit plans could have on participants in *all* multiemployer defined benefit plans is a worse thing. Like many other labor organizations and multiemployer pension funds, the AFM and AFM-EPF applaud the recent pension legislation as the only opportunity for the recovery of severely underfunded plans and the preservation of the PBGC's benefit guarantees for all participants in multiemployer defined benefit plans.

RCE FOR
F MUSICIANS,
ORGANIZATION

est
our
Future
panding
of Speech
erican
cians

TEMPO, PCC,
: segregated political
help Members of
rt AFM issues remain
ttributions to TEMPO.
ctible. Your decision
luntary and is NOT a
bership in the union.

nformation,
contact:

gislative
l Director
) Pollard

274-4756
mail:
@afm.org

2  February 2015



**TASKFORCE FOR
EMPLOYMENT OF MUSICIANS,
PROMOTIONAL ORGANIZATION**

Invest
in Your
Union's Future
While Expanding
Freedom of Speech
for American
Musicians



Contributions to TEMPO, PCC,
the AFM's separate segregated political
fund are used to help Members of
Congress who support AFM issues remain
in public office. Contributions to TEMPO
are NOT tax deductible. Your decision
to give is strictly voluntary and is NOT a
requirement of membership in the union.

**For more information,
please contact:
AFM Legislative
Political Director
Alfonso Pollard**

at: 202-274-4756
or email:
apollard@afm.org



# THE PRESIDENT'S MESSAGE

## New Pension Law Is a Plus for Defined

*by Ray Hair, AFM International President*

*Note: Although I promised to provide further details this month concerning agreements in Symphonic Media and Motion Picture-TV Film, I will defer unt avalanche of questions received about new pension fund legislation and its im; to Fund Counsel Anne Mayerson for her assistance in preparing this month's*

In December, Congress passed the Multiemployer Pension Reform Act of 2014. This legislation is not currently relevant for the American Federation of Musicians & Employers' Pension Fund (AFM-EPF) because it applies only to severely underfunded plans. The AFM-EPF *is not severely underfunded.*

Contrary to what you might have heard, the new legislation will help to protect the pensions of millions of Americans. Here's why:

### Defined Benefit Plans: Basic Principles

There are two basic types of retirement plans. Under a "defined contribution" plan, the employer contributes (and/or allows the employees to contribute out of wages) a fixed amount of money to each employee's plan account. That money is then invested. When the employee retires, he or she gets whatever is in the account; that is, the fixed contribution, plus investment earnings or minus investment losses.

By contrast, under a "defined benefit" plan, the employer contributes an amount of money required to pay a fixed benefit—the AFM-EPF fixed benefit provides a specified dollar amount per $100 of contributions. The age 65 benefit that has been earned at any particular point during an employee's career generally cannot be reduced by the plan or by the employer.

### The Role of the Pension Benefit Guaranty Corporation

Federal law contains detailed rules to ensure that defined benefit plans have enough money over time to pay all of the benefits that have been earned. However, certain plans in extreme situations become insolvent because they are not able to satisfy these rules. In that case, the plan relies on the Pension Benefit Guaranty Corporation (PBGC) to pay a portion of the benefits.

PBGC is a federal government agency

that serves as an insurance company for defined benefit plans. The PBGC is not funded by tax revenues, but by premiums paid to it by defined benefit plans; in return, the PBGC guarantees a portion of the benefits earned under each plan (the maximum guarantee for a participant in a multiemployer plan is just under $13,000 a year).

The guarantee can be only provided, however, so long as the PBGC remains a viable entity. Unfortunately, the PBGC is on shaky financial ground. Two recent studies, one by the PBGC itself and one by the federal government's General Accounting Office, conclude that the PBGC is likely to run out of money in the near future (the next 10-20 years) and that the insolvency of just two severely underfunded plans would almost entirely deplete its resources. PBGC says funds sponsored by the Electrical Workers and the Teamsters are most at risk.

