UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__05/14/2020__
```

----------------------------------------------------------X

ANDREW SNITZER and PAUL LIVANT,                          :
individually and as representatives of a class of       :
similarly situated persons, on behalf of the            :
American Federation of Musicians and Employers'         :
Pension Plan,                                            :
                                                        :
                                    Plaintiffs,         :
                                                        :
                    -against-                           :
                                                        :
THE BOARD OF TRUSTEES OF THE                            :
AMERICAN FEDERATION OF MUSICIANS                        :
AND EMPLOYERS' PENSION FUND, THE                        :          17-CV-5361 (VEC)
INVESTMENT COMMITTEE OF THE BOARD                       :
OF TRUSTEES OF THE AMERICAN                             :               ORDER
FEDERATION OF MUSICIANS AND                             :
EMPLOYERS' PENSION FUND, RAYMOND M.                     :
HAIR, JR., AUGUSTIN GAGLIARDI, GARY                     :
MATTS, WILLIAM MORIARITY, BRIAN F.                      :
ROOD, LAURA ROSS, VINCE TROMBETTA,                      :
PHILLIP E. YAO, CHRISTOPHER J.G                         :
BROCKMEYER, MICHAEL DEMARTINI,                          :
ANDREA FINKELSTEIN, ELLIOT H. GREENE,                   :
ROBERT W. JOHNSON, ALAN H. RAPHAEL,                     :
JEFFREY RUTHIZER, BILL THOMAS,                          :
MAUREEN B. KILKELLY, and DOES NO. 1-6,                  :
WHOSE NAMES ARE CURRENTLY                               :
UNKNOWN,                                                :
                                                        :
                                    Defendants.         :
----------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

        WHEREAS the Court has received additional communications from Martin Stoner, a putative class

member who opposes preliminary approval of the parties' proposed settlement;

        IT IS HEREBY ORDERED that the attached communications are filed on the docket to

preserve the public's right to access judicial documents.

**SO ORDERED.**

**Date:   May 14, 2020**                                    **VALERIE CAPRONI**
        **New York, New York**                          **United States District Judge**

MARTIN STONER
900 West End Avenue
New York, New York 10025
(212) 866-5447

May 7, 2020

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square, Room 240
New York, New York 10007
Email: CaproniNYSDChambers@nysd.uscourts.gov

Re: *Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians and Employers' Pension Fund, et al.,* 17-cv-5361 (VEC)

Dear Judge Caproni:

With the Court's permission, I write pursuant to your Order dated May 4, 2020 filed as document 156 to object as a putative class member to the proposed Notice of Class Action Settlement. The Notice does not seem to me, as a lay person, to be easily understood and transparent. Therefore, I object.

Under the heading, "How will the lawyers be paid?" the revised Proposed Notice says that Plaintiff's Counsel attorneys fees will not "exceed one - third of the $26.85 million Settlement amount plus litigation expenses or charges not to exceed $900,000". So that's about $10 million for Plaintiff's Counsel. But the Notice says nothing about payments to Defendant's attorneys. That is certainly not transparent.

As a lay person, I am assuming that Proskauer Rose and Cohen Weiss are not donating their services? So, surely they will also have to be paid (or perhaps have already been paid) the same $10 million in legal fees. So, what the Notice should say in order to be true and not misleading is that although the total settlement amount is $26.85 million, after deducting $10 million in attorney's fees for each Party, the Plan is left with net, on balance, only $6.85 million. Thus, this settlement purports to spend $20 million for lawyers, while the class nets only about $7 million for the Plan.

1

Honorable Valerie E. Caproni
Page 2
May 7, 2020

That does not sound like a very fair, reasonable, or adequate settlement for class members and it denies me my due process rights in the non-opt out provision additionally. This defeats the statutory purposes of ERISA to provide adequate remedies for violations of the Act. Therefore, I would prefer to see a trial that would shed light on the illegal practices of the Trustees and also bring meaningful relief.  For that reason I continue to oppose approval of the settlement at the preliminary stage so as not to waste this Court's valuable time and money going thru a fairness hearing.

Elsewhere, in the joint Motion for Preliminary Approval, counsel writes that the Governance Provisions will hold Defendants accountable by providing a written record kept by the new Independent Fiduciary so that if the Trustees ever attempt to breach their fiduciary duty again in the future, class members will be able to go into court with a clear record to seek relief. But that too appears misleading, if going into Court merely comprises wasting another three years of one's time, spending another $20 million, and coming away with only $7 million in damages and more empty promises.

In short, I believe as I have said before, that this Court needs to get its own independent expert, pursuant to the Federal Rules of Evidence Rule 702, in order to evaluate effectively and fairly the competing claims of the non-neutral experts of the Parties. Failure of the Court to recognize that the Governance Provisions will be difficult to enforce if the new Fiduciary has no voting authority or power to insist on changes in investments by the Plan, will likely result in a violation of one of the core principles of class action litigation. The Trustees will remain the same as before, and with all the same powers as before, as the fiduciary is powerless to intervene. The only recourse will be for class members to once again spend three years litigating in Court only to make more lawyers rich, and gain nothing for the class.

As I wrote to the Court before quoting from the book "Class Action Dilemmas" on pages 490-491:

> *The single most important action that judges can take to support the public goals of class action lawsuits is to reward class action attorneys only for lawsuits that actually accomplish something of value to class members and society.....*

Honorable Valerie E. Caproni
Page 3
May 7, 2020

Thank you very much, Your Honor, for your continued patience with me in
this matter, which is greatly appreciated. I hope that I have contributed
something of value here and that I am not simply being a nuisance.

Very truly yours,


Martin Stoner

Copies to all counsel

## Conference today May 11, 2020 at 2:00 Pm

### martin stoner <jilmar_10025@yahoo.com>

Mon 5/11/2020 4:37 PM

**To:** Caproni NYSD chambers <CaproniNYSDchambers@nysd.uscourts.gov>
**Cc:** Myron Rumeld <mrumeld@proskauer.com>; Jani K. Rachelson <jrachelson@cwsny.com>; Steven A. Schwartz
<steveschwartz@chimicles.com>; Robert J. Kriner <rjk@chimicles.com>

Dear Judge Caproni,

I just found out now that you had ordered a conference today at 2:00 pm that was to be open to interested members
of the public. However, I am not a lawyer, and so I do not receive any communications from the Court via ECF or
otherwise. I only get a notice three days after a document is filed with the clerk of court via Docketbird that an item
has been filed on the docket sheet, unless, like today, I happen to check in myself on the Docketbird website. Perhaps
in the future the Court could find a better way to communicate at the last minute with putative members of the class
and interested members of the public?

I simply want to say that I share this Court's concern about the propriety of including a release of claims by class
members against class representatives or class counsel. I do not feel that I was adequately represented by class
counsel and wish to have my due process rights respected by this Court as to any future rights that I may have in this
respect.   In my email letter to Mr. Schwartz dated January 15, 2020, I stated the following:

Dear Mr. Schwartz,

Thank you for your reply. I am a bit confused however by the position that you take in your email today. Back on
November 22,    2019 you wrote to me when I asked you about obtaining Snitzer discovery documents, " I think
the proper procedure to try     and get the documents they've produced to us would be to file some type of motion
with the court in our case". So are you just    double-speaking? I'll let the judge be the fact-finder on that!

Furthermore, in that email you acknowledged stated, "More problematic is whatever they did wrong, the Plan
has the money it     has, and and obligations it has, so absent some vehicle to get more money into the plan (or
massive unexpected investment     gains), and it really needs a whole lot of money to make the books balance, the
assets don't seem enough to cover obligations     over the long term."

Thus, since you have admitted that the restitution sought in your lawsuit will not be enough to make the books
balance, the     remedy that I am pursuing would be to prevent the trustees from covering up their mismanagement
altogether by reducing     benefits to retirees. That would keep the focus squarely on the Trustees and we could
continue to receive our benefits for at     least another 20 years.

Additionally, as a further remedy to protect my interest in my pension, I would seek to add an allegation in my
proposed     amended complaint that the trustees Brockmeyer and Moriarity, by hiring a lobbyist NCCMP and
helping to write the very     MPRA legislation in 2014 that now demands cuts from us retirees without any
disclosure, effectively engaged in a criminal     conspiracy to defraud Plan Participants for which they are criminally
liable.

As far as the fact that this case is well-along, Courts often construe Rule 24 motions very liberally and there is
no problem     with intervention even long after all discovery has been completed. So, please save your breath. I
am not interested in hearing     from liars or lawyers

The Trustees have already made a pretty good case for that!

Very truly yours,

Martin Stoner

Thus, Your Honor, Plaintiff's Counsel, Mr. Schwartz did not adequately representing my interests as a putative
member of the class in the settlelemt proceedings because he was fixated on his fee. I therefore would  not like like to
have any of my due process rights abridged in any way with respect with regard to the instant release or the larger
issue of approving the preliminary settlement which would via a preliminary in junction prevent me from filing my own
action against defendants based on some of the same claims on a continuing violation theory for claims from 2017-
present, and do not want Mr. Schwartz and his firm certified as class counsel because he has not adequately
represented putative members of the class.

Thank you, Your Honor, for your kind consideration.

Sincerely,

Martin Stoner

MARTIN STONER
900 West End Avenue
New York, New York 10025
(212) 866-5447

May 13, 2020

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square, Room 240
New York, New York 10007
Email: CaproniNYSDChambers@nysd.uscourts.gov

Re: *Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians and Employers' Pension Fund, et al.,* 17-cv-5361 (VEC)

Dear Judge Caproni:

As both distinguished Counsels continue to fail to respond to my objections for Preliminary Approval, I write again to submit to this Court some ideas based on the work of noted tort litigator, Elizabeth J. Cabraser, who has become one of the most prominent, not to mention successful, female class action litigators in the country. I also have perused an excellent article that also cites Professor Cabraser, called, "Aggregation in Disempowerment: Red Flags in Class Action Settlements" by Howard M. Erichson, 92 Notre Dame l. Rev. 959 (2016).

Essentially what both Professors Cabraser and Eridchson discuss is the concept of "aggregation", the bringing together of an "otherwise vulnerable class of diverse individuals" to band together in a "collective" class-action to gain access to the courts.  While aggregation still holds out the promise of empowerment, in too many instances, collective litigation, according to Professor Erichson, has become a tool for disempowering claimants by consolidating power in the lawyers' hands. "Consolidation of power allows defendants to strike deals that benefit themselves and claimants' lawyers while disadvantaging claimants", Professor Erichson argues. This is exactly the situation that we find here in this instant settlement.

1

The Honorable Valerie E. Caproni
Page 2
May 13, 2020

Professor Eichorn then lists a number of red flags for judges to consider before approving settlements. "Spurious injunctive relief " is one such example. In the instant settlement, we have Governance Provisions of dubious value. First, we have a new requirement for Trustees to publish qualifications of possible new trustees at least 4 weeks in advance of elections. According to the Declaration of Mr. Schwartz, ¶20:

> The Settlement at §8.1.6 requires the Trustees to provide Plan Participants with at least four weeks' notice of the identity and qualifications before the appointment of any new Trustees. That will provide interested Plan Participants the opportunity to evaluate and raise any objections regarding those prospective new trustees.

But this provision will in no way change the results of who becomes a new trustee, because members of the class do not get to vote in elections for new trustees. It's a closed process. Trustees are appointed. So while it may look good to a judge on paper, as a practical matter, this is meaningless.

The same is true for the new independent fiduciary, who, in the proposed settlement, is given no voting power or any legal authority to enforce any of his recommendations. Defendant Trustees are so dead set against changing their failed investment policies that Proskauer Rose actually wrote to the Court on May 8, 2020 to state on the record that calling the independent fiduciary a functioning third "Co-Chair" would be a "material breach" of the settlement! This is simply laughable, and designed to neuter any effective role for the Independent Fiduciary, i.e., an empty gesture designed to look good to the Court but that does nothing for the class.

There are no substantive remedies for the class in the governing provisions. Even the provision to have the Independent Fiduciary review the proposed settlement is meaningless as the Independent Fiduciary is paid by the Plan and owes his loyalty to the Defendants, not to the class. The new fiduciary needs to show that he can get along with Defendants in his job-or else be fired by the Plan and replaced with someone else who is more sympathetic to the risky and illiquid policies that have characterized the Trustees investment policy for the past ten years. This is also meaningless.

The Honorable Valerie E. Caproni
Page 3
May 13, 2020

Another red flag for Professor Eichorn is "Excessively Broad Release":

> A settlement, by definition, means that a claimant releases claims in
> exchange for the remedy offered by the defendant. But the releases in
> some  class settlements go further than one would expect, releasing
> defendants from liability for conduct that falls outside of the claims
> asserted in the complaint. It is easy to understand why a defendant
> would request an all-encompassing release, but it is harder to see why
> a loyal negotiator for the  class would agree to it. One might expect
> that a lawyer negotiating on behalf of a plaintiff class would push
> back against a defendant's unduly broad proposed release.
> The best deal for the class would be one that releases only those
> claims that are reasonably compensated in the settlement…. [T]he
> class lawyer's self-interest points toward accepting whatever release
> the defendant demands. For the class lawyer, anything that expands
> the scope of the deal, and anything that gets the deal done, is
> advantageous. Releasing additional claims may be costly to class
> members, but it is costless to their lawyer.

There is evidence of an excessively broad release in the instant settlement as
well which would release future claims based on past conduct, for example,
the lawsuit that I have recently proposed to file against the Trustees by a
new counsel for breach of fiduciary duty from 2017-present, on a continuing
violation of fiduciary duty based upon a past practice and pattern of similar
fiduciary breaches. As per the Settlement Agreement at ¶2.22:

> Released Claims" means any and all actual or potential claims, actions,
> allegations, demands, rights, obligations, liabilities, damages,
> attorneys' fees, expenses, costs, and causes of action, whether arising
> under federal, state or local law, whether by statute, contract or equity,
> whether brought in an individual, derivative, or representative
> capacity, whether known or unknown, suspected or unsuspected,
> foreseen or unforeseen, that:
>
> 2.22.1 were asserted in the Complaint or Amended Complaint or that
> arise out of, relate in any way to, are based on, or have any connection

The Honorable Valerie E. Caproni
Page 4
May 13, 2020

> with any of the factual or legal allegations asserted in the Complaint
> or Amended Complaint, including, but not limited to, those that arise
> out of, relate to, are based on, or have any connection with decisions
> made, prior to the OCIO Management Date, regarding (i) the Plan's
> asset allocation and the selection (including of the Plan's OCIO),
> retention, monitoring, oversight, compensation, fees, or performance
> of the Plan's investments or its investment managers; (ii) investment-
> related fees, costs, or expenses charged to, paid, or reimbursed by the
> Plan; (iii) disclosures or failures to disclose information regarding the
> Plan's investments and/or funding; or (iv) any alleged breach of the
> duty of loyalty, care, prudence, diversification, or any other fiduciary
> duties or prohibited transactions in connection with (i) through (iii)
> above;

. > 2.22.2  arise out of, relate in any way to, are based on, or have any
> connection with the approval by the Independent Settlement
> Evaluation Fiduciary of the Settlement Agreement, unless brought
> against the Independent Fiduciary alone; or

. > 2.22.3  would be barred by res judicata based on entry by the Court of
> the Final Approval Order.

I allege that the instant settlement release, even to a lay person such as
myself, is excessively broad as a concession to the Defendants, and not
agreed to out of loyalty to the class members. As Second Circuit Judge
Pierre Leval wrote about the confiscatory aspect of certain class settlements
and the inadequacy of counsel's representation: (*Authors Guild, Inc. v.
Google Inc.*, 954 F. Supp. 2d 282 (S.D.N.Y. 2013), *aff'd*, 804 F.3d 202 (2d
Cir. 2015)).

> What is particularly troublesome is that the broad release of the
> Defendants binds not only members of the Plaintiff class who receive
> compensation as part of the deal, but also binds in perpetuity,
> without opportunity to reject the settlement,  all merchants who in the
> future will accept Visa and Master Card, including those not yet in
> existence, who will never receive any part of the money. This is not a
> settlement; it is a confiscation. . . . One class of Plaintiffs receives

4

The Honorable Valerie E. Caproni
Page 5
May 13, 2020

> money as compensation for the Defendants' arguable past violations,
> and in return gives up the future rights of *others*.[193]

As stated by Eichorn on page 895:

> For class counsel, it is costless and potentially very profitable to trade
> away  the future rights of those not at the table. A broadly defined
> class and a broadly framed release give the defendant maximal
> protection from liability; the question for the court must be whether
> all of the class members are adequately compensated for giving up
> their right to sue.

Finally, Professor Eichorn discusses ethical considerations in settlements.

> For purposes of conflict of interest rules, the relationship between
> class counsel and class members differs from a standard lawyer-client
> relationship…..If lawyers use the power of their role to enrich
> themselves at the expense of the class members they purport to
> represent, doesn't this violate the lawyers' ethical duties? The short
> answer is yes. Lawyers involved in class settlement negotiations
> should approach those negotiations with sensitivity to their obligations
> to their clients and to the profession

> Defense lawyers, for their part, should remember that it is unethical to
> "knowingly assist or induce another" to violate rules of professional
> conduct, so to the extent class lawyers violate duties to class
> members by negotiating self-serving class settlement terms,
> defense lawyers likewise violate professional duties by knowingly
> offering or accepting such terms.

For all these reasons, I respectfully request that this Court deny preliminary
approval of this settlement which does not benefit the class in any
meaningful or significant way. For this distinguished Court to approve the
proposed settlement, in my opinion, would be an abuse of discretion.
Thank you very much, Your Honor, for your continued patience with me in
this matter, which is greatly appreciated.

The Honorable Valerie E. Caproni
Page 6
May 13, 2020

Very truly yours,


Martin Stoner


Copied to all counsel