UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW SNITZER and PAUL LIVANT, individually and as representatives of a class of similarly situated persons, on behalf of the American Federation of Musicians and Employers' Pension Plan,<br><br>                              Plaintiffs,<br><br>v.<br><br>THE BOARD OF TRUSTEES OF THE AMERICAN FEDERATION OF MUSICIANS AND EMPLOYERS' PENSION FUND, THE INVESTMENT COMMITTEE OF THE BOARD OF TRUSTEES OF THE AMERICAN FEDERATION OF MUSICIANS AND EMPLOYERS' PENSION FUND, RAYMOND M. HAIR, JR., AUGUSTINO GAGLIARDI, GARY MATTS, WILLIAM MORIARITY, BRIAN F. ROOD, LAURA ROSS, VINCE TROMBETTA, PHILLIP E. YAO, CHRISTOPHER J.G. BROCKMEYER, MICHAEL DEMARTINI, ELLIOT H. GREENE, ROBERT W. JOHNSON, ALAN H. RAPHAEL, JEFFREY RUTHIZER, BILL THOMAS, JOANN KESSLER, MARION PRESTON,<br><br>                              Defendants. | No. 1:17-cv-5361 (VEC)<br><br>**ORDER** |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/03/2020

VALERIE CAPRONI, United States District Judge:

    WHEREAS a fairness hearing has been scheduled for August 26, 2020;

    WHEREAS putative class members have sought disclosure of additional evidence obtained during discovery in order to inform their evaluations of the proposed settlement agreement, which has received preliminary approval in this Court;

    WHEREAS the Court ordered all requests for additional disclosures to be mailed to the Court by July 2, 2020;

    WHEREAS all such requests received by the Court by the date of July 2, 2002, are attached to this Order;

IT IS HEREBY ORDERED that the parties must file a joint letter setting forth their respective positions in response to the requests for additional disclosures, no later than **July 10, 2020**.

**SO ORDERED.**

**Date:  July 3, 2020**
      **New York, New York**

                                              **VALERIE CAPRONI**
                                              **United States District Judge**

Snitzer v. American Federation of Musicians and Employers Pension Fund CORRECTED

martin stoner <jilmar_10025@yahoo.com>
Tue 6/23/2020 11:00 AM

To: Caproni NYSD chambers <CaproniNYSDchambers@nysd.uscourts.gov>
Cc: Myron Rumeld <mrumeld@proskauer.com>; Jani K. Rachelson <jrachelson@cwsny.com>; Steven A. Schwartz <steveschwartz@chimicles.com>; Robert J. Kriner <rjk@chimicles.com>

martin stoner <jilmar_10025@yahoo.com>
To:martin stoner

Tue, Jun 23 at 10:54 AM

----- Forwarded Message -----
From: martin stoner <jilmar_10025@yahoo.com>
To: Hon. Valerie Caproni <caproninysdchambers@nysd.uscourts.gov>
Cc: Myron Rumeld <mrumeld@proskauer.com>; Jani K. Rachelson <jrachelson@cwsny.com>; Robert J. Kriner <rjk@chimicles.com>; Steven A. Schwartz <steveschwartz@chimicles.com>
Sent: Tuesday, June 23, 2020, 10:52:32 AM EDT
Subject: Snitzer v. American Federation of Musicians and Employers

Dear Judge Valerie Caproni,

I ask the Court's indulgence and forgiveness for this intrusion. I write in response to the letter to the Court dated June 22, 2020 from Steven Schwartz.

I object to this letter as the Court had instructed the parties to refrain from correspondence to the Court t this time. The Court, in particular, made a point of impressing on myself the need not to send in piecemeal submissions but rather to file my entire response in one submission. By my objection mailed to the Court on  June 16, 2020, I sent in my full objection, as requested, in one document.

The Parties to this action are aware that after July 27, 2020 they will have an opportunity to respond to my objection as part of the usual settlement process. Therefore, I think it unfair that the Parties have chosen to respond jointly to only a part of my Objection at this time. This contradicts the wishes of the Court and flaunts the notion of judicial economy. There is no reason why this cannot wait until August when this matter can be addressed at that time, all at one, for the Court's consideration. Clearly, Mr. Schwartz does not want to see any delays when it comes to getting his fee settled and into his hands at the earliest possible moment.

It is obvious from this joint letter, that Mr. Schwartz puts his own personal interest (in his full fee) above the greater interests of the class members, a point I make repeatedly in my Objection. His letter again highlights Mr. Schwartz refusal to state his own opposition to Defendant's wish to deny any additional disclosure as he fails to mention his support of the best outcome for the class by having full disclosure, but mentions only Defendant's position in opposition, thereby bolstering my claim that Mr. Schwartz continues to fail to adequately represent the best interests of the members of this class by constantly siding with the Defendants.

Therefore, in order to force Mr. Schwartz to publicly declare his support for the best interests of the class in full disclosure, I ask the Court, if it agrees to hear from all the parties on this discovery matter either now or later,  to order that both parties' counsel  make separate declarations under oath about whether or not they support or object to my request for further disclosure. That will show where Mr. Schwarz really stands, i.e., with the Defendant!

In that regard, in my Objection I ask for further disclosure from the parties on  the issue of whether the discussions about attorneys fees were conducted at arms length, an important consideration for approval of this settlement. Both Mr. Schwartz and Defendant's counsel are silent on that important issue!

Therefore, I further request that in their separate declarations, the parties counsel  explain in detail how the subject of attorneys fees came up and was decided and whether that occurred before or after the agreement on monetary damages and also whether it occurred before or after the separate agreement on Governance Provisions, and to disclose under oath specifically if either counsel had any conversations and/or correspondence about attorneys fees separate and apart from the purview of the settlement mediator before the settlement was finally concluded

Thank you very much for your time and your consideration and again my apologies for this missive.

Very truly yours,

Martin Stoner

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | : | OBJECTION TO APPROVAL |
| ANDREW SNITZER and PAUL LIVANT, | : | OF FINAL SETTLEMENT |
| individually and as representatives of a class of | | AND NOTICE OF INTENT |
| similarly situated persons, on behalf of the | | TO APPEAR |
| American Federation of Musicians Pension Plan, | | |
| | | |
| Plaintiffs, | : | |
| v. | : | |
| | : | CIVIL ACTION |
| THE BOARD OF TRUSTEES OF THE | | No. 1:17-cv-05361-VEC |
| AMERICAN FEDERATION OF MUSICIANS | : | |
| AND EMPLOYERS PENSION PLAN, et al. | : | |
| | : | JUDGE VALERIE E. CAPRONI |
| Defendant, | : | |
| | : | |
| MARTIN STONER, | : | |
| | : | |
| Objector. | : | |

In compliance with the proposed Settlement Agreement ("Settlement") Martin Stoner, residing at 900 West End Avenue, New York, New York 10025 ("Objector"), files this Objection to the proposed Settlement. The Objector is a member of the "Settlement Class" because he was a Participant in the American Federation of Musicians and Employers' Pension Plan during the Class Period, August 9, 2010-May 18, 2020.

Objector intends to appear and argue at the Fairness Hearing. At the Fairness Hearing, Objector will present the arguments herein, as well as his prior arguments duly entered onto the record by this Court.

RECEIVED
JUN 25 2020
VALERIE CAPRONI
U.S. DISTRICT JUDGE
S.D.N.Y.

1

Objector has not submitted any objection in state or federal court in the United States in the past five years.

## PRELIMINARY STATEMENT

Plaintiff's attorneys have not provided an adequate, fair, and reasonable settlement given the facts and the law in this case.

As such, the settlement may even be described as of minimal value, an evaluation supported by the record. Therefore, Objector opposes the Settlement in its present form and respectfully requests that the Settlement be denied for the following reasons:

First, the proposed settlement agreement it is not an effective (i.e., adequate, reasonable, or fair) remedy to the claims asserted in the amended complaint and thus should not be approved by this Court. The settlement must have stronger Governance Provisions in light of the fact that the Trustees have publicly committed to pursuing the same risky and illiquid investment policies, as before. And the Trustees continue to lie, misrepresent, and not be transparent in their dealings with Plan Participants and their Beneficiaries. In light of the harm suffered by members of the class and the extent of Defendant's wrongdoing, the proposed settlement is not adequate, reasonable, or fair.

The Trustees' March 29, 2020 email to Plan Participants in which the Trustees stated that the settlement will not change the Trustees current investment

2

policies is proof that the Governance Provisions are essentially worthless. As such, the pending Motion for Final Approval falls well below the basic standards for final approval as set forth by the Second Circuit. The Governance Provisions must hold Trustees accountable by reigning in the Trustees' risky, illiquid, and expensive investments causing ongoing Plan losses that threaten Plan insolvency.

As of the settlement date, the Fund continues to remain in "critical and declining status". This settlement does nothing to alleviate that substantial Plan deficit, and the proper asset allocation as outlined in the Governance Provisions alone will not restore the fund to solvency. More specifically, class members are not receiving enough relief for the injury that they've suffered and Plaintiffs' attorneys are being paid too much. "[T]he essential requisite of due process as to absent members of class [actions] is not notice, but the adequacy of representation of their interests by [the] named parties." *Eisen v. Carlisle*, 391 F.2d 555 (2d Cir. 1968).

Second, Plaintiff Counsel's legal fees are too high for the miniscule results that they achieved. Fees must bear a meaningful relationship to what has been achieved for the class, not simply to line counsel's pockets.

Counsel's fee needs to be lowered in light of the fact that the recovery by Plan Counsel is not adequate.

Third, the Settlement "Release and Waiver" provisions are overbroad because they exceed the scope of the allegations of the operative complaint and further limit the rights of class members to pursue meaningful and adequate remedies and relief in the future.

Fourth, the Trustees must provide a written statement disavowing their March 29, 2020 disparaging comments in their email to Plan Participants which harshly criticizing Plaintiffs Snitzer and Livant prior to Final Approval.

This Objector has already written to the Court demanding that Defendants apologize to this Court for their post-settlement public comments, but they still refuse to disavow these comments as required. A non-disparagement clause therefore needs to be added to the settlement.

Fifth, the disclosure of only a small portion of the sealed discovery in the *Snitzer* lawsuit on the settlement website is insufficient to provide adequate information about the competing claims by both Plaintiff's Counsel and the Trustees via their March 29, 2020 email comments. If additional  discovery is released by the Trustees after the July 26, 2020 deadline for Objections, this Court should permit Objectors to have an additional period in which to make new objections. For all these aforementioned reasons, I object to the settlement in its current form.

## LEGAL STANDARD

The standard for final approval of a settlement consists of showing that the settlement is fair, reasonable, and adequate. *Wal-Mart Stores, Inc.*, 396 F.3d at 116-117 (2d Cir. 2005). Courts in the Second Circuit have traditionally considered nine factors, known as the *Grinnell* factors, to assist in weighing final approval and determining whether a settlement is substantively "fair, reasonable, and adequate." Additionally, the amended Rule 23(e)(2) requires courts to consider (A) whether the class representatives and class counsel have adequately represented the class; (B) whether the settlement proposal was negotiated at arm's length; (C) whether the relief provided for the class is adequate, taking into account: the costs, risks, and delay of trial and appeal; and the terms of any proposed award of attorney's fees, including timing of payment.

While it is true that Courts have generally favored settlements in class action lawsuits, Courts have also failed to approve settlements where those settlements have not provided an adequate remedy for the class based upon the allegations in the complaint and the evidence in the court record.

The new Rule 23(e) factors add to, rather than displace, the *Grinnell* factors. ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." (Committee Notes on Rule 23

Amendment)). Indeed, there is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C–D) factors, as they both guide a court's substantive, as opposed to procedural, analysis.

Accordingly, the Court must consider both sets of factors in its analysis of whether the Court will likely find that the proposed settlement is fair, reasonable, and adequate, and grant final approval.

> However, judges should be suspicious of settlements that fall far short of reasonably estimated losses, and of plaintiff class action attorneys whose advocacy is directed toward persuading the judge of the weaknesses of the very case that they were eager to have that same judge certify not many months before". Class Action Dilemmas, Pursuing Public Goals for Private Gain, by Deborah Hensler, July 19, 2000, page 471.

## ARGUMENT

### I. The Settlement Presented to This Court Fails to Meet the "Fair, Reasonable, and Adequate" standard for final approval

The settlement presented to this Court fails to meet the "fair, reasonable, and adequate" standard for approval. A number of other *Grinell* and Amended Rule 23 requirements for approval have also not been met. These include the fact that Plaintiff's Counsel did not adequately protect the interests of the class, the reaction of the class to the settlement, the ability of the defendants to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

As Plaintiff's attorneys have not provided an adequate, fair, and reasonable settlement, I therefore formally object to final approval of the proposed settlement as per Rule 23(a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 592 (1997).

## II.  Class Counsel failed to adequately protect the interests of the class

### *A. Plaintiff's Counsel failed to Hold Plan Trustees Accountable for their misleading and deceptive conduct in the proposed settlement that can now continue unabated*

Plaintiff's Counsel failed to hold Plan Trustees accountable for their misrepresentation including misleading and deceptive statements published by Trustees, their actuaries, and agents in February 2015.[1] Facts available in the public record demonstrate inaccurate and incomplete explanations of benefits and known falsity of certain statements by the Trustees, their actuaries, accountants, lawyers, and agents. From 2014-2017 Plan Trustees failed to tell Plan Participants about the Trustees participation in the formation and passage of the MPRA legislation and the negative effect that this legislation might possibly have on their future Pension Fund benefits. They also lied in a February 2015 union publication, "Allegro", that the passage of MPRA would result in no reduction of benefits for Plan Participants and stated that the Plan would remain solvent through the year

---

[1] The fact that these published statements are indisputable as well as self-incriminating reduces Class Counsel's risk at trial. No expert testimony can undercut this evidence.

2047. This outright deception by Plan Trustees and their agents in failing to disclose to Plan Participants the failing financial health of the Plan as well as the possible effect of MPRA upon their pension benefits, violated ERISA. *See Amended Complaint at ¶¶14, 96, 121, and 149.*

The Plan Trustees knew and expected that Plan members and their beneficiaries would rely on its statements to their detriment. Plan Counsel should have known about the well-recognized legal theory from *Amara* coupled with the widely available Trustee statements known to both Class Representatives Snitzer and Livant. Counsel failed to represent the best interest of the class by not adding these relevant facts in their amended complaint. There was no additional risk or cost from adding additional allegations of misrepresentation by the trustees, their actuaries, agents, and attorneys, and there was much to gain in terms of holding all of them accountable to the members of the class. This was an obvious mistake.

ERISA § 502(a)(3) entitles plan participants to "appropriate equitable relief" as redress for "any act or practice which violates any provision of [ERISA]." 29 U.S.C. § 1132(a)(3). The Class claims that Defendants violated sections 404(a) and 102(a) of ERISA by issuing materially false and misleading statements in the February 2015 et seq. and various Plan Summaries and Material Modifications.

To obtain "reformation", plaintiff must show: (1) violations of ERISA §§ 404(a) and 102(a), based on the preponderance of the evidence; (2a) mistake or ignorance by employees of "the truth about their retirement benefits," based on clear and convincing evidence; and (2b) "fraud or similar inequitable conduct" by the plan fiduciaries, based on clear and convincing evidence. *Amara v. CIGNA Corp.*, 775 F.3d 510, 525–31 (2d Cir.2014) ("*Amara V* ").

### B. The Amara Litigation

In *Cigna v. Amara*, Plaintiffs claimed, *inter alia,* that defendants violated ERISA §§ 102(a) and 204(h), 29 U.S.C. §§ 1022(a) and 1054(h), by failing to give them proper notice of their benefits and misleading them regarding the nature of their benefits. There is no requirement of "detrimental reliance" for all equitable remedies.

ERISA § 502(a)(1)(B) allows a plan "participant or beneficiary" to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In *Amara*, the district court found that CIGNA violated ERISA § 102 by failing to sufficiently disclose information to participants needed to understand their Plan benefits.

9

In *Amara* the Second Circuit also determined that plaintiffs "were required to show that defendants committed fraud or similar inequitable conduct and that such fraud reasonably caused plaintiffs to be mistaken about the terms of the pension plan," *id.* at 526 (citation omitted). The Second Circuit held: "[t]raditional equitable principles do not require a separate showing of harm for reformation." *Amara V*, 775 F.3d at 525 n. 12 (citations omitted).

The Second Circuit explained that equitable fraud "generally consists of 'obtaining an undue advantage by means of some act or omission which is a violation of good faith.'" *Id.* at 526 (citation omitted). This "misbehavior was designed to 'ease the transition to a less favorable retirement program.'" The Second Circuit also noted that CIGNA had "intentionally withheld details that would provide employees with a direct comparison of their benefits under Part A with their anticipated benefits under Part B." *Amara V*, 775 F.3d at 519-524. This is the very conduct our Trustees engaged in. *See Amended Complaint at ¶¶ 14, 96, 121, 149.*

The same cause of action was available against our own Trustees BUT PLAINTIFF'S COUNSEL FAILED AND REFUSED TO FOLLOW THIS OBVIOUS PATH, thereby failing to adequately represent the interests of the class. Objector alleges that Plaintiff's Counsel should have pursued a plausible remedy of "equitable relief" to correct any misleading and deceptive statements made to the

members of the class and hold Defendants liable for full restitution, i.e., to put class members back in the same situation as they would have been absent any misrepresentations or fraud.   Thus, this cause of action needs to be a part of any discussion for final approval or class members should be released from pursuing this cause of action in the future in the proposed settlement against the named Defendants and others still to be determined, since, "To participate knowingly and significantly in deceiving a plan's beneficiaries in order to save ... money at the beneficiaries' expense is not to act 'solely in the interest of the participants and beneficiaries,'" as ERISA requires. *Varity Corp. v. Howe*, 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (quoting ERISA § 404). Proper execution of fiduciary duties requires that fiduciaries' decisions "be made with an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.1982). Under ERISA § 404(a)(1), the focus on participants must be "exclusive." 29 U.S.C. § 1104(a)(1). While a trustee has a duty to seek independent advice where he lacks the requisite education, experience and skill, the trustee, nevertheless, must make his own decision based on that advice." *United States v. Mason Tenders Dist. Council of Greater N.Y.*, 909 F.Supp. 882, 886 (S.D.N.Y.1995) (citations omitted).

The regulations are insistent as to the fiduciaries' affirmative duty to make participants clearly "see" circumstances under which they will *not* receive the

benefits described in the summary that they might otherwise reasonably expect to receive. Underscoring this affirmative duty to warn participants of the circumstances when they might not actually receive benefits, "[a]ny description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant." 29 C.F.R. § 2520.102–2(b); *see also id.* (requiring further that "[s]uch exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the ... prominence used to describe or summarize plan benefits"). Restrictive plan provisions must be clearly cross-referenced with the description of the benefit. *See id.* The regulations expressly forbid fiduciaries from either playing up the positive features of the plan or downplaying the negative: "[t]he advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations." *Id.*

In *Amara*, the Court ruled that the Class has proven by clear and convincing evidence that, as a result of the false, misleading, and incomplete statements by the Plan trustees, their actuaries, and their agents, Plan Participants and Beneficiaries were left ignorant of "the truth about their retirement benefit".

The law is clear that equitable fraud does not require a showing of intent to deceive or defraud. *See Capital Gains*, 375 U.S. at 193, 84 S.Ct. 275 ("Fraud has a

12

broader meaning in equity (than at law) and intention to defraud or to misrepresent is not a necessary element." (citation and internal quotation marks omitted)); *See also Trade Comm'n v. Algoma Lumber Co.*, 291 U.S. 67, 81, 54 S.Ct. 315, 78 L.Ed. 655 (1934) ("[T]here is a kind of fraud, as courts of equity have long perceived, in clinging to a benefit which is the product of misrepresentation, however innocently made." (citations omitted)); *United States v. Von Barta*, 635 F.2d 999, 1005, n. 14 (2d Cir.1980) ("Actual frauds are intentional frauds. Constructive frauds involve breaches of fiduciary or equitable duties where an intent to deceive is lacking." (citation omitted)); *Hammond v. Pennock*, 61 N.Y. 145, 152 (1874) ("In equity, the right to relief is derived from the suppression or misrepresentation of a material fact, though there be no intent to defraud.... *D.R. Paskie & Co. v. Commercial Cas. Ins. Co.*, 223 A.D. 603, 229 N.Y.S. 121, 129 (1928) ("The fraudulent intent need not be proven in an equity action, while at law such intent must be established." (citation omitted)).

### *C. Inequitable conduct.*

Class Counsel unreasonably ignored the case law on inequitable conduct. "Inequitable conduct includes deception or even mere awareness of the other party's mistake combined with superior knowledge of the subject of that mistake." *DS Parent, Inc. v. Teich*, No. 5:13–CV–1489 LEK/DEP, 2014 WL 546358, at *4 (N.D.N.Y. Feb. 10, 2014) (citations omitted); *see also Koam Produce, Inc. v.*

13

*DiMare Homestead, Inc.*, 329 F.3d 123, 127 n. 3 (2d Cir.2003). *See also Amended Complaint at ¶¶ 14, 96, 121, and 149.*

Class Counsel also ignored the fact that a co-fiduciary like Meketa or Milliman can also be liable for "inequitable conduct". Under ERISA § 405(a)(1), and § 405(a)(3), a co-fiduciary is liable for the other fiduciary's breach of fiduciary duty when: (1) the co-fiduciary has actual knowledge of the other fiduciary's breach; (2) the co-fiduciary failed to make reasonable efforts to remedy the other fiduciary's breach; and (3) damages resulted therefrom. *See Silverman v. Mutual Ben. Life Ins. Co.*, 138 F.3d 98 (2d Cir. 1998) (listing these elements).

Although a breach of fiduciary duty claim must be brought within six years from the date of the breach, or, if a plaintiff has actual knowledge of the breach, within three years from such knowledge (29 U.S.C. § 1113),  this rule is subject to an exception in cases of fraud or concealment, in which case the limitations period runs six years from when the participant discovered the breach. *See id.* The fraud or concealment exception applies in "cases in which a fiduciary: (1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or (2) engaged in acts to hinder the discovery of a breach of fiduciary duty." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 190 (2d Cir.2001) (citation omitted).

14

"The most important way in which the fiduciary complies with its duty of care is to provide accurate and complete written explanations of the benefits available to plan participants and beneficiaries." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 471 (7th Cir.2010); *see also Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir.1993) (The duty to fully and accurately disclose and explain material information to plan participants "is the core of a fiduciary's responsibility" (citation and internal quotation marks omitted)). "Fiduciaries may be held liable for statements pertaining to future benefits if the fiduciary knows those statements are false or lack a reasonable basis in fact." *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 84 (2d Cir.2001) (citation omitted).

Fiduciaries may also be "liable for non-disclosure of information about a current plan when the omitted information was necessary to an employee's intelligent decision about retirement." *Id.* (citation omitted). In other words, "[w]hen a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries." *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 88 (2d Cir.2001) (citation and internal quotation marks omitted ); *see also Bixler*, 12 F.3d at 1300 (the duty to inform "is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to

15

misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful"); *Mullins v. Pfizer, Inc.*, 23 F.3d 663, 669 (2d Cir.1994)

### D. Other case law that refers to equitable remedies, including injunction and estoeppel, for fiduciary misrepresentations

Class counsel ignored other relevant case law as well including:

*Osberg v. Foot Locker, Inc.*, 138 F. Supp. 3d 517 (S.D.N.Y. 2015):
"To obtain plan reformation under ERISA § 502(a)(3), the Class must show that Foot Locker engaged in 'fraud or inequitable conduct.'"

"[E]quitable fraud does not require a showing of intent to deceive or defraud."

"Foot Locker committed equitable fraud. It sought and obtained cost savings by altering the Participants' Plan, but not disclosing the full extent or impact of those changes."

"Inequitable conduct includes deception or even mere awareness of the other party's mistake combined with superior knowledge of the subject of that mistake."

*O'Shea through O'Shea v. UPS Ret. Plan*, 2016 WL 4750214 (1st Cir. Sept. 13, 2016):
"Equitable relief comes into existence at time of alleged misstatements, even without monetary loss to participants at that time. Participant was misled and provided with deficient Plan documents. "At that point, [participant] could have sought equitable relief—reformation, for example—despite the fact that his beneficiaries had not yet been denied benefits." "Monetary loss is not a necessary component of a claim for equitable relief under § 502(a)(3)."

*Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869 (7th Cir. 2013): "*Amara* "clarified that equitable relief may come in the form of money damages when the defendant is a trustee in breach of a fiduciary duty."

*McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176 (4th Cir. 2012): • Recognizing estoppel and surcharge are available to plan participants asserting breach of fiduciary duty claims under § 502(a).

Objector argues that Plaintiff's Counsel was remiss in not alleging an action for equitable recovery against the Trustees in the amended complaint resulting from making knowingly false and misleading statements in February 2015 *et. seq.* There is no evidence of a single Class Member who was aware, or reasonably could have been aware, of the deceptions and misleading statements by our Trustees, their agents and assigns, at the time they were actually made. "The Plan must therefore be reformed and monetary damages assessed to provide the appropriate benefit that the misrepresentation inequitably caused class members to reasonably expect."

### E. Plaintiff's Counsel Voluntarily Agreed to Hide Discovery from Class Members Instead of Making it available for their consideration

This Objector finds it unreasonable and unfair that in practically every case where Defendant's Counsel attempted to hide evidence of liability against Proskauer Rose and Meketa, Plaintiff's counsel agreed to and went along with it like a sheep being led to market. *See Amended Complaint at ¶¶ 14, 96, 121, 149.* This prevented class members from having access to important and relevant facts and information relating to the claims in the amended complaint. This included the Expert Report of David J. Witz that, "Plan Counsel Proskauer had a conflict since Meketa was a client of its Boston office. Dep. Ex. 194 at DEF0209587. Class members therefore need to have access to the three depositions of Meketa

employees to gain more information about these conflicts of interest in order to pursue their own claims against Meketa and Proskauer.

Second, Class Counsel failed to pursue legal action against Plan Counsel, Rory Judd Albert, of Proskauer Rose, who told the Trustees on numerous occasions to cover up the failing financial status of the Plan. The fact that he was fired from the Plan and two weeks later separated from Proskauer Rose in 2018 immediately after he gave deposition testimony in this matter is strong evidence of both his illegal conduct and that of Proskauer Rose.  Thus, there is also evidence of potential liability of Proskauer Rose from either bad acts from Mr. Albert or conflicts of interest relating to Proskauer Rose and Meketa. *See Amended Complaint at ¶¶ 14, 96, 121, 149*. See also Expert Report of David J. Witz,, pages 47-51. Without access to Rory Albert's and the Meketa depositions, adequate discovery is not being made available to class members to assess whether this settlement is adequate, fair, and reasonable.

Third, Class members need to have access to the depositions of the Trustees Co-Chairs Ray Hair and Chris Brockmeyer. If there is evidence that they lied or made misleading statements to class members, then the proposed settlement is inadequate as it does not reflect the equitable relief that is available to class members under the case law from *Cigna Corp. v. Amara*, 563 U.S. 461 (2011). A "maxim of equity states that '[e]quity suffers not a right to be without a remedy.'

R. Francis, Maxims of Equity 29 (1st Am. ed. 1823)." Also, "Equitable estoppel
'operates to place the person entitled to its benefit in the same position he would
have been in had the representations been true." *See also N.Y. State Psychiatric
Assn. v. United Health Group*, 798 F.3d 125 (2d Cir. 2015): "Equitable relief under
§502(a)(3) for breach of fiduciary duty includes injunctive relief to prevent future
breaches and surcharge to redress past breaches. " *See also Amara v. Signa Corp.*,
775 F.3d 510 (2d Cir. 2014): "Elements of contract reformation were established
based on generalized circumstantial evidence of a unilateral mistake by the entire
plaintiff class".

Moreover with regard to adequate discovery, why did Plaintiff's counsel not
ask for the handwritten notes of Board of Trustees meetings? This material is first-
hand knowledge, which could either corroborate or eviscerate the testimony of
Trustees Brockmeyer and Hair.

In sum, before this settlement is approved, Objector wants to see both the
relevant handwritten Trustees' notes and the un-redacted depositions of Albert
Rory Judd, the three Meketa employees, and Trustees Hair and Brockmeyer
provided to class members to shed additional light on whether this settlement
represents an adequate, fair, and reasonable settlement. For all these reasons,
Plaintiff's Counsel failed to be an adequate representative of the class by

repeatedly acquiescing to Defendant's requests for sealed discovery and thereby failing to adequately represent the interests of the class.

### III. Counsel's Fee is Too High

Plaintiff's Counsel fee request is too high compared with the tiny little settlement that the class received. Indeed, the average or typical fee percentage even in settled class cases is in the 25% to 30% range. See, e.g., Manual for Complex Litig.§ 14.121 (4th ed. 2007) ("attorneys' fees awarded under the percentage method are often between 25% and 30% of the fund"). An average by definition means some are above and some below.  Compare the huge settlement amounts awarded in the following cases with the measly $26.5 million awarded to class members in *Snitzer* and you will see why Counsel's fees are way out of line!

> CASE SETTLEMENT PERCENTAGE AWARDED Bain Partners $590 million 33.3% IPO (S.D.N.Y. 2009) $510 million 33.3% Vitamins $365 million 34.6% Tricor $316 million 33.3% U.S. Food Service (D. Conn. 2014) $297 million 33.3% Relafen Direct RX Purch. $242 million 33.3% Busiprone (S.D.N.Y. 2003) $220 million 33.3% DeLoach v. Phillip Morris $212 million 33.3% Neurontin Antitrust $191 million 33.3% Titanium Dioxide Antitrust Lit $163.5 million 33.3% Haddock (D. Conn. 2017)(ERISA) $140 million 35%.

These settled cases demonstrate that Class Counsel's fees are too high especially since the recovery was minimal compared to the above case settlements. Class Counsel also failed to set any new precedents in this case, did not have a high class-certification risk, did not they publicly disclose any discovery information whatsoever for the benefit of class members until this Objector (and

others) first requested it. Plan Counsel has not participated in any appeals or court objections. As such their fee is too high, not reasonable, or fair to class members, not to mention fair to the class action court system in general.

### *1. The Fee for Plaintiff's Counsel Is Too High in Relation to the Recovery*

Under *Goldberger*'s "fair percentage of the settlement [or recovery]" test, 209 F.3d at 50, courts evaluate the reasonableness of requested fee by looking to awards found reasonable in comparable cases. E.g., In re Veeco, 2007 WL 4115808, at *7. For example, in *Osberg v. Foot Locker, Inc.*, 138 F. Supp. 3d 517 (S.D.N.Y. 2015, the litigation lasted more than a decade, involved a successful trial, two successful appeals, and achieved a recovery of a full 100% of the damages claimed. If this 100%-recovery, 11-year litigated-to-judgment case is not above average, it is hard to know what is. The *Snitzer* settlement pales in comparison to *Foot Locker*! If ever there were a case where a one-third fee was appropriate and well-deserved, it is Foot Locker, not Snitzer!

Additionally, *Foot Locker* was litigated to judgment. It's 4.8 multiplier rating was a mathematical expression of two positive features of this case: (1) the efficiency of the Class's lawyers working an intensely demanding, complex matter over a long period, coupled with (2) their extraordinary achievement of a 100% recovery, $290 million fund. Especially when compared with cases of more

complexity or achievement which resulted in multipliers larger than that sought in this case, *Snitzer* Plaintiff Counsel's fee application cross checks poorly.

## 2. *The record does not demonstrate arms length fee negotiations*

With respect to Plaintiff's legal fees, Mr. Schwartz' Declaration does not state when or how the subject of legal fees for Counsel was decided. In order to be sure that Counsel's legal fees were negotiated at arms length, more detail needs to be given by counsel for how attorneys' fees for class counsel were negotiated and agreed upon.

In sum, Plaintiff's Counsel has simply let members of the class down. Thus, the award of maximum legal fees should not be accepted by this Court, or any Court within the Second Circuit, which has the most instances of reducing counsel fees of any circuit. Where a class has been certified, a district court "may award reasonable attorney's fees and non-taxable costs." Fed. R. Civ. P. 23(h). However, as stated by the Second Circuit in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000):

> The point is that plaintiffs in common fund cases typically are not fully informed. Nor are they able to negotiate collectively, or at arm's length. That is why we emphasized in *Grinell I*, as we rejected a 15% fee, that awards in these cases are proper only "if made with *moderation*." 495 F.2d at 469 (emphasis added) (quoting Greenough, 105 U.S. at 536). As *Grinell II* instructs, the court is to act "as a fiduciary who must serve as a guardian of the rights of absent class members." 560 F.2d at 1099 (internal quotation marks omitted).

Continuing, the Second Circuit stated:

All these considerations have fed the perception among both Commentators and the Congress that plaintiffs in common fund cases are mere "figureheads," and that the real reason for bringing such actions is "the quest for attorneys fees." Ralph K. Winter: *Paying Lawyers, Empowering Prosecutors, and Protecting Managers: Raising the Cost of Capital in America*, 42 Duke L.J. 945, 984 (1993); *see* Private Securities Litigation Reform Act of 1995, H.R. Rep. No. 104-369 (1995) *passim, reprinted in* 1995 U.S.C.C.A.N. 730, *passim* (criticizing abusive lawyer-driven securities class actions). This is why we continue to approach fee awards "with an eye to moderation." *Grinnell II*, 560 F.2d at 1099 (quoting *Grinnell I*, 495 F.2d at 470).

We appreciate that fixing a reasonable fee becomes even more difficult because the adversary system is typically diluted—indeed Suspended—during fee proceedings. Defendants, once the settlement amount has been agreed to, have little interest in how it is distributed and thus no incentive to oppose the fee. *See Continental Illinois*, 962 F.2d at 572. Indeed, the same dynamic creates incentives for collusion—the temptation for lawyers to agree to a less than optimal settlement "in exchange for red-carpet treatment on fees". *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991) (citing John C. Coffee, Jr. *The Unfaithful Champion: The Plaintiff as Monitor in Shareholder Litigation*, 48 Law Contemp. Probs. 5, 26-33 (1985)). And the class members—the intended beneficiaries of the suit—rarely object.

Therefore, I formally object to the high legal fees in the proposed settlement agreement.

### 3. The Reaction to the Settlement by the class has not been positive

As far as the reaction by the class to the settlement, the settlement has been universally panned by class members on the AFM-EPF Facebook discussion group website. It was the failure of the Governance Provisions to "have teeth" which drove the decision of certain class members to first search for and then hire an attorney to represent them during the objection process with an eye to dramatically

improving the accountability of the Trustees going forward.  The email that the Trustees put out immediately following the settlement, for example, was widely viewed by class members as disparaging of the Plaintiffs and members of the class who wanted greater accountability and transparency from the Trustees, and who could not believe the Trustees had stated in public after settlement that they would continue their past [failed} policies of risky and illiquid investments and excessive fees to multiple investment managers despite the settlement provisions. This angered many class members. Case law relating to Plan Trustees who breach their fiduciary duty as Plan Trustees here have made clearly misleading statements to class members in February 2015 (that the fund would remain solvent until 2047 and that the passage of MPTRA by Congress in 2014 would not result in cuts to the AFM-EPF Plan in the future) suggest that "plan reformation" is the equitable remedy that is not found whatsoever in this settlement, Thus the class has not been adequately represented by counsel.

Writing in the AFM-EPF Facebook discussion group, Plaintiff Andy Snitzer wrote on April 29, 2020:

> A little more math today, on the idea of the wisdom of being out of U.S. equities during this crisis. From January 17 to present (more or less the timing of the global pandemic), the Russell 3000 (a broad measure of US equities) is down 13%. Comparatively, iShares EEM EFT (a broad measure of emerging market equities) is down 20%. ... It's all out there on Yahoo Finance for anyone that has a little free time…

Snitzer also wrote on March 31, 2020 on the AFM-EPW Discussion group:

In fact, the fund's version of an 8.9% avg/annual return 4/1/09-4/1/2019 is essentially equivalent to the return of the Vanguard Balanced Index Fund (VBIAX) over the same period (8.6% avg/annual). ... Net, for all that risk (and expense) taken via emerging market equity, hedge, private equity, derivative strategies like absolute return, our fund trustees barely beat a very conservative low-cost balanced index fund. Not something I'd be bragging about.

Similarly, class member Jay Rosen wrote:

The [AFM] email is hostile, combative, defensive and divisive. *I challenge any AFM-EPF Trustee to come forward and defend the tone of this pathetic attack*. The Trustees would have us believe, by their explanation, that there was nothing they could have done to mitigate the AFM-EPF disaster. It's amazing, isn't it that dozens of comparable Pension Plans managed to avoid disaster. The Trustees email is short on the facts, long on vitriol and contains scathing attacks on the AFM members who brought the lawsuit in good faith. Please take note of the fact that the 1437-word diatribe from our "compassionate" Trustees, contains just 49 words about our health and safety at the very end. The Trustees made their priorities crystal clear. By the way, what insurance company do you know that would sign off on a 27-million-dollar Class Action Settlement if they did not fear much greater culpability and liability as a result of a trial?

Class Member Dennis Dreith, commenting on Jay Rosen's post:

"Well put, Jay. I really appreciate your taking the time to post this and your willingness to call it like you see it regardless of who this may upset. Bravo!

That was but one of 32 other similar comments of anger on one day directed against this settlement and our trustees. Thus, objections in opposition to this settlement are so strong by class members that this Court should not give final approval to this settlement.

### 4. Ability of Defendants to Withstand a Greater Judgment

With regard to the ability of the defendants to withstand a greater judgment, the proposed settlement fails to address a number of issues that were obviously available to Plaintiff's Counsel that would have increased the recovery for the class. Importantly, the settlement fails to add Meketa and other similar investment firms as co-fiduciary defendants.

> [U]nder ERISA, even if a person is not a named fiduciary of an ERISA plan, it can be a de facto fiduciary if it 'exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets.'" *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 223 (2d. Cir. 2018) (emphasis in original) (quoting 29 U.S.C. § 1002(21)(A).

Under ERISA Section 409, fiduciaries are personally liable for a breach of fiduciary duty, including claims that they allowed the plan and its participants to pay excessive fees and use expensive and underperforming investments. Some fiduciaries mistakenly believe that they can entirely avoid this liability by hiring professionals to handle all of these decisions. But the law does not allow fiduciaries to totally delegate away all of their fiduciary responsibility.

"[I]n suits alleging breach of fiduciary duty, the "threshold question" is whether in so doing the defendants were acting as fiduciaries "when taking the action subject to complaint". *Pegram v. Herdrich*, 530 U.S. 211, 226, 120 S. Ct. 2143, 147 L.Ed.2d 164 (2000). The Amended Snitzer complaint makes clear that at ¶105 investment advisor and co-fiduciary, Meketa, repeatedly gave the Plan

imprudent investment advice that caused the Plan to lose assets due to risky and illiquid investments. Therefore, Plaintiff's counsel clearly should have added Meketa as a co-fiduciary/co-defendant with liability in this action. Meketa has much more money available towards a potential verdict or settlement than the Plan Trustees alone. Thus, Plaintiff's counsel failed to be robustly adversarial on behalf of class members in investigating Meketa's conduct, including its personal ties to the Trustees, and unreasonably failed to add Meketa (and possibly other investment firms) as a co-defendant/co-fiduciary. As this Court ruled on 11/30/2017, the fact that allegations may be damaging to the reputation of a third-party is not, standing alone, an adequate basis to withhold information from the public.

Since three employees of Meketa were deposed in the instant action, there should be full and complete disclosure of the three depositions to class members within five days of this Court's Order so that class members may consider also pursue legal action against Meketa. There should be no limitations in the settlement release relating to Meketa's or any other investment firm which has a similar co-fiduciary liability to members of the class whatsoever.

Moreover, Meketa was but one of many active investment advisers that charged excessive fees for their services. Plan fiduciaries have a duty to ensure that plan recordkeeping and investment management fees are reasonable, and that plan

investments perform well. In excessive fee claims, plan participants allege that plan fiduciaries failed on both counts and breached their fiduciary duties.

Specifically, they allege that a plan is paying too much to its record keeper and investment manager. They also take aim at something called "revenue sharing," claiming that revenue sharing bloats the record keeping fees even more. Revenue sharing occurs when a mutual fund manager pays or "shares" part of its mutual fund's fees with the record keeper for purposes that are unrelated to the management of the mutual fund, such as a marketing fee. Finally, they allege that the plan is using investments that underperform their benchmarks. This Objector knows that these fiduciary breaches cost the Plan hundreds of millions of dollars in lost retirement benefits. Thus, it can hardly be claimed that class members received adequate representation by class counsel when they failed to add Meketa and others as co- fiduciaries.

### *5. Plaintiff's Counsel Acquiescence in No Opt-Out Provision Impedes Class Members Due Process Rights*

Because class members generally do not actively participate in a class action lawsuit, class actions pose a risk that the class representative and his counsel will not always act in accordance with the class members' best interests. Specifically, Class certification importantly affects the due process rights of absent class members thru opt-out procedures. In an attempt to balance the benefits of class actions against the risks to defendants and class members, Federal Rule of Civil

Procedure establishes a rigorous series of prerequisites that a federal class action must satisfy. For similar reasons, Rule 23 also subjects proposed action settlements to the scrutiny of federal courts.

Class Counsel unreasonably ignored the case law on class certification or simply chose to look the other way in return for a better fee. *Carr v. Int'l Game Tech.*, 09-cv-00584- (D. Nev. Mar. 16, 2012) presents one of the best arguments why a non opt-out clause does not work in a case such as *Snitzer* that has a cause of action based on a breach of fiduciary due to misrepresentation, and false and deceptive statements. Please see below a portion of the opinion in the above case.

> Courts that find that class certification is not appropriate with regard to claims for breach of fiduciary duty based on a misrepresentation theory have reasoned that the issue of reliance is highly individualized and not suitable for class treatment. Id. (citations omitted); *see also George v. Duke Energy Retirement Cash Balance Plan*, 259 F.R.D. 225, 240 (D.S.C. 2009) (denying certification of misrepresentation claims because individual reliance issues defeat commonality requirement of Rule 23(a)); *In re Merck & Co., Inc. Sec., Derivative, & "ERISA" Litig.*, MDL No. 1658 (SRC), 2009 WL 331426, at *6 (D.N.J. Feb. 10, 2009) ("The individual character of the communications claims prevents concluding that the allege breach has similarly affected the potential class members."

> "As to the communications claims, the proposed class fails to satisfy the requirements for certification under Rule 23.") (footnote omitted); *Tootle v. ARINC, Inc.*, 222 F.R.D. 88, 98 (D.Md. 2004) (denying certification upon determining that disclosure claim requires individual showings of detrimental reliance); *Wiseman v. First Citizens Bank & Trust Co.*, 215 F.R.D. *8 507, 510-511 (W.D.N.C. 2003) (reaffirming previous ruling denying motion for class certification upon finding that each class member would have to establish reliance).

We agree with those courts that find that individual issues of reliance in a communications claim brought pursuant to ERISA § 502(a)(2) defeat commonality. As noted above, detrimental reliance is indisputably an element of a claim based on a misrepresentation theory. Plaintiffs should not be allowed to eschew proving the causation element of their communications claim because they bring this action on behalf of the Plan. *See Newton v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001) ("If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable."). As the court noted in *Merck*, "[i]nvestment decisions are highly individualized, and thus the individual circumstances of the plaintiffs markedly differ." 2009 WL 331426, at *6. In order to prove detrimental reliance, the Plaintiffs would have to establish that each member of the proposed class relied on the Defendants' alleged misrepresentation in making his or her decision to invest in IGT stock. *See Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 457 (11th Cir. 1996) (denying class certification in an ERISA case because requirement that plaintiffs show that all members of the class would have deferred their retirement had the misrepresentation not been made defeated commonality); *Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir. 1982) (requiring proof of a causal connection between breach of fiduciary duty and losses incurred). Such proof *9 requires an individualized analysis and cannot be presumed from the behavior of the named Plaintiffs. This case will likely become a series of individualized analyses once some of the general issues in common have been resolved. "Judicial economy is not best served by using a class action in order to engage in such individualized analyses." *Groussman v. Motorola, Inc.*, No. 10 C 911, 2011 WL 5554030, *4 (N.D.Ill. Nov. 15, 2011).

Therefore, Objector respectfully requests that this Court should re-consider class certification and then make *Snitzer* an opt-out class action.

When I retired in 2009, I carefully looked over the various retirement options, including normal retirement (at age 65), early retirement, retirement with a spousal benefit, and even "re-retirement". I eventually chose to take early retirement. However, nothing in the Plan materials that I received, and which I still

have, notified me about whether my early retirement was an "unsubsidized" or a "subsidized" early retirement. I believe that the failure by the Trustees to give Objector proper notice about whether his benefit was "subsidized" or unsubsidized" is a breach of the Defendant's fiduciary duties.

On December 30, 2019 when the AFM-EPF Trustees applied to the U.S. Department of Treasury for a reduction in benefits under MPRA, the Trustees then announced retroactively that the early retirement benefit that I had received was indeed "subsidized", and would require a much larger cut in my benefits than if my early retirement had been "unsubsidized". I argue that this misrepresentation from 2009, when I retired, was fraudulent and misleading, and I seek to have the Plan "reformed" to state that my early retirement was "unsubsidized". And if the cuts are approved by the Department of Treasury, then I want the Trustees to make restitution to me for any losses whatsoever in my pension benefit. Similarly, for those who took "re-retirement" and are now being penalized retroactively for that choice, the Trustees must be held accountable to the individual class members who made that selection due to their misrepresentation. Thus, due to the individualized circumstances of each class member and Plan Participant, Objector respectfully requests that this Court re-consider class certification to make *Snitzer* an opt-out class action. In the alternative, in order to preserve due process, the Court should grant "carve outs" or releases to all those individual class members who may have

31

claims as set forth in this Objection or in other documents filed on the record in this case by Mr. Stoner.

## CONCLUSION

For all these reasons, I object to the final approval of the proposed settlement.

Dated:  New York, New York
        June 16, 2020

                                    Respectfully submitted,

                                    *Martin Stoner*

                                    MARTIN STONER
                                    900 West End Avenue
                                    New York, New York 10025
                                    (212) 866-5447
                                    jilmar_10025@yahoo.com

MARTIN STONER
900 West End Avenue
New York, New York 10025
(212) 866-5447

*Via certified mail*

June 25, 2020

The Honorable Valerie E. Caproni, U.S.D.C.J.
Southern District of New York
United States Courthouse
40 Foley Square, Room 240
New York, New York 10007

Re: *Snitzer and Livant v. The Board of Trustees of the American Federation
of Musicians and Employers' Pension Fund, et al.,* 17-cv-5361 (VEC)

Dear Judge Caproni:

I write as a member of the class in the above-referenced matter to clarify the
additional discovery that I seek as per this Court's Memo-Endorsed Order
dated June 22, 2020 EFC # 165.

For clarification, I am seeking public disclosure of the contemporaneous
notes of relevant board meetings taken by Plan Counsel. In support of that
disclosure I again reference both the Court's Individual Rules and case law
supporting such a release.

Referring to Plan Counsel in ¶14 of the Amended Complaint, it states:

> "Plan counsel urged Defendants against disclosing the full Meketa
> reports to Plan participants because, among other reasons, the
> reports contain "damaging information" that "looks bad" reflecting
> that "[o]f the dozen or so active managers retained by the Fund, 10
> have provided lackluster--or worse than lackluster--returns over
> more lengthy periods of time, and the average 5- and 10- (and in
> some cases 3-) year portrayals look worse..."

The Honorable Valerie E. Caproni
Page 2
June 25, 2020

In ¶121, we find additionally:

> In February 2017, as Defendants considered what information to
> provide in response to the stunned participants after the Plan's
> disclosure of the Fund's emergency circumstances, Plan counsel
> urged Defendants to limit the information provided concerning the
> bad performance of the Fund and its stable of active managers. Plan
> counsel wrote: "of the dozen or so active managers retained by the
> Fund, 10 have provided lackluster – or worse than lackluster -
> returns over more lengthy periods of time and the 'average 5- and
> 10- (and in some cases even 3-) year portrayals look worse, at least
> to my eye, than the single year returns....' I would, therefore,
> consider using the single year returns only." Similarly, Plan counsel
> wrote: "...I would at least delete the 'manager to peer universe
> rankings' entirely. First, I am not sure the peer universe replicates
> closely the Fund's actual peers. Second, purely from an optics
> perspective, and you don't need a 'trained eye' to come to the
> conclusion or very much analysis of the Fund's dozen or so active
> managers, 10 of them reflect 50th percentile rankings or worse when
> compared to 56 peers (and a few in the 90th percentile) during
> certain time periods."

Moreover, regarding Plan Counsel's breach of fiduciary duty and
perpetration of a fraud, we have ¶149:

> ¶149. As Defendants were preparing the information that would be
> provided to the participants in the roadshows, Plan counsel urged
> Defendants to provide enough information for participants to "chew
> on" but to "omit data that does not cast the Fund in the best light."
> Similarly, Plan counsel noted that providing Meketa's full reports for
> different periods to participants would provide reports "which may
> very well have other information that we may not want to reveal."
> Further, as alleged above, the full reports would show the abysmal
> pervasive underperformance by the active managers

The Honorable Valerie E. Caproni
Page 3
June 25, 2020

Finally, according to ¶192 of the Amended Complaint:

> In May 2016, the Board of Trustees formed a Communication
> Committee to address communications with Plan participants
> concerning the Fund's financial condition and funding status….The
> Committee sought to control, if not deter Plan participants from
> obtaining important information about the Plan)…The Committee
> also sought to "curtail" the ability of Plan participants to get the
> important documents that they were entitled to receive under
> ERISA…..In March 2017, the [Communications] Committee decided
> to post only the Meketa quarterly reports on the Plan website, instead
> of the full version of the reports, which show important information
> such as historical manager performance.

Thus, what the complaint alleges (and what I am similarly alleging) is that
Plan Counsel participated in fraudulent and illegal conduct when he urged
the Defendants not to release the full, accurate, transparent, and and
undistorted Plan information to Plan participants in violation of ERISA.
Moreover, since the Defendants actually acted on Mr. Albert's advice by
failing to release the full Meketa reports to Participants as per Plan
Counsel's advice, Mr. Rory Albert participated in a crime that actually
occurred. Therefore, the attorney-client and attorney work product privilege
should be revoked on Plan Counsel's notes and other documents that I am
requesting because of the crime-fraud exception.

In the Second Circuit, the standard of proof required to override the privilege
is a showing of "probable cause to believe that a crime or fraud ha(s) been
committed and that the communications were in furtherance thereof." In re
John Doe v. United States, 13 F.3d 633, 637 (2d Cir. 1994) (citing In re
Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1039 (2d Cir. 1984)).
The court explained, "This standard has been rephrased as requiring 'that a
prudent person have a reasonable basis to suspect the perpetration or
attempted perpetration of a crime or fraud, and that the communications
were in furtherance thereof.'" Id. at 637. Once probable cause is shown, the
trial judge may exercise discretion to decide whether to conduct an in
camera review. United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997). The

The Honorable Valerie E. Caproni
Page 4
June 25, 2020

Second Circuit's "first step" presents a higher hurdle for the discovering
party than does Zolin's "first step," because Zolin merely required a
showing that in camera review may reveal evidence that the crime-fraud
exception applies. Zolin, 491 U.S. at 572.

In In re Richard Roe, 68 F.3d 38 (2d Cir. 1995). the Second Circuit
examined the "in furtherance" requirement in its crime-fraud jurisprudence.
The court explored the difference between the "relevant evidence" and the
"in furtherance" tests for application of the crime-fraud exception. Id. at
40.  It reasoned that if the crime-fraud exception could attach to privileged
materials merely because they provide evidence of a crime, the privilege
would be "virtually worthless" because a client could never discuss anything
with counsel that might support a finding of guilt. Id. The crime-fraud
exception, it decided, can therefore only apply when the communication
itself was "in furtherance" of a crime or fraud, i.e., when it was intended to
facilitate or conceal the criminal activity, Id. and if the "requisite purposeful
nexus" was shown. Id. (quoting In re Grand Jury Subpeona Duces Tecum,
731 F.2d 1032 (2d Cir. 1984).

Thus, Plan Counsel's notes of board meetings may be disclosed according to
Second Circuit case law because it was intended to facilitate a crime.

Lastly, since I am alleging the existence of a crime and have supplied factual
evidence to support the allegations in the amended complaint, I hereby
request that this Court contact the Department of Justice as per CAFA, to
weigh in on the settlement in light of the fact that the Department of Justice
has the right to pursue criminal charges against Mr. Albert and other
Defendants for their criminal behavior in this case first.

Thank you very much for your time and your consideration.

Very truly yours,

Martin Stoner
(copies to all counsel via email)

Importantly, the crime-fraud exception can apply even if counsel is unaware that the advice is being sought for an improper purpose. It is the client's intent, not the attorney's, that controls the analysis.
---

encouragement. Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case. Absent a showing of extraordinary circumstances, the court file must remain accessible to the public."). *Brown v. Advantage Engineering Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992)

Thank you very much for your time and your consideration

Very truly yours,

Martin Stoner
(copies to all counsel via email)

¶ 192 In May 2016, the Board of trustees formed a Communication Committee to address communications with Plan participants concerning the Fund's financial condition and funding status….

The Committee sought to control, if not deter Plan participants from obtaining important information 9about the Plan)…The Committee also sought to "curtail" the ability of Plan partifipants to get the important documents that thye werte entitled to receive under ERISA.

In March 2017, the [Communiucations} COMMITTEE DECIDED TO ONLY POST SUMMARY MEKETA quarterly reports on the Plan website, instead of the fukll version of the reports, which show important information such as historical manager performance.

--April 20th letter to Court

Moreover with regard to adequate discovery, why did Plaintiff's counsel not ask for the handwritten notes of Board of Trustees meetings? This material is first-hand knowledge, which could either corroborate or eviscerate the testimony of Trustees Brockmeyer and Hair. Therefore, before this settlement is approved I want to see both the relevant handwritten Trustees' notes and the un-redacted depositions of Trustees Hair and

Brockmeyer provided to class members.

# Request for Discovery

ATTN. The Honorable Valerie E. Caproni, United States District Court For The Southern District of New York, 40 Foley Square, Room 240 N.Y, New York 10007

**RE: Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians and Employers' Pension Fund, et al., No. 1:17cv-05361-VEC**

**In light of the unprecedented pandemic and the ages of many of the class, we respectfully ask the judge to allow the request for disclosure via email, to avoid exposure in public places.**

**We ask for these documents to be make available:**

1.  We respectfully request that the depositions of Ray Hair and Chris Brockmeyer, trustees of the AFM-EPF be made available and unsealed so that we can determine the truthfulness of their communication to the class regarding our rights to consult about our pension investments and our right to make decisions regarding voting in future AFM leadership elections.

2.  We respectfully request the the depositions of Ray Hair and Chris Brockmeyer be unsealed in light of the recent communication to all members by AFM web notifications pension fund notes dated 3/29/2020 in which they state victory regarding the settlement and their strenuous defense of their investment decisions for the past 10 years. They state this settlement will not cause them to make any changes to their strategies whatsoever.

3.  Copies via email to all counsel

## My Personal Information

**Name: Christopher Deschene**

**Address: 719 Emory Drive, Chapel Hill, North Carolina, 27517**

**Email Address: christopher.deschene@gmail.com**

**Telephone Number: 919-933-2402**

Dated 6/29/2020

Signed:

Printed Name: Christopher Deschene

# Request for Discovery

ATTN. The Honorable Valerie E. Caproni, United States District Court For The Southern District of New York, 40 Foley Square, Room 240 N.Y, New York 10007

**RE: Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians and Employers' Pension Fund, et al., No. 1:17cv-05361-VEC**

**In light of the unprecedented pandemic and the ages of many of the class, we respectfully ask the judge to allow the request for disclosure via email, to avoid exposure in public places.**

**We ask for these documents to be make available:**

1. We respectfully request that the depositions of Ray Hair and Chris Brockmeyer, trustees of the AFM-EPF be made available and unsealed so that we can determine the truthfulness of their communication to the class regarding our rights to consult about our pension investments and our right to make decisions regarding voting in future AFM leadership elections.

2. We respectfully request the the depositions of Ray Hair and Chris Brockmeyer be unsealed in light of the recent communication to all members by AFM web notifications pension fund notes dated 3/29/2020 in which they state victory regarding the settlement and their strenuous defense of their investment decisions for the past 10 years. They state this settlement will not cause them to make any changes to their strategies whatsoever.

3. Copies via email to all counsel

## My Personal Information

**Name: Jody Jarowey**

**Address: 719 Emory Drive, Chapel Hill, North Carolina, 27517**

**Email Address: JJarowey@gmail.com**

**Telephone Number: 919-933-2402**

Dated 6/29/2020

Signed:

Printed Name: Jody Jarowey

**MARTIN STONER**
900 West End Avenue
New York, New York 10025
(212) 866-5447



*Via certified mail*

June 23, 2020

The Honorable Valerie E. Caproni, U.S.D.C.J.
Southern District of New York
40 Foley Square, Room 240
New York, New York 10007

Re: *Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians and Employers' Pension Fund, et al.,* 17-cv-5361 (VEC)

Dear Judge Caproni:

I write as a member of the class in the above-referenced matter. As noted in Mr. Schwartz letter to this Court dated June 22, 2020 ECF # 164, I respectfully requested in my June 16, 2020 Objection the public disclosure of the following depositions:

1. Three Meketa witnesses
2. Former Plan Counsel and Proskauer partner Rory Albert
3. AFM Union President/Plan Co-Chair Ray Hair
4. Employer-side Plan- and Investment-Committee Co-Chair Chris Brockmeyer

Accountability is a principal reason for public access. *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) ("An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny."); *Jessup v. Luther*, 277 F.3d 926, 928 (7th Cir. 2002) ("the public cannot monitor judicial performance adequately if the records of judicial proceedings are secret"); *id.* at 929 ("The public has an interest in knowing what terms of settlement a federal judge would approve and perhaps therefore nudge the parties to agree to."); *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000). ("It is immaterial whether the sealing of the record is an integral part of a negotiated settlement between the parties, even if the settlement comes with the court's active

The Honorable Valerie E. Caproni
Page 2
June 23, 2020

encouragement. Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case. Absent a showing of extraordinary circumstances, the court file must remain accessible to the public."). *Brown v. Advantage Engineering Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992)

Many appellate opinions have stressed the importance of the court's stating specific reasons for sealing a filed document. *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) ("Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient."); *Stone v. University of Maryland Medical Sys- tem Corp.*, 855 F.2d 178, 182 (4th Cir. 1988) ("the district court must provide a clear statement, supported by specific findings, of its reasons for sealing any records or documents, as well as its reasons for rejecting measures less drastic than sealing them"); *Hagestad v. Tragesser*, 49 F.3d 1430, 1435 (9th Cir. 1995) ("because the district court failed to articulate any reason in support of its sealing order, meaningful appellate review is impossible").

Mr. Stoner, therefore, seeks discovery related to whether or not the settlement negotiations were conducted at arm's length with respect to attorneys' fees. It is obvious from the joint letter ECF # 164, that Mr. Schwartz put his own personal interest (in his full fee) above the greater interests of the class members for full disclosure, a point I make repeatedly in my Objection. His letter again highlights Mr. Schwartz refusal to state his own support for full disclosure to the class in opposition to Defendant's wish to deny additional disclosure. This failure to stand up for the class bolsters my claim that Mr. Schwartz continues to fail to adequately represent the best interests of the class by constantly siding with the Defendants.

In order to force Mr. Schwartz to publicly declare his support for the best interests of the class in full disclosure, I ask the Court to order that both parties' counsel make separate declarations under oath about whether or not they support or object to my request for further disclosure. That will show where Mr. Schwarz really stands, i.e., with the Defendant!

The Honorable Valerie E. Caproni
Page 3
June 23, 2020

Furthermore, in my Objection I did already ask for additional disclosure
from the parties on the issue of whether the discussions about attorney's fees
were conducted at arms length, an important consideration for approval of
this settlement. Both Mr. Schwartz and Defendant's counsel are silent on that
important issue in ECF # 164!

Therefore, I further request that the parties respond to the Court's Memo-
Endorsed Order ECF # 165 dated 6/23/2020 in separate declarations, with
each party's counsel's explaining in detail how the subject of attorneys fees
came up and was decided upon and whether that occurred before or after the
agreement on monetary damages and also whether it occurred before or after
the separate agreement on Governance Provisions, and to disclose under
oath specifically if either counsel had any conversations and/or
correspondence about attorneys fees separate and apart from the purview of
the settlement mediator before the settlement was finally concluded and in
submitting their separate declarations.

If the Court fails to permit my request for separate declarations by respective
counsel, then I respectfully ask this Court for permission to depose Mr.
Schwartz and Mr. Rumfeld separately on this matter as well as on other
topics related to my Objections prior to the fairness hearing.

Thank you very much for your time and your consideration

Very truly yours,

Martin Stoner
(copies to all counsel via email)

3

MARTIN STONER
900 West End Avenue
New York, New York 10025
(212) 866-5447



*Via certified mail*

June 25, 2020

The Honorable Valerie E. Caproni, U.S.D.C.J.
Southern District of New York
United States Courthouse
40 Foley Square, Room 240
New York, New York 10007

Re: *Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians and Employers' Pension Fund, et al.,* 17-cv-5361 (VEC)

Dear Judge Caproni:

I write as a member of the class in the above-referenced matter to clarify the additional discovery that I seek as per this Court's Memo-Endorsed Order dated June 22, 2020 EFC # 165.

As Mr. Scwartz correctly pointed out to this Court in his letter also dated June 22, 2020, I am seeking public disclosure of the contemporaneous notes of relevant board meetings taken by Plan Counsel. In support of that disclosure I again reference both the Court's Individual Rules and case law supporting such a release.

Referring to Plan Counsel in ¶14 of the Amended Complaint, it states:

> "Plan counsel urged Defendants against disclosing the full Meketa reports to Plan participants because, among other reasons, the reports contain "damaging information" that "looks bad" reflecting that "[o]f the dozen or so active managers retained by the Fund, 10 have provided lackluster--or worse than lackluster--returns over more lengthy periods of time, and the average 5- and 10- (and in some cases 3-) year portrayals look worse..."

The Honorable Valerie E. Caproni
Page 2
June 25, 2020

In ¶121, we find additionally:

> In February 2017, as Defendants considered what information to provide in response to the stunned participants after the Plan's disclosure of the Fund's emergency circumstances, Plan counsel urged Defendants to limit the information provided concerning the bad performance of the Fund and its stable of active managers. Plan counsel wrote: "of the dozen or so active managers retained by the Fund, 10 have provided lackluster – or worse than lackluster - returns over more lengthy periods of time and the 'average 5- and 10- (and in some cases even 3-) year portrayals look worse, at least to my eye, than the single year returns....' I would, therefore, consider using the single year returns only." Similarly, Plan counsel wrote: "...I would at least delete the 'manager to peer universe rankings' entirely. First, I am not sure the peer universe replicates closely the Fund's actual peers. Second, purely from an optics perspective, and you don't need a 'trained eye' to come to the conclusion or very much analysis of the Fund's dozen or so active managers, 10 of them reflect 50th percentile rankings or worse  when compared to 56 peers (and a few in the 90th percentile) during certain time periods."

Moreover, regarding Plan Counsel's breach of fiduciary duty and perpetration of a fraud, we have ¶149:

> ¶149. As Defendants were preparing the information that would be provided to the participants in the roadshows, Plan counsel urged Defendants to provide enough information for participants to "chew on" but to "omit data that does not cast the Fund in the best light." Similarly, Plan counsel noted that providing Meketa's full reports for different periods to participants would provide reports "which may very well have other information that we may not want to reveal." Further, as alleged above, the full reports would show the abysmal pervasive underperformance by the active managers

The Honorable Valerie E. Caproni
Page 3
June 25, 2020

Finally, according to ¶192 of the Amended Complaint:

> In May 2016, the Board of Trustees formed a Communication
> Committee to address communications with Plan participants
> concerning the Fund's financial condition and funding status….The
> Committee sought to control, if not deter Plan participants from
> obtaining important information about the Plan)…The Committee
> also sought to "curtail" the ability of Plan participants to get the
> important documents that they were entitled to receive under
> ERISA…..In March 2017, the [Communications] Committee decided
> to post only the Meketa quarterly reports on the Plan website, instead
> of the full version of the reports, which show important information
> such as historical manager performance.

Thus, what the complaint alleges (and what I am similarly alleging) is that
Plan Counsel participated in fraudulent and illegal conduct when he urged
the Defendants not to release the full, accurate, transparent, and and
undistorted Plan information to Plan participants in violation of ERISA.
Moreover, since the Defendants actually acted on Mr. Albert's advice by
failing to release the full Meketa reports to Participants as per Plan
Counsel's advice, Mr. Rory Albert participated in a crime that actually
occurred. Therefore, the attorney-client and attorney work product privilege
should be revoked on Plan Counsel's notes and other documents that I am
requesting because of the crime-fraud exception.

In the Second Circuit, the standard of proof required to override the privilege
is a showing of "probable cause to believe that a crime or fraud ha(s) been
committed and that the communications were in furtherance thereof." In re
John Doe v. United States, 13 F.3d 633, 637 (2d Cir. 1994) (citing In re
Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1039 (2d Cir. 1984)).
The court explained, "This standard has been rephrased as requiring 'that a
prudent person have a reasonable basis to suspect the perpetration or
attempted perpetration of a crime or fraud, and that the communications
were in furtherance thereof.'" Id. at 637. Once probable cause is shown, the
trial judge may exercise discretion to decide whether to conduct an in
camera review. United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997). The

The Honorable Valerie E. Caproni
Page 4
June 25, 2020

Second Circuit's "first step" presents a higher hurdle for the discovering party than does Zolin's "first step," because Zolin merely required a showing that in camera review may reveal evidence that the crime-fraud exception applies. Zolin, 491 U.S. at 572.

In In re Richard Roe, 68 F.3d 38 (2d Cir. 1995). the Second Circuit examined the "in furtherance" requirement in its crime-fraud jurisprudence. The court explored the difference between the "relevant evidence" and the "in furtherance" tests for application of the crime-fraud exception. Id. at 40.  It reasoned that if the crime-fraud exception could attach to privileged materials merely because they provide evidence of a crime, the privilege would be "virtually worthless" because a client could never discuss anything with counsel that might support a finding of guilt. Id. The crime-fraud exception, it decided, can therefore only apply when the communication itself was "in furtherance" of a crime or fraud, i.e., when it was intended to facilitate or conceal the criminal activity, Id. and if the "requisite purposeful nexus" was shown. Id. (quoting In re Grand Jury Subpeona Duces Tecum, 731 F.2d 1032 (2d Cir. 1984).

Thus, Plan Counsel's notes of board meetings may be disclosed according to Second Circuit case law because it was intended to facilitate a crime.

Lastly, since I am alleging the existence of a crime and have supplied factual evidence to support the allegations in the amended complaint, I hereby request that this Court contact the Department of Justice as per CAFA, to weigh in on the settlement in light of the fact that the Department of Justice has the right to pursue criminal charges against Mr. Albert and other Defendants for their criminal behavior in this case first.

Thank you very much for your time and your consideration.

Very truly yours,

Martin Stoner

Martin Stoner
(copies to all counsel via email)