### Benefit Reductions Under the Recent Pension Legislation

The primary goal of the recent pension legislation was to give severely underfunded plans—*which AFM-EPF is not*—an opportunity to recover from the lingering effects of the economic turbulence of recent years, rather than letting them become insolvent and thereby jeopardizing the viability of the PBGC. It's estimated that, while at least 90% of multiemployer defined benefit pension plans are on solid financial footing, about 5-10% of such plans, covering as many as 1.5 million participants, are severely underfunded. The legislation permits those plans to reduce benefits in certain circumstances, but in no event to a level that is less than 110% of the PBGC guarantee.

Specifically, a severely underfunded multiemployer defined benefit plan may reduce its benefits only if it applies to the government, and the government finds that:

• the plan is in "critical and declining status." That it is, not only in "critical" status under the 2006 Pension Protection

Act, but it
insolvent d
or any of th
19 plan yea
funded or
outnumber
ratio of mo
• the plan's b
mined that
measures
been taken
to become
suspended,
• the plan's a
reductions
plan to avoi
• a majority
eficiaries c
to reject th
governmen
in some cir

Benefits may
pants on a di
age 80 and ol
tions also app
age 75 and 80

I want to reit
not severely u
law, is not pro
and the new l
efit reductior
protecting PB
is good for A
with particip
ployer pensio
underfunded

No one I kno
sion benefits i
the effect that
few multiemp
could have o
employer defi
thing. Like ma
and multiem
AFM and AF
pension legisla
for the recove
plans and the
benefit guara
multiemploye

MARTIN STONER
900 West End Avenue
New York, New York 10025
(212) 866-5447

Aril 17, 2020

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square, Room 240
New York, New York 10007
Email: CaproniNYSDChambers@nysd.uscourts.gov

Re: *Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians and Employers' Pension Fund, et al.,* 17-cv-5361 (VEC)

Dear Judge Caproni:

I write as a member of the class in the above-referenced matter to oppose preliminary approval of the settlement agreement in the above-referenced matter due to the fact that preliminary approval would:

. 3.1(e) Preliminarily enjoin Class Members and the Plan from commencing, prosecuting, or pursuing any claim or complaint that arises out of or relates in any way to the Released Claims;

As an initial matter, you are already familiar with the fact that I am not currently represented by counsel but am in the process of searching for adequate representation. To this end, I am looking to find counsel to sue the Trustees of the Plan for breach of fiduciary duty from 2017-present (i.e., post –Snitzer), arising out of the

Hon. Valery J. Caproni
Page 2
April 17, 2020

Trustees continued misrepresentation of the Plan's financial status
and policy of investing in highly illiquid and risky investments
costing millions of dollars in investment fees each year.  My
complaint would likely allege both a continuing violation and a
pattern and practice of risky investments and false, deceptive, and
fraudulent communication with Plan Participants dating back more
than a decade and include information about past illegal conduct
by the Trustees, their agents and assigns to demonstrate a pattern
and practice and continuing violation.

The fact that the Trustees recently sent an email notice to all class
members describing the settlement as "a victory" for the Trustees,
rejoicing that they did nothing wrong, and that they would
continue their same investment strategy and behavior makes me
concerned that this settlement will not reasonably and fairly protect
class members from future breaches of fiduciary duty by these
same Trustees, and that litigation to remove them is likely the only
way for class members to secure a fiscally-sound retirement fund.

Thus, approval by this Court of a preliminary settlement should be
withheld first until the Trustees issue a formal apology to the Court,
to the Plaintiffs, to all class members, and to the press who
reported their misleading statements, that the statements contained
in their email were false, deceptive, misleading, and do not
accurately represent the Trustees attitude moving forward if the
settlement is to be approved.

Secondly, I respectfully ask the Court to consider if preliminary
approval of the settlement agreement would deprive me and other
class members who may join me in this fight of our constitutional
due process rights to pursue our own litigation as broadly

Hon. Valery J. Caproni
Page 3
April 17, 2020

described above due to the non-opt out nature of this settlement.

Thank you very much for your courtesy.

Sincerely,

Martin Stoner

cc. via email to all  Counsel

MARTIN STONER
900 West End Avenue
New York, New York 10025
(212) 866-5447

April 27, 2020

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square, Room 240
New York, New York 10007
Email: CaproniNYSDChambers@nysd.uscourts.gov

Re: *Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians and Employers' Pension Fund, et al.,* 17-cv-5361 (VEC)

Dear Judge Caproni:

I write as a putative class member and Objector in the above-referenced matter to respond to the pending motion to approve the preliminary settlement. I argue against preliminary approval as the Court is "not likely to be able to" give final approval to the proposed settlement agreement.

> Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether "giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i–ii) (emphasis added). *In Re Payment Card Litigation,* MDL No. 1720, filed 09/18/18, Eastern District of New York.

According to *City of Detroit v. Grinell Corportion*, 495 F.2d 448 (2d Cir. 1974), "The rule in this Circuit provides that an approval of a class action settlement offer by a lower court must be overturned if that court ….failed to allow objectors to develop on the record facts going to the propriety of the settlement." *Newman v., Stein* 464 F.2d at 692.

The Honorable Valerie E. Caproni
Page 2
April 27, 2020

## PRELIMINARY STATEMENT

The facts in this case demonstrate that there was very little risk in litigating this case as Defendant's breach of fiduciary duty was already clearly noted by this Court in calling Defendant's investment choices "exceedingly risky". The law is clear that:

> A fiduciary's process must bear the marks of loyalty, skill, and diligence expected of an expert in the field. It is not enough to avoid misconduct, kickback schemes, and bad-faith dealings. The law expects more than good intentions. "[A] pure heart and an empty head are not enough." *DiFelice v. U.S. Airways, Inc.,* 497 F.3d 410, 418 (4th Cir. 2007) (quoting *Donovan v. Cunningham,* 716 F.2d 1455, 1467 (5th Cir. 1983)). *Sweda v. University of Pennsylvania*, 923 F.3d 320 (2019).

Even where parties have reached agreement in the class settlement context, courts need not grant preliminary approval. To that end, many courts deny preliminary approval " 'without prejudice', providing guidance to the parties as to the problems that concern them and giving the parties the opportunity to amend the agreement." *See, e.g., Patterson v. Premier Construction Co. Inc.*, No. 15-CV-00662, 2017 WL122986, at *2 (E.D.N.Y. Jan. 12, 2007); *Oladapo v. Smart One Energy, LLC*, No. 14-CV-7117,2017 WL 5956907, at *16 (S.D.N.Y. Nov. 9, 2017), *report and recommendation adopted*, No.14-CV-7117, 2017 WL 5956770 (S.D.N.Y. Nov. 30, 2017).

Previously, in my communications to this Court, I have expressed skepticism with regard to certain conflicts of interest and other relevant issues with regard to Defendant's Counsel. Now I wish to highlight issues I have with the conduct of this case by Plaintiff's Counsel, which, in combination with conflicts of interest in Defendant's representation outlined previously by this Objector, make it likely that the proposed settlement will not be approved by this Court.

The Honorable Valerie E. Caproni

Page 3
April 27, 2020

## I. THE PROPOSED SETTLEMENT IS NOT FAIR, REASONABLE AND/OR ADEQUATE

As an initial matter, I argue that in light of the harm suffered by members of the class and the extent of Defendant's wrongdoing, the proposed settlement is not fair, reasonable, and/or adequate. As of the settlement date, the Fund continues to remain insufficiently funded for many years to come. This settlement does nothing to alleviate that substantial Plan deficit, and the proper asset allocation as outlined in the Governance Provisions alone will not restore the fund to solvency.

More specifically, class members are not receiving enough relief for the injury that they've suffered and Plaintiffs' attorneys are being paid too much. "[T]he essential requisite of due process as to absent members of class [actions] is not notice, but the adequacy of representation of their interests by [the] named parties." *Eisen v. Carlisle*, 391 F.2d 555 (2d Cir. 1968).

Mr. Schwartz goes to great length in his Declaration in Support of his Motion for Preliminary Approval to boast of his legal accomplishments. In ¶ 22 of his Declaration, for example, Mr. Schwartz writes, "Class Counsel concur with our experts' view that the Settlement is a "real win" and Governance Provisions will provide an "excellent protection infrastructure" that collectively, are among the most stringent …."

I disagree. This settlement does not give back even one tenth of the roughly three hundred million dollars of damages that were asked for. Moreover, a full third of what was agreed upon goes to legal fees to Plaintiff's Counsel. Not one trustee was personally punished for his/her breach of fiduciary duty, either by being removed as a Trustee and/or having to pay a penny of his/her own money back to class members defrauded of their rightful contributions. The Settlement fails to hold the Trustees fully accountable for their willful, deliberate, and egregious destruction of the Plan's assets. If this is the extent of the knowledge of Plaintiff's experts, then I do not need to wait to see their expert reports published on the settlement website to conclude that they have already lost all credibility with me.
Honorable Valerie E. Caproni

Page 4
April 27, 2020

Additionally, in spite of the Trustees now being "aware" of what their fiduciary requirements are, that has not stopped them from being invested in the same 80% range of risky and illiquid assets, according to the Plan's December 30, 2019 IRS Form 5500. The Governance Provisions in the Proposed Settlement, in which the Trustees retain the ultimate power to fire the proposed Fiduciary and the Fiduciary has no authority to actually insist on his asset recommendations, is virtually worthless.

Clearly that is why the Trustees themselves recently proclaimed in their March 30, 2020 email to class members (previously sent to this Court) that the settlement was "a victory" for them, and that they would continue to invest the same way as before despite of the settlement. Since the Trustees have still not repudiated their March 30, 2020 email as I previously requested in my letter to the Court dated April 8, 2020, I can only assume that their views on the subject have not changed.

## II. PLAINTIFF'S  COUNSEL FAILED TO ADD MEKETA AS A CO-FIDUCIARY/CO-DEFENDANT

I argue that "in suits alleging breach of fiduciary duty, the "threshold question" is whether in so doing the defendants were acting as fiduciaries "when taking the action subject to complaint". *Pegram v. Herdrich,* 530 U.S. 211, 226, 120 S. Ct. 2143, 147 L.Ed.2d 164 (2000). The Amended Snitzer complaint makes clear that at ¶105 investment advisor and co-fiduciary, Meketa, repeatedly gave the Plan imprudent investment advice that caused the Plan to lose assets due to risky and illiquid investments. Therefore, Plaintiff's counsel clearly should have investigated adding Meketa as a co-fiduciary/co-defendant with liability in this action. Meketa has much more money available towards a potential verdict or settlement than the Plan Trustees alone. Thus, Plaintiff's counsel failed to be robustly adversarial on behalf of class members in investigating Meketa's conduct, including its personal ties to the Trustees, and unreasonably failed to add Meketa (and possibly other investment firms) as a co-defendant/co-fiduciary. As this Court ruled on 11/30/2017, "The fact that allegations may be damaging to the reputation of a third-party is not, standing alone, an adequate basis to withhold information from the public".

4

Honorable Valerie E. Caproni
Page 5
April 27, 2020

### III. PLAINTIFF'S COUNSEL DELIBERATELY OVERLOOKED IMPORTANT DISCOVERY

It seems unreasonable and unfair that in practically every case where Defendant attempted to hide evidence (for example evidence of liability against co-fiduciaries such as Meketa in ¶ 105 of the Amended Complaint) via sealing of discovery documents, Plaintiff's counsel agreed to and went along with it like a sheep being led to market. Why? What was agreed upon by both parties' counsels pre-dating the settlement negotiations that was not ever revealed to the settlement mediator, including whether any member of the Board of Trustees had any prior or ongoing financial relationships with Meketa or any of the other of the numerous investment firms hired by the Plan? Was there collusion in fact between the parties counsel? Without adequate discovery on this topic (and also of Meketa's and other investment firms' role in this debacle), the present settlement appears insufficient, unfair, and unreasonable.

Moreover with regard to adequate discovery, why did Plaintiff's counsel not ask for the handwritten notes of Board of Trustees meetings? This material is first-hand knowledge, which could either corroborate or eviscerate the testimony of Trustees Brockmeyer and Hair. Therefore, before this settlement is approved I want to see both the relevant handwritten Trustees' notes and the un-redacted depositions of Trustees Hair and Brockmeyer provided to class members.

### IV. PLAINTIFF'S COUNSEL FEES ARE TOO HIGH AND UNREASONABLE

Finally, with respect to Plaintiff's legal fees, Mr. Schwartz' Declaration does not state when or how the subject of legal fees for Counsel was decided. In order to be sure that Counsel's legal fees were negotiated at arms length, more detail needs to be given by counsel how attorneys' fees for class counsel were negotiated and agreed upon. Given the great number of pages in the Schwartz Declaration, it appears that more attention was given by him to his own fee than to any adequate relief for the class.

Honorable Valerie E. Caproni
Page 6
April 27, 2020

This is unfair, unreasonable, and smacks of collusion.

In sum, Plaintiff's Counsel's positions directly conflict with, negatively
affects, and prejudices my interests as a member of the class re: a robust
prosecution of this case Here, Mr. Schwartz et al simply has let members of
the class down and so the award of legal fees should not be accepted by this
Court, or any Court within the Second Circuit, which has the most instances
of reducing counsel fees of any circuit.

Where a class has been certified, a district court "may award reasonable
attorney's fees and non-taxable costs." Fed. R. Civ. P. 23(h). However, as
stated by the Second Circuit in *Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000):

> The point is that plaintiffs in common fund cases typically are not
> fully informed. Nor are they able to negotiate collectively, or at arm's
> length. That is why we emphasized in *Grinell I*, as we rejected a 15%
> fee, that awards in these cases are proper only "if made with
> *moderation*." 495 F.2d at 469 (emphasis added) (quoting Greenough,
> 105 U.S. at  536). As *Grinell II* instructs, the court is to act "as a
> fiduciary who must serve as a guardian of the rights of absent class
> members." 560 F.2d at 1099 (internal quotation marks omitted).

Continuing, the Second Circuit stated:

> All these considerations have fed the perception among both
> Commentators and the Congress that plaintiffs in common fund cases
> are mere "figureheads," and that the real reason for bringing such
> actions is "the quest for attorneys fees." Ralph K. Winter: *Paying
> Lawyers, Empowering Prosecutors, and Protecting Manager*s:
> *Raising the Cost of Capital in America*, 42 Duke L.J. 945, 984
> (1993); *see* Private Securities Litigation Reform Act of 1995,
> H.R. Rep. No. 104-369 (1995) *passim, reprinted in* 1995
> U.S.C.C.A.N. 730, *passim* (criticizing abusive lawyer-driven
> securities class actions). This is why we continue to approach fee
> awards "with an eye to moderation." *Grinnell II*, 560 F.2d at

Honorable Valerie E. Caproni
Page 7
April 27, 2020

> 1099 (quoting *Grinnell I*, 495 F.2d at 470).

> We appreciate that fixing a reasonable fee becomes even more
> Difficult because the adversary system is typically diluted ---indeed
> Suspended ---during fee proceedings. Defendants, once the settlement
> amount has been agreed to, have little interest in how it is distributed
> and thus no incentive to oppose the fee. *See Continental Illinois*, 962
> F.2d at 572. Indeed, the same dynamic creates incentives for
> collusion --- the temptation for lawyers to agree to a less than
> optimal settlement "in exchange for red-carpet treatment on fees".
> *Weinberger v. Great N. Nekoosa Corp.*,  925 F.2d 518, 524 (1st
> Cir. 1991) (citing John C. Coffee, Jr. *The Unfaithful Champion: The
> Plaintiff as Monitor in Shareholder Litigation,* 48 Law Contemp.
> Probs. 5, 26-33 (1985)). And the class members ___ the intended
> beneficiaries of the suit ---rarely object.

In this case, however I do object. Plaintiff's attorneys have not provided an
adequate, fair, and reasonable settlement given the facts and the low risk in
litigating this very strong case, in my view. As such, the settlement may
even be described as of minimal value, an evaluation supported by the
record. Therefore, I formally object to the high legal fees in the proposed
settlement agreement.

CONCLUSION

In sum, in view of the numerous objections presented herein, the Motion for
Preliminary Approval shall be denied because it is unlikely that the proposed
settlement will be finally approved by this Court. Further, since under the
ABA Ethical Guidelines to Settlement Negotiations Class Actions, Section
3.6, "An attorney cannot represent and be an advocate for subclasses with
opposing interests, and may not be able to represent class members
supporting a settlement while also representing individuals who are
objecting to it", the Court shall appoint an additional lawyer for those
members of the class who oppose the proposed settlement and give that
attorney equal standing in this litigation.

Honorable Valerie E. Caproni
Page 8
April 27, 2020

Thank you very much for your time and your consideration.

Sincerely,


Martin Stoner

Cc: via email to all counsel

## American Federation of Musicins and Employers Pension Fund

martin stoner <jilmar_10025@yahoo.com>

Tue 4/28/2020 8:21 PM

**To:** Caproni NYSD chambers <CaproniNYSDchambers@nysd.uscourts.gov>
**Cc:** Myron Rumeld <mrumeld@proskauer.com>; Robert J. Kriner <rjk@chimicles.com>; Steven A. Schwartz
<steveschwartz@chimicles.com>; Jani K. Rachelson <jrachelson@cwsny.com>

Dear Judge Caproni,

My apologies for yet another missive, but I wanted to apologize if I have offended the Court or done anything improper. Based on the letters that I have recently received from Mr. Schwartz and Mr. Rumfeld, they seem to suggest that there is no place for an objector in the preliminary approval stage, only at a fairness hearing. If this is true, then my sincere apologies, as I did not understand.

On the other hand, if it is permissible for a class member to address the Court re: issues raised in the Joint Motion for Preliminary Approval, I would like to say that I believe that there is some overlap between the issues the Court must weigh in the preliminary and final approval process. My thought there was to avoid litigation costs and wasted Court time by preliminarily approving a settlement that ultimately is unlikely to get final approval in its present form.

Both Mr. Schwartz and Mr. Rumfeld declined to address my legal arguments against preliminary approval in their recent letters, and suggest that by waiting to read  the un-redacted amended complaint and expert depositions, I will be better served. But these documents certainly will not shed any light on my argument that Counsel's legal fees are too large or whether the settlement was conducted at arms length. So I respectfully disagree with distinguished counsels. Nothing in the expert testimony or un-redacted complaint is going to weigh on the legal issue of whether the Trustees are going to apologize to this Court, litigants, and class members for their email dated March 30, 2020 stating that the settlement will not change their investment practices going forward, certainly a relevant concern before this Court grants preliminary approval.

As far as facts, neither Mr. Rumfeld or Mr. Schwartz seem to be in agreement as to whether Proskauer's attorney, Mr. Rory Judd Albert, "retired" or "resigned" after giving his deposition testimony in this case. Did they forget to co-ordinate their response? There is a big difference between leaving the firm voluntarily and being forced out.  Perhaps some documents or evidence one way or the other would be helpful?

In sum, I believe that it is a mistake to grant preliminary approval to a settlement which ultimately will not receive final approval because its primary function is simply to enrich lawyers at the expense of members of the class.

Thank you very much for your time and your consideration.

Sincerely,

Martin Stoner

MARTIN STONER
900 West End Avenue
New York, New York 10025
(212) 866-5447

May 4, 2020

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square, Room 240
New York, New York 10007
Email: CaproniNYSDChambers@nysd.uscourts.gov

Re: *Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians and Employers' Pension Fund, et al.,* 17-cv-5361 (VEC)

Dear Judge Caproni:

With the Court's permission, I write to submit to this Court some ideas from the book, "Class Action Dilemmas: Pursuing Public Goals for Private Gain", by Hensler et al. published by Rand Corporation in 2000. In the book, the authors recommend inviting and hearing neutral expert testimony on the value of purported changes in defendants' practices and the appropriateness of class counsel's fees and expenses to provide a more rigorous judicial approval process.

According to the Schwartz declaration (Dkt. # 139, ¶ 4.1) the "Plan" provides for payment of a neutral expert and then does not notify members of the class as to its findings. I believe that because settling parties share an interest in convincing the judge of the reasonableness of the settlement, judges have particular reason to use their authority to appoint their own experts in class action litigation.

 As cited by "Class Action Dilemmas" on page 495.

> However, judges need to be wary of experts obtained by plaintiff class action attorneys or defendants who may have a financial interest in securing the judge's approval of a settlement. Under Rule 706 of the Federal Rules of Evidence, federal judges have the authority to appoint their own neutral experts. Judges should appoint neutral

1

The Honorable Valerie E. Caproni
Page 2
May 4, 2020

experts to assist them in assessing claims of regulatory enforcement to
assure that such claims are real. Judges also should appoint neutral
accountants to audit attorney expense reports before making a final
award of expenses.

Turning now to "Class Action Dilemmas", it says on page 471,

However, judges should be suspicious of settlements that fall far
short of reasonably estimated losses, and of plaintiff class action
attorneys whose advocacy is directed toward persuading the judge of
the weaknesses of the very case that they were eager to have that same
judge certify not many months before.

Regarding attorney's fees specifically, "Class Action Dilemmas" says on
pages 490-491:

The private gains that accrue to plaintiff class counsel in damage
class action litigation are the engine that drives the litigation. *The
single most important action that judges can take to support the
public goals of class action lawsuits is to reward class action
attorneys only for lawsuits that actually accomplish something of
value to class members and society…..*

But in class action litigation, defendants may have an interest in
plaintiff attorneys' receiving significant rewards for substandard
settlements: Such settlements leave defendants, on net, better off
than they might have been had the class action attorney worked harder
(or more skillfully), thereby forcing the defendant either to try the
case to verdict or settle for a larger amount. If judges do not strictly
scrutinize the quality of settlements, plaintiff attorneys may get paid
too much for what they accomplish and defendants may pay too
little for closing off future litigation.

Thus, my objections are encapsulated above as to why this Court should
deny preliminary approval. In the alternative, should the Court decide to
grant preliminary approval, then I respectfully ask the Court to follow the

2

The Honorable Valerie E. Caproni
Page 3
May 4, 2020

recommendations contained in "Class Action Dilemmas" and hire
independent neutral experts to evaluate the effectiveness of the governance
provisions, as well as the legal fees and expenses of counsel.

Thank you very much, Your Honor, for your continued patience with me in
this matter, which is greatly appreciated. I hope that I have contributed
something of value here and that I am not simply being a nuisance.

Very truly yours,

Martin Stoner

Martin Stoner

Copies to all counsel