UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREW SNITZER and PAUL LIVANT, individually
and as representatives of a class of similarly situated
persons, on behalf of the American Federation of
Musicians and Employers' Pension Plan,

                                       Plaintiffs,

v.

THE BOARD OF TRUSTEES OF THE AMERICAN
FEDERATION OF MUSICIANS AND EMPLOYERS'
PENSION FUND, THE INVESTMENT COMMITTEE
OF THE BOARD OF TRUSTEES OF THE
AMERICAN FEDERATION OF MUSICIANS AND
EMPLOYERS' PENSION FUND, RAYMOND M.
HAIR, JR., AUGUSTINO GAGLIARDI, GARY
MATTS, WILLIAM MORIARITY, BRIAN F. ROOD,
LAURA ROSS, VINCE TROMBETTA, PHILLIP E.
YAO, CHRISTOPHER J.G. BROCKMEYER,
MICHAEL DEMARTINI, ELLIOT H. GREENE,
ROBERT W. JOHNSON, ALAN H. RAPHAEL,
JEFFREY RUTHIZER, BILL THOMAS, JOANN
KESSLER, MARION PRESTON,

                                      Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  07/20/2020

No. 1:17-cv-5361 (VEC)

**ORDER**

VALERIE CAPRONI, United States District Judge:

       IT IS HEREBY ORDERED that the attached objections are filed on ECF for purposes of

maintaining an accurate public record.

**SO ORDERED.**

Date:  July 20, 2020
       New York, New York

                                       **VALERIE CAPRONI**
                                       **United States District Judge**

# STATEMENT OF OBJECTIONS

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x

**IN RE: SNITZER AND LIVANT v. THE BOARD**

**OF TRUSTEES OF THE AMERICAN FEDERATION**

**OF MUSICIANS AND EMPLOYERS' PENSION FUND, ET AL.,**

**No. 1:17-cv-05361-VEC**

-------------------------------------------------------------x

**Statement of Objections**

**I am a member of the plaintiff class in the above-identified case, In re Snitzer. I am a class member because I was a participant in the American Federation of Musicians and Employers' Pension Fund during the class period.**

**I object to the settlement in this lawsuit. My reasons for objecting are:**

1.   Defendants Raymond Hair and Christopher Brockmeyer should not be permitted to retain their positions on the Board of Trustees, controlling the futures of the 50,000 participants of the AFM-EPF. Plaintiffs have proven that Defendants did not act reasonably or prudently in their management of the Fund. Time and again, over the course of at least seven years, Defendants egregiously breached the fiduciary duties they owe to the Plan Participants, and have obliterated the future financial security of more than 50,000 Plan Participants. Defendants have demonstrated gross negligence and incompetence in their management of the Fund, and should be removed. In the AFM Web Notifications Pension Fund Notes of 3/29/2020 the trustees strenuously defend their disastrous investment decisions of the past

ten years and indicate that this settlement will not cause then to make any changes to their strategies whatsoever.

2.  The Neutral Independent Fiduciary has no actual authority to effect any change. At the very least, the Neutral Independent Fiduciary should be permitted to communicate directly with Plan Participants, and should provide quarterly updates to Plan Participants on the status of the Fund. Plaintiffs have demonstrated that Defendants repeatedly failed to communicate the critical and declining status of the Fund. Defendants' risky investment strategies continued unabated for years, while Plan Participants remained completely in the dark. In addition, Plaintiffs have proven that while prudent investment options and expert advice were provided to Defendants at many turns, Defendants ignored such advice and instead made riskier and riskier investment decisions. Plaintiffs cannot rely on Defendants to honestly communicate the status of the Fund, nor to adhere to any expert advice that might be provided by the Neutral Independent Fiduciary, who, regardless of whether he can provide a voice of reason, has no real power to effect any changes in decisions approved by the Board.

3.  Plan Participants should be permitted to opt out of the Settlement. As noted above and below, the Settlement Agreement is lacking in substantive relief. Plan Participants should be permitted an option to reserve the right to bring suit at a later date.

4.  The Settlement Agreement is generally lacking in any meaningful substantive relief. Defendants remain in their positions with nearly unlimited ability to continue their risky practices. The Neutral Independent Fiduciary has a severely limited role, and almost certainly will be unable to effect any real change. Defendants will be able to continue their misleading and slanted communications with Plan Participants about the status of the Fund.

Finally, Plaintiffs will be required to forever release all claims against Defendants, despite having received almost no substantive relief. Even a brief review of the Settlement Agreement makes clear that the Agreement has no substantive relief.

5.  The award provided to Plaintiffs' counsel should be reduced. Plaintiffs' counsel argues that their award is fair because they have provided substantial non-monetary relief. However, as noted in detail above, little non-monetary relief has been provided to Plaintiffs. Plaintiffs' Counsel is well aware of the limited monetary relief that is obtainable through Defendants' insurance policy, and from all appearances, this knowledge is driving their motivation to settle this lawsuit at the current time, regardless of whether any true substantive non-monetary relief has actually been obtained for Plaintiffs. In addition, the hourly billable rate provided by Plaintiffs' counsel is egregiously inflated. The hourly rates of $835, $751 and $580 respectively for senior partners, junior partners and senior associates are unusual in nearly any market in the United States. Indeed, the ABA recently published an article that noted that the most expensive partner hourly rate by practice area clocked in at $678 (for mergers and acquisitions).[1] The same article notes that even in a relatively expensive geographical area such as California, the median partner hourly rate is $500. Plaintiffs' counsel practice in Haverford, Pennsylvania, a relatively low cost area. The monetary award of $7.94 million for 13000 hours of work is a windfall for Plaintiffs' counsel, by any standard.

RECEIVED

JUL 0 9 2020

VALERIE _____
U.S. DISTRICT JUDGE
S.D.N.Y.

---

[1] *See* https://www.abajournal.com/news/article/
partner_rate_increases_growing_and_more_widespread_new_report_says

## My Personal Information

**Name: Christopher Deschene**

**Address: 719 Emory Drive, Chapel Hill, North Carolina, 27517**

**Email Address: christopher.deschene@gmail.com**

**Telephone Number: 919-933-2402**

**Fairness Hearing Statement: I do not intend to appear at the Fairness Hearing, either in person or through my attorney.**

Dated: Monday, June 29, 2020

Signed:

Printed Name: Christopher Deschene

Dr. Frederick Zlotkin
2 Bowers Lane
Closter, N.J. 07624
(917) 885-3543
email : fzlotkin@gmail.com



July 2, 2020

The Honorable Valerie E. Caproni
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

*Re: Snitzer and Livant v. The Board of Trustees of the American Federation
of Musicians and Employers' Pension Fund, et al., 17-cv-5361 (VEC)*

Dear Judge Caproni:

I write as a member of the class in the above-referenced matter to
respectfully request that you reject the settlement in the above-referenced
matter as it is not an adequate recovery for the class and fails to meet the
legal criteria for approval.

I am a professional musician (4th generation musician in my family) who
started working in my early teens, c. 1959.  My highly diversified
career contributed a great deal of money to the American Federation
of Musician's Pension Fund.  I have worked since 1972 as Principal Cellist
for the NYC Ballet and additionally performed in virtually every facet of my
profession.

Throughout that time, my pension contributions were substantial, including a
13.5% contribution of my salary from my position as principal cellist at the NYC
Ballet. In fact, in many of our union contracts, the orchestra members
sustained no increases in regular pay in favor of raises to the contribution
rate for our pension. Throughout this time, all of our American Federation of
Musicians and Employers Pension Fund leaders and officials repeatedly assured
us that our pensions were secure, and that everything was fine. The problem is
they lied to us, and this settlement does absolutely nothing to hold them
accountable.  A pension is like a contract – it cannot be broken.

Under the proposed settlement, the same Trustees will continue to lead the Pension Fund, face no disciplinary or other personal financial sanctions, and the fund will continue to invest as before, according to the March 29, 2020 email from the Trustees to Class Members such as myself.

My understanding is that at one point in the late 1990's the Pension Fund had a value of over $3 billion. Now it is about half of that! There is no adequate explanation as to how it reached its current critical status unless there was illegal or fraudulent conduct by our Trustees.

Judge Caproni, I am appalled at the demise of my pension plan. Those of us who worked so hard and so long cannot understand how, at a time when our economy was booming, our fund was depleted disastrously. This is unfair and wrong, and the Trustees must be held accountable!!

I believe that any settlement should force the Trustees to withdraw their application to the Treasury Dept. as a way of holding the Trustees personally accountable for their conduct from 2011-2017, before the Treasury decides whether or not to approve the application on August 11, 2020.
Thank you very much for your consideration.

I remain,

## OBJECTION TO CLASS ACTION SETTLEMENT

ATTN. The Honorable Valerie J. Caproni, U.S.D.C.J. United States District Court For The Southern District of New York 40 Foley Square New York, New York 10007  RE: Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians and Employers' Pension Fund, et al ., No. 1:17-cv-05361-VEC)

We, the undersigned members of the class do hereby respectfully request that Your Honor reject the settlement in the above-referenced case because it is not "fair, reasonable, and adequate."  We would like to make three specific objections:

1. The settlement is not reasonable as it lacks meaningful restraints on the Plan Trustees and Plan Advisors going forward. The Trustees can still hire the same money managers and continue to pursue the same "exceedingly risky" investment policies. The Independent Neutral Fiduciary has no formal legal power to force the Trustees to make more prudent and conservative investments, while remaining diversified.

2. The settlement is not adequate given that the Plan has a long history of mismanagement. If the job of the Independent Neutral Fiduciary is limited to only 4-5 years, it is unrealistic to expect that they can have much of a positive impact. Therefore, a much longer period is needed. Additionally, the monitor must have the mandate to notify the Court of any breach of fiduciary duty by the Trustees and/or their advisors.

3. The settlement is unfair because it lacks restrictions on the Trustees' use of Plan resources (e.g. email lists and on-line communications, etc.) to disparage the Class Members, and Class Representatives, Paul Livant and Andrew Snitzer, and to unwarrantedly characterize the settlement as a victory for the Trustees, which they have already done. Continued public statements should be factual and non-disparaging.

Sincerely,

Your written signature* Printed name* _JAY A. ROSEN_

Your address*_19312 VOLLE LANE, TARZANA, CA 91356_

Telephone number*_818 932 8090_ Your email* _JROSEN4@SOCAL.RR.COM_

*required

☒ I have not objected to a class action settlement in the past 5 years
   Choose one of the following:
   ☐ I do plan to attend the Fairness Hearing (or/choose one)
   ☒ I do not Plan to attend the Fairness Hearing



RECEIVED

JUL 09 2020

# OBJECTION TO CLASS ACTION SETTLEMENT

ATTN. The Honorable Valerie E. Caproni, United States District Court For The
Southern District of New York, 40 Foley Square, New York, New York 10007

**RE: Snitzer and Livant v. The Board of Trustees of the American Federation of
Musicians and Employers' Pension Fund, et al., No. 1:17cv-05361-VEC**

**As a member of the class in the above referenced case, I wish to object to the Proposed Class
Action Settlement before the Court, and respectfully ask the judge to reject this settlement.**

**I make the following objections:**

1.   We have read the settlement material and concluded that the Defendants failed to meet their
Fiduciary Duty to the Plan Participants.   First, the Defendants intentionally misled the Plan
Participants in their communications with the Participants over an extended period of time.
Second, the settlement does not limit the Trustees' ability to continue their exceedingly risky
investment strategies, nor does it allow the short term Independent Neutral Fiduciary the ability
to: a) contact the Plan Participants when the Neutral Fiduciary is in disagreement with the
Trustees' decisions; or to b) contact the courts regarding the continuous chasing losses that
brought the Plan to the current situation.   A much longer period of time is needed in addition to
the ability to contain the damage the Trustees seem intent on doing.

2.   We believe the Trustees, particularly Ray Hair and Christopher Brockmeyer, should either be
removed or have significant restraints placed on their ability to make financial decisions on
behalf of the Participants, whose Plan they have annihilated.

3.   We feel the Trustees have intentionally misled and misrepresented their role in causing the
failure of this pension.  The Trustees therefore should be prohibited from sending emails and
letters to Participants, which in the past have used only to purposefully mislead the Participants.

4.   Since the class of 50,000 consultants was never adequately informed of the Settlement, we feel
that this Settlement Agreement which requires that "all Class Members would forever release
the "Released Claims against the Released Parties" cannot be signed in good faith, since it does
not adequately address the causes of the Plan's failures in a meaningful way that would prevent
any future occurrences of fraud and/or mismanagement.

5.   We respectfully request that the Neutral Fiduciary be recommended and compensated either by
the court, since the Plan would have a conflict of interest in providing a salary to their own
oversight, or if the compensation must come from the plan, for reasons we are unclear about,

that the compensation is paid upfront to avoid the conflict of interest with the Trustees who have been dishonest and misrepresented their role in the pensions insolvency.

6. Participants object to the secrecy order placed on the discovery documents. It is imperative that in the future, Participants be allowed the opportunity to make informed decisions regarding voting, as well as for Participants to be heard as a group about the Trustees' financial and communication decisions. The ability for Plan Participants to meaningfully engage in future decisions on the Plan is severely hampered absent the knowledge that would be provided by these documents. Respectfully, as the Court is aware, the public has an interest in discovery documents that is grounded in the First Amendment, as noted in the *Courthouse* News decision: "[W]e recently acknowledged the First Amendment right of access to civil proceedings and associated records and documents." *See* Courthouse *News Serv. v. Planet*, 750 F.3d 776, 786-78 (9th Cir. 2014); *Wood v. Ryan*, 759 F.3d 1076, 1081-82 (9th Cir. 2014), vacated on other grounds, 135 S. Ct. 21(2014).

7. **I certify I have not objected to a class action settlement in the past 5 years I do not Plan to attend the Fairness Hearing**

<u>**My Personal Information**</u>

**Name: Jody Jarowey**

**Address: 719 Emory Drive, Chapel Hill, North Carolina, 27517**

**Email Address: jjarowey@gmail.com**

**Telephone Number: 919-933-2402**

**Fairness Hearing Statement: I do not intend to appear at the Fairness Hearing, either in person or through my attorney.**

Dated: 6/29/2020

Signed:

Printed Name: JODY JAROWEY

RECEIVED
JUL 0 9 2020
VALERIE CAPRONI
U.S. DISTRICT JUDGE
S.D.N.Y.

CLASS ACTION OBJECTION



ATTN. The Honorable Valerie J. Caproni
United States Courthouse,
Southern District of New York
40 Foley Square
New York, New York 10007

RE: Snitzer and Livant v. The Board of Trustees of the American Federation
of Musicians and Employers' Pension Fund, et al., No. 1:17-cv-05361-VEC)

As a member of the class in the above referenced case, I wish to object to the
Proposed Class Action Settlement before the Court, and respectfully ask the judge to reject this settlement.

I make the following objections.

1.   Having read through all of the material posted on the Settlement web site, I have concluded that the
Defendants did fail to meet their Fiduciary Responsibilities to the Participants. Additionally, the record
indicates that the Defendants were deliberately misleading in their communications with the Participants,
repeatedly, over a long period of time. This Settlement Agreement does nothing to correct this. Trustees
remain free to continue the same risky and imprudent investment strategy and are not restrained from
continuing to mislead Participants.

2.   The appointment of Andrew Irving to the position of Neutral Independent Fiduciary Trustee, is
insufficient, and unacceptably limited in both term and scope. Mr. Irving's role is loosely designated as "4 or
5" years, and he is given no binding oversight authority. His appointment does nothing to repair the
structural damage done to our Fund by the Defendants, and does nothing to ensure that the next generation
of retirees has any reason to believe their future with this fund is secure.

3.   This Settlement allows the same Trustees who mismanaged our Fund to remain in place, with no
restraints placed on future actions. I believe that at a minimum, Trustees Raymond Hair and Christopher
Brockmeyer should be removed from their positions as Co-chairs of this Trustee Board.

4.   Although this lawsuit is a Class Action, none of the over 50,000 other class members were reasonably
consulted. This Settlement agreement requires that "all Class Members would forever release the Released
Claims against the Released Parties". I cannot agree to that for a Settlement this lacking in meaningful
remedies.

I certify I have not objected to a class action settlement in the past 5 years.
I do not Plan to attend the Fairness Hearing.

*Masako Yanagita*   6/28/2020

Masako Yanagita
838 West End Ave, Apt. 2B2
New York, NY 10025
917-622-8097 cell
masakoyb@gmail.com




RECEIVED
JUL 0 9 2020
VALERIE CAPRONI
U.S. DISTRICT JUDGE
S.D.N.Y.

Robbie Buchanan
4001 Knobhill Drive
Sherman Oaks, CA 91403
(818) 985-2581

CLASS ACTION OBJECTION

ATTN. The Honorable Valerie J. Caproni
United States Courthouse,
Southern District of New York
40 Foley Square
New York, New York 10007

RE: Snitzer and Livant v. The Board of Trustees of the American Federation
of Musicians and Employers' Pension Fund, et al., No. 1:17-cv-05361-VEC)

   As a member of the class in the above referenced case, I wish to object to the
Proposed Class Action Settlement before the Court, and respectfully ask the judge to reject this
settlement.

I make the following objections.

1.   Having read through all of the material posted on the Settlement web site, I have concluded that
the Defendants did fail to meet their Fiduciary Responsibilities to the Participants. Additionally, the
record indicates that the Defendants were deliberately misleading in their communications with the
Participants, repeatedly, over a long period of time. This Settlement Agreement does nothing to
correct this. Trustees remain free to continue the same risky and imprudent investment strategy and
are not restrained from continuing to mislead Participants.

2.   The appointment of Andrew Irving to the position of Neutral Independent Fiduciary Trustee, is
insufficient, and unacceptably limited in both term and scope. Mr. Irving's role is loosely designated as
"4 or 5" years, and he is given no binding oversight authority. His appointment does nothing to repair
the structural damage done to our Fund by the Defendants, and does nothing to ensure that the next
generation of retirees has any reason to believe their future with this fund is secure.

3.   This Settlement allows the same Trustees who mismanaged our Fund to remain in place, with no
restraints placed on future actions. I believe that at a minimum, Trustees Raymond Hair and
Christopher Brockmeyer should be removed from their positions as Co-chairs of this Trustee Board.

4.   Although this lawsuit is a Class Action, none of the over 50,000 other class members were
reasonably consulted. This Settlement agreement requires that "all Class Members would forever
release the Released Claims against the Released Parties". I cannot agree to that for a
Settlement  this lacking in meaningful remedies.

I certify I have not objected to a class action settlement in the past 5 years

( over )

# OBJECTION TO CLASS ACTION SETTLEMENT

ATTN. The Honorable Valerie J. Caproni, U.S.D.C.J. United States District Court For The Southern District of New York 40 Foley Square New York, New York 10007

RE: *Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians and Employers' Pension Fund, et al.*, No. 1:17-cv-05361-VEC)

We, the undersigned members of the class do hereby respectfully request that Your Honor reject the settlement in the above-referenced case because it is not "fair, reasonable, and adequate."

We would like to make three specific objections:

1. The settlement is not reasonable as it lacks meaningful restraints on the Plan Trustees and Plan Advisors going forward. The Trustees can still hire the same money managers, and continue to pursue the same "exceedingly risky" investment policies. The Independent Neutral Fiduciary has no formal legal power to force the Trustees to make more prudent and conservative investments, while still remaining diversified.

2. The settlement is not adequate given that the Plan has a long history of mismanagement. If the job of the Independent Neutral Fiduciary is limited to only 4-5 years, it is unrealistic to expect that they can have much of a positive impact. Therefore, a much longer period is needed. Additionally, the monitor must have the mandate to notify the Court of any breach of fiduciary duty by the Trustees and/or their advisors.

3. The settlement is unfair because there needs to be restrictions on the Trustees' use of Plan resources (e.g. email lists and on-line communications, etc.) to disparage the Class Members, and Class Representatives, Paul Livant and Andrew Snitzer, and to unwarrantedly characterize the settlement as a victory for the trustees, as they have already done. Continued public statements should be factual and non-disparaging.

Sincerely,

_Ron Wasserman_ Your written signature*  Printed name* _Ron Wasserman_
Your address* _7 Milsom DR   New City   NY 10956_
Telephone number* _914-714-0586_ Your email* _Ronwass@aol.com_
*required

☑ I have not objected to a class action settlement in the past 5 years
      Choose one of the following:
☑ I do plan to attend the Fairness Hearing (or/choose one)
☐ I do not Plan to attend the Fairness Hearing

RECEIVED
JUL 09 2020
VALERIE CAPRONI
U.S. DISTRICT JUDGE
S.D.N.Y.

# OBJECTION TO CLASS ACTION SETTLEMENT

ATTN. The Honorable Valerie J. Caproni, U.S.D.C.J. United States District Court For The
Southern District of New York 40 Foley Square New York, New York 10007

RE: *Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians
and Employers' Pension Fund, et al.*, No. 1:17-cv-05361-VEC)

We, the undersigned members of the class do hereby respectfully request that Your Honor
reject the settlement in the above-referenced case because it is not "fair, reasonable,
and adequate."
We would like to make three specific objections:

1. The settlement is not reasonable as it lacks meaningful restraints on the Plan Trustees
   and Plan Advisors going forward. The Trustees can still hire the same money managers,
   and continue to pursue the same "exceedingly risky" investment policies. The
   Independent Neutral Fiduciary has no formal legal power to force the Trustees to make
   more prudent and conservative investments, while still remaining diversified.

2. The settlement is not adequate given that the Plan has a long history of mismanagement.
   If the job of the Independent Neutral Fiduciary is limited to only 4-5 years, it is unrealistic
   to expect that they can have much of a positive impact. Therefore, a much longer period
   is needed. Additionally, the monitor must have the mandate to notify the Court of any
   breach of fiduciary duty by the Trustees and/or their advisors.

3. The settlement is unfair because there needs to be restrictions on the Trustees' use of
   Plan resources (e.g. email lists and on-line communications, etc.) to disparage the Class
   Members, and Class Representatives, Paul Livant and Andrew Snitzer, and to
   unwarrantedly characterize the settlement as a victory for the trustees, as they have
   already done. Continued public statements should be factual and non-disparaging.

Sincerely,

_____ Your written signature* Printed name* ROSS KONIKOFF
Your address* 305 West 52 st APT 3H NY NY 10019
Telephone number* 2122460878 Your email* RossKoni@aol.com
*required

☒ I have not objected to a class action settlement in the past 5 years
          Choose one of the following:
☒ I do plan to attend the Fairness Hearing (or/choose one)
❑ I do not Plan to attend the Fairness Hearing

RECEIVED
JUL 0 9 2020
VALERIE CAPRONI
U.S. DISTRICT JUDGE
S.D.N.Y.

# OBJECTION TO CLASS ACTION SETTLEMENT

ATTN. The Honorable Valerie J. Caproni, U.S.D.C.J. United States District Court For The Southern District of New York 40 Foley Square New York, New York 10007

RE: Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians and Employers' Pension Fund, et al., No. 1:17-cv-05361-VEC)

We, the undersigned members of the class do hereby respectfully request that Your Honor reject the settlement in the above-referenced case because it is not "fair, reasonable, and adequate."

We would like to make three specific objections:

1. The settlement is not reasonable as it lacks meaningful restraints on the Plan Trustees and Plan Advisors going forward. The Trustees can still hire the same money managers, and continue to pursue the same "exceedingly risky" investment policies. The Independent Neutral Fiduciary has no formal legal power to force the Trustees to make more prudent and conservative investments, while still remaining diversified.

2. The settlement is not adequate given that the Plan has a long history of mismanagement. If the job of the Independent Neutral Fiduciary is limited to only 4-5 years, it is unrealistic to expect that they can have much of a positive impact. Therefore, a much longer period is needed. Additionally, the monitor must have the mandate to notify the Court of any breach of fiduciary duty by the Trustees and/or their advisors.

3. The settlement is unfair because there needs to be restrictions on the Trustees' use of Plan resources (e.g. email lists and on-line communications, etc.) to disparage the Class Members, and Class Representatives, Paul Livant and Andrew Snitzer, and to unwarrantedly characterize the settlement as a victory for the trustees, as they have already done. Continued public statements should be factual and non-disparaging.

Sincerely,

Your written signature* Printed name* _Thomas O'Donnell_
Your address* 4647 (665) acuy Dr  ATLANTA GA  30319
Telephone number* 212 671 0340 Your email* mmécHif____@ yahoo Com
*required

☒ I have not objected to a class action settlement in the past 5 years
Choose one of the following:
☐ I do plan to attend the Fairness Hearing (or/choose one)
☒ I do not Plan to attend the Fairness Hearing

RECEIVED
JUL 09 2020
VALERIE CAPRONI
U.S. DISTRICT JUDGE
S.D.N.Y.

Dear Judge Caproni:                                              July 4, 2020

Regarding:  Snitzer and Livant v. The Board of Trustees of The American Federation of
            Musicians and Employers' Pension Fund, No. 1:17-cv-05361-VEC

          I am a rank and file violinist, member of Local 802 in New York City and a former Local
802 Executive Board member.  I will begin collecting my pension towards the end of 2022.

          I have been aware of this lawsuit and have read through the material on the settlement
website about the actions of the Trustees of the Fund.  As a participant in the Fund, I have also
been familiar with the Trustees' actions in overseeing the Fund for a number of years.

          I write in support of the settlement that was reached in this case.  I feel strongly that this
lawsuit has distracted the Trustees and participants for long enough.  The substantial payment
that the Fund would receive if the settlement is approved, which I understand will be at least $17
million, would be a huge help to the Fund, especially in this time, when all musical work is
suffering so much.

          I understand that some participants are complaining about the governance provisions in
the settlement.  I do not believe the Trustees are to blame for the Fund's problems, which are
complicated and long-standing.  I have read about the changes the Trustees have made over the
past several years and believe they are attempting to address these problems as best they can.  I
do not believe punishing the Trustees or tying their hands is the solution.

          I am also aware of the heated political battles going on in our Union and I believe that
this lawsuit has been caught up in those battles and has been used as a political tool.  I think it's
time for the battles to stop and for us all to put this lawsuit behind us.  The Fund needs every
dime it can get and I hope the Court will approve the settlement.

I certify I have not objected to or otherwise comments on a class action settlement in the past 5
years.

Sincerely,

Wende Namkung

711 Amsterdam Avenue 13H                                    wendeynamkung@gmail.com
New York, NY 10025                                          (212) 662-7884

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK_____

|  |  |  |
|---|---|---|
| | : | ADDITIONAL OBJECTION |
| ANDREW SNITZER and PAUL LIVANT, | : | TO FINAL SETTLEMENT |
| individually and as representatives of a class of | | |
| similarly situated persons, on behalf of the | | |
| American Federation of Musicians Pension Plan, | | |
| | | |
| Plaintiffs, | : | |
| v. | : | |
| | : | CIVIL ACTION |
| THE BOARD OF TRUSTEES OF THE | | No. 1:17-cv-05361-VEC |
| AMERICAN FEDERATION OF MUSICIANS | : | |
| AND EMPLOYERS PENSION PLAN, et al. | : | |
| | : | JUDGE VALERIE E. CAPRONI |
| Defendant, | : | |
| | : | |
| MARTIN STONER, | : | |
| | : | |
| Objector. | : | |
| _____ | : | |

Martin Stoner, residing at 900 West End Avenue, New York, New

York 10025 ("Objector"), files this Second Objection to the

proposed Settlement in opposition to comments made by Class Counsel by

letter to the Court dated July 7, 2020 docket # 172.

> [Our firm}produced a settlement that represents the best monetary
> recovery that was achievable and collectible and, in addition, provides
> Governance Provisions that, as reflected at pages 2-7 of our
> Preliminary Approval Brief and pages 8-9, 23, 25-26 of our Fee
> Motion Brief (ECF #167), that we and our experts believe are better
> and will be much more effective than the best injunctive relief the
> Court would have awarded, if any, at trial and more stringent than
> governance provisions negotiated by other distinguished counsel in
> other ERISA pension plan class settlements.

I respectfully disagree as I recently received a strong rebuttal to Class

Counsel's statement above from noted ERISA attorney and former senior

official at the PBGC, Terrence Deneen.

> I have read the letter from Class Counsel, and I have some firm
> suggestions about your response. Your goal must be the appointment
> of an effective third party monitor who will prevent the [Trustees]
> from causing more damage. The monitor set up in the settlement
> is inadequate for several reasons:
> 1. The 4-5 year period is too short; the Plan will take decades to
>    recover, if at all, from the combination of factors that destroyed the
>    Plans viability. In other cases like the Central States Pension Fund,
>    monitors have served for decades, as did the neutral trustee of the
>    UMW Plans, Dean Paul Dean of Georgetown Law School, who
>    was appointed by Judge Gerhard Gesellschaft.
> 2. The monitor's mission statement is FAR too narrow. He is only
>    involved in matters dealing with investments. The guy they
>    nominated is good on investment procedures but cruddy
>    investments are only part of the problem. Your monitor needs
>    authority over all functions: you want your guy to be at every
>    meeting and seeing every piece of paper.
> 3. The monitor needs expert assistance on actuarial issues. To do that
>    he needs to control money to consult a third party actuary. I
>    suggest that some of the $27M recovery be reserved to pay for this.
>    This is essential b/c (1) your actuary has a long history of doing the
>    trustees bidding and skewing his assumptions to keep required
>    contributions  low—too low for safety and (2) your Plan, like
>    many others, has a problematic accrual structure that needs to be
>    revisited.....
> [W]hile their firm has great expertise in investment related fiduciary
> breach, they aren't known for setting up post judgment watchdog
> functions—few private sector firms do. This Plan has unusual
> problems that require a tailor made oversight function.
> Addimenta: monitor should file quarterly reports with court and post
> them on Plan website.
> Expedited financial disclosure:  no later than 45 days after close of
> fiscal year the Plan shall post;
> Contributions made to plan;

Benefit payments made out of plan;
Administration expenses;
Investment income
Asset levels at beginning of year and year-end.

The expert analysis of Terry Deneen, above, then represents an altogether different picture of the Governance Provisions from what the Court has been hearing from Class Counsel and the Trustees. I respectfully ask the Court to follow Mr. Deneen's independent guidance, including requesting that the parties agree to set aside money from the damages award to pay for a third party actuary and third party monitor over a lengthy span.

Rule 23 leaves unanswered crucial questions about class counsel's proper role and duties to the class. The rule fails to articulate a model that makes class action lawyers accountable to class members without imposing unrealistic limitations on the lawyer's ability to act. The rule further fails to account for both the views of class members and the public interest. It also fails to delineate clearly the respective decision-making roles of class counsel, named plaintiffs, and the class members as a whole.

For all these reasons, I object to the final approval of the proposed settlement and request the Court recommend instead the appointment and funding of an effective third party monitor and a third party actuary to advise the monitor.

Dated:  New York, New York
       July 11, 2020

Respectfully submitted,

_Martin Stoner_

MARTIN STONER
900 West End Avenue
New York, New York 10025
(212) 866-5447
jilmar_10025@yahoo.com

United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007
ATTN Judge Caproni.

RECEIVED
JUL 14 2020
VALERIE CAPRONI
U.S. DISTRICT JUDGE
S.D.N.Y.

Friday, July 3, 2020

RE: Snitzer and Livant v. The Board of Trustees of the American Federation of
Musicians and Employers' Pension Fund,
No. 1:17-cv-05361-VEC.

Your honor,
I am writing to encourage you to accept the settlement proposed in the above
referenced lawsuit.  I am a stakeholder in the AFM-EPF and also about to start
collecting my pension.  I am deeply concerned about the long-term viability of our fund
and I believe it is imperative both to end this lawsuit and to accept the changes
mandated by the fund's application to the Department of Treasury under MPRA.  These
are both bitter pills for participants to swallow, but I feel strongly that focusing so
narrowly on finding someone, in this case the trustees, to blame for the tragic situation
in which we find ourselves is detrimental to the odds of the fund surviving.  It is an
unproductive avenue that will not solve the fund's problems.  We all need to
concentrate on the future and work hard, and allow our trustees to work hard, to find a
way through this mess.

It is not just pensioners like myself for whom the fund needs to be saved.  The
generations of musicians coming after my peers and me also need to know there will
be a pension fund for them when they retire.  And, this fund is a cornerstone of the
benefits that come with union membership.  I worry that, should the fund go down, our
union will be in jeopardy of going down too.

Additionally, we need to be able to put the divisions in our membership over this issue
and this lawsuit behind us, if we ever hope to come together to find solutions.  So
please do approve this settlement, even if it does answer every concern of every
plaintiff or defendant.  I hope we can, at least, put this suit behind us now.

Thank you.
Sincerely,


Sara Cutler
4417 Tibbett Ave
Bronx, NY  10471
646-610-2343
saracutler@mac.com

# OBJECTION TO CLASS ACTION SETTLEMENT

ATTN. The Honorable Valerie J. Caproni, U.S.D.C.J. United States District Court For The
Southern District of New York 40 Foley Square New York, New York 10007

RE: *Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians
and Employers' Pension Fund, et al.*, No. 1:17-cv-05361-VEC)

We, the undersigned members of the class do hereby respectfully request that Your Honor
reject the settlement in the above-referenced case because it is not "fair, reasonable,
and adequate."
We would like to make three specific objections:

1. The settlement is not reasonable as it lacks meaningful restraints on the Plan Trustees
   and Plan Advisors going forward. The Trustees can still hire the same money managers,
   and continue to pursue the same "exceedingly risky" investment policies. The
   Independent Neutral Fiduciary has no formal legal power to force the Trustees to make
   more prudent and conservative investments, while still remaining diversified.

2. The settlement is not adequate given that the Plan has a long history of mismanagement.
   If the job of the Independent Neutral Fiduciary is limited to only 4-5 years, it is unrealistic
   to expect that they can have much of a positive impact. Therefore, a much longer period
   is needed. Additionally, the monitor must have the mandate to notify the Court of any
   breach of fiduciary duty by the Trustees and/or their advisors.

3. The settlement is unfair because there needs to be restrictions on the Trustees' use of
   Plan resources (e.g. email lists and on-line communications, etc.) to disparage the Class
   Members, and Class Representatives, Paul Livant and Andrew Snitzer, and to
   unwarrantedly characterize the settlement as a victory for the trustees, as they have
   already done. Continued public statements should be factual and non-disparaging.

Sincerely,

*Olivia Koppell*____ Your written signature\* Printed name\* Olivia Koppell
Your address\* 1110 Beacon St. # 3B, Brookline, MA 02446
Telephone number\* 917-886-4490  Your email\* mumsleytumsley @aol.com
\*required

☑ I have not objected to a class action settlement in the past 5 years
          Choose one of the following:
☑ I do plan to attend the Fairness Hearing (or/choose one)
☐ I do not Plan to attend the Fairness Hearing

## CLASS ACTION OBJECTION

ATTN. The Honorable Valerie J. Caproni
United States Courthouse,
Southern District of New York
40 Foley Square
New York, New York 10007

**RE: Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians and Employers' Pension Fund, et al., No. 1:17-cv-05361-VEC)**

**As a member of the class in the above referenced case, I wish to object to the Proposed Class Action Settlement before the Court, and respectfully ask the judge to reject this settlement.**
**I make the following objections.**

1.  The material posted on the Settlement web site leads me to conclude that the Defendants failed to meet their Fiduciary Responsibilities to the Participants. The Trustees risky investment strategy resulted in the fund underperforming both the market and it's peers. Additionally, the record indicates that the Defendants were deliberately misleading in their communications with the Participants, repeatedly, over a long period of time. This Settlement Agreement does nothing to remedy this. Trustees are free to continue the same risky and imprudent investment strategy and are not restrained from continuing to mislead Participants.

2.  The appointment of Andrew Irving to the position of Neutral Independent Fiduciary Trustee, is insufficient, and unacceptably limited in both term and scope. Mr. Irving's role is loosely designated as "4 or 5" years, and he is given no binding oversight authority. His appointment does nothing to secure the future viability of this fund.

3.  This Settlement allows the same Trustees who mismanaged our Fund to remain in place, with no restraints placed on future actions. Without a management level change in the Trustees the funds prospects for solvency going forward are dim. I believe that at a minimum, Trustees Raymond Hair and Christopher Brockmeyer should be removed from their positions as Co-chairs of this Trustee Board.

4.  Although this lawsuit is a Class Action, none of the over 50,000 other class members were reasonably consulted. This Settlement agreement requires that "all Class Members would forever release the Released Claims against the Released Parties". I cannot agree to a Settlement that lacks meaningful remedies.

**I certify I have not objected to a class action settlement in the past 5 years I do not Plan to attend the Fairness Hearing.**

Respectfully,

James Mike Brignardello
112 Sweethaven Court
Franklin TN 37069
615 293-1993
bassnashville@gmail.com

**Copied by email: steveschwartz@chimicles.com, rjk@chimicles.com, mrumeld@proskauer.com, jrachelson@cwsny.com**

# OBJECTION TO CLASS ACTION SETTLEMENT

ATTN. The Honorable Valerie J. Caproni, U.S.D.C.J. United States District Court For The Southern District of New York 40 Foley Square New York, New York 10007

RE: *Snitzer and Livant v. The Board of Trustees of the American Federation of Musicians and Employers' Pension Fund, et al.*, No. 1:17-cv-05361-VEC)

We, the undersigned members of the class do hereby respectfully request that Your Honor reject the settlement in the above-referenced case because it is not "fair, reasonable, and adequate."

We would like to make three specific objections:

1. The settlement is not reasonable as it lacks meaningful restraints on the Plan Trustees and Plan Advisors going forward. The Trustees can still hire the same money managers, and continue to pursue the same "exceedingly risky" investment policies. The Independent Neutral Fiduciary has no formal legal power to force the Trustees to make more prudent and conservative investments, while still remaining diversified.

2. The settlement is not adequate given that the Plan has a long history of mismanagement. If the job of the Independent Neutral Fiduciary is limited to only 4-5 years, it is unrealistic to expect that they can have much of a positive impact. Therefore, a much longer period is needed. Additionally, the monitor must have the mandate to notify the Court of any breach of fiduciary duty by the Trustees and/or their advisors.

3. The settlement is unfair because there needs to be restrictions on the Trustees' use of Plan resources (e.g. email lists and on-line communications, etc.) to disparage the Class Members, and Class Representatives, Paul Livant and Andrew Snitzer, and to unwarrantedly characterize the settlement as a victory for the trustees, as they have already done. Continued public statements should be factual and non-disparaging.

7/5/2020

Sincerely,

_____ Your written signature* Printed name*  Charles F. Metzger

Your address* 56 Capay Circle, South San Francisco, CA, 94080 _____

Telephone number* (650) 875-7526 _____ Your email* ____ chuckmetz@sbcglobal.net ____

*required

☑ I have not objected to a class action settlement in the past 5 years

                Choose one of the following:

❑ I do plan to attend the Fairness Hearing (or/choose one)

☑ I do not Plan to attend the Fairness Hearing

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ANDREW SNITZER and PAUL LIVANT, individually and as representatives of a class of similarly situated persons, on behalf of the American Federation of Musicians Pension Plan, | : : : : : | OBJECTION TO APPROVAL OF FINAL SETTLEMENT AND NOTICE OF INTENT TO APPEAR |
| Plaintiffs,<br>v. | : : : | |
| THE BOARD OF TRUSTEES OF THE AMERICAN FEDERATION OF MUSICIANS AND EMPLOYERS PENSION PLAN, et al. | : : : : | CIVIL ACTION<br>No. 1:17-cv-05361-VEC |
| Defendant, | : : | JUDGE VALERIE E. CAPRONI |
| MARTIN STONER, | : : | |
| Objector. | : : : | |

Martin Stoner, residing at 900 West End Avenue, New York, New York 10025 ("Objector"), files this Objection to the proposed Settlement.

## STATEMENT

As an initial matter, I'd like to thank the Court for ordering the release of the depositions of Trustees Co-Chairs, Christopher Brockmeyer and Raymond Hair, Plan Counsel, Rory Albert, and three Meketa depositions. Looking through Mr. Albert's deposition, we find on page 291 the disclosure of an email that he wrote dated February 27, 2017 in which Mr. Albert advised the Trustees on messaging to participants:

"We shouldn't give them information that makes us look bad."

. "Fiduciaries may be held liable for statements pertaining to future benefits if the fiduciary knows those statements are false or lack a reasonable basis in fact." *Flanigan v. Gen. Elec. Co.,* 242 F.3d 78, 84 (2d Cir.2001) (citation omitted).

By withholding truthful and accurate information from Participants about the Plan's financial condition and its future fiscal stability, the Trustees and Plan Counsel, Mr. Albert,  violated the law, including 29 U.S. Code § 1105, Liability for Breach of Co-Fiduciary.

As a result of the Trustees and Plan Counsel's imprudent conduct, the Pension Fund was forced to make a series of benefit reductions beginning in 2010. This included lowering the multiplier, which caused me and other participants to lose benefits on  earnings after 2010, re-defining early retirement as a "subsidy" (after failing to make such disclosure in my 2009 packet of Plan information that I received and still have when I took early retirement), and re-defining plan terms such as "re-retirement" and "re-determination" to further lower benefits to both current and future plan participants. Since ERISA § 405 mandates a showing of injury or loss, I (and many other members of the class) can easily demonstrate such loss, although these damages differ from individual to individual and are not evenly applicable to every member of the class, which also portends against class certification and a non-opt-out provision-another reason to reject the settlement.

2

This new proof of the Trustees and their co-fiduciaries ERISA violations arising from Mr. Albert's deposition email on page 291 has caused Objector, Martin Stoner, to file an attorney grievance against Proskauer Rose, and it attorneys, Rory Albert, and Myron Rumfeld, with the Disciplinary Committee of the First Department. I have attached herewith a copy of the complaints that I filed.

I will also file a new complaint with the Department of Labor asking for criminal charges to be filed against the Trustees and their co-fiduciaries.

There are several issues that I describe in the attached documents which are relevant to the issue of whether or not this settlement should be approved. Of paramount importance is that I have alleged that Proskauer Rose and Rory Albert fraudulently conspired with Defendant Trustees to cover up our Pension Fund's failing financial health in printed articles from 2015-2017 (and even before that period ) sent to class members by the Union and in face-to-face meetings with class members in 2017. Neither Cohen Weiss, or Proskauer law firm reported Rory Albert's misconduct to this Court as required under the Rules of Professional Conduct. This is one basis for my complaints.

Additionally, Proskauer had a conflict of interest in representing both Plan Counsel, Rory Albert/Robert Procjansky whose loyalty is to Plan

participants and beneficiaries, and litigation head, Myron Rumeld, whose loyalty it is to fight against the best interests of the Class and protect Proskauer Rose from any liability from members of the class in the Snitzer lawsuit. If Proskauer and also Cohen Weiss, therefore, wish to mitigate their firm liability, a good first step would be to force the Trustees now to permanently withdraw their MPRA application to Treasury before it gets decided in the next few days. Any offer of restitution by Proskauer Rose and Cohen Weiss in the $500-$700 million dollar range would also be welcomed.

In order not to burden the Court further, I simply ask the Court to read my attached documents that support rejecting this settlement.

Thank you very much for your consideration.

## CONCLUSION

For all these reasons, I ask the Court to reject the proposed settlement, paying particular attention to the Governance Provisions, which are not adequate, fair, and reasonable and won't prevent a future breach of fiduciary duty.

Dated:  New York, New York
      July 20, 2020

Respectfully submitted,

_____
MARTIN STONER
900 West End Avenue
New York, New York 10025
(212) 866-5447
jilmar_10025@yahoo.com

```
 1
 2     UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK
 3     Case No.: 1:17-cv-05361-VEC
       - - - - - - - - - - - - - - - - - - - x
 4
       ANDREW SNITZER and PAUL LIVANT,
 5     individually and as representatives of a
       class of similarly situated persons, on
 6     behalf of the American Federation of
       Musicians and Employers' Pension Plan,
 7
                          Plaintiffs,
 8
                       - against -
 9
       THE BOARD OF TRUSTEES OF THE AMERICAN
10     FEDERATION OF MUSICIANS AND EMPLOYERS'
       PENSION FUND, THE INVESTMENT COMMITTEE OF
11     THE BOARD OF TRUSTEES OF THE AMERICAN
       FEDERATION OF MUSICIANS AND EMPLOYERS'
12     PENSION FUND, RAYMOND M. HAIR, JR.,
       AUGUSTINO GLAGLIARDI, GARY MATTS, WILLIAM
13     MORIARITY, BRIAN F. ROOD, LAURA ROSS,
       VINCE TROMBETTA, PHILLIP E. YAO, CHRISTOPHER
14     J.G. BROCKMEYER, MICHAEL DEMARTINI,
       ELLIOT H. GREENE, ROBERT W. JOHNSON,
15     ALAN H. RAPHAEL, JEFFREY RUTHIZER, BILL
       THOMAS, JOANN KESSLER, MARION PRESTON,
16
                          Defendants.
17     - - - - - - - - - - - - - - - - - - - x
18
                          March 27, 2019
19                        10:13 a.m.
20                        11 Times Square
                          New York, New York
21
22
23           DEPOSITION OF RORY ALBERT
24
25
```

Rory Albert

1                    Rory Albert

2    every time they asked their expert how much

3    patience to have, our expert told us a

4    little bit more.  So it doesn't say that.

5         Q    In the second-to-last paragraph

6    of that email, you wrote, "We shouldn't

7    give them information that makes us look

8    bad."

9              Do you see that?

10        A    Yeah.  Yeah, I do see that.

11        Q    Do you think it is consistent

12   with the fiduciary duties that plan counsel

13   and trustees have to plan participants

14   having an attitude that we shouldn't give

15   plan participants information that makes

16   the trustees look bad?

17             MR. RUMELD:  Object to the form.

18        A    I think this entire email can be

19   explained in many ways, by my feeling that

20   by this time there was going to be a

21   lawsuit.  And my counsel would be that

22   knowing in my own view and being there

23   realtime, that these trustees were the most

24   prudent set of trustees that I've ever

25   seen, that a lawsuit, at this particular

**SUPREME COURT, APPELLATE DIVISION**
**FIRST JUDICIAL DEPARTMENT**
**ATTORNEY GRIEVANCE COMMITTEES**
**61 BROADWAY, 2ND FLOOR**
**NEW YORK, NEW YORK  10006**
**(212) 401-0800**

**Jorge Dopico**
**Chief Attorney**

DATE: _7/17/2020_

**ATTORNEY COMPLAINED OF:**

Mr.( )  Ms.( )  Mrs.( )  _RuMeld    Myron    D._
                            Last            First      Initial

Address: _c/o Proskauer Rose, 11 Times Sq._  Apt. No. _____
_New York,_         _NY_        _10036_
        City              State         Zip Code

Telephone: Home: ( — ) uNKNowN    Office: (212) 969-3021

Cell : ( — ) uN KNowN    Email Address: _MRUMELD @_
_Proskauer.CoM_

**YOUR NAME/INFORMATION (Complainant):**

Mr.( )  Ms.( )  Mrs.( )  _Stoner    Martin    D._
                            Last            First      Initial

Address: _900 W. End Avenue_    Apt. No. ___
_New York, NY_        _10025_
        City              State         Zip Code

Telephone: Home: (212) 866-5447    Office: ( — )  n/a

Cell : ( — )  n/a    Email Address: _jilMar 10025 @_
_yahoo.com_

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**Complaints to other agencies:**

Have you filed a complaint concerning this matter with another Bar Association, District Attorney's Office or any other agency:

If so, name of agency: _____

Action taken by agency: _____

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**Court action against attorney complained of:**

Have you brought a civil or criminal action against this attorney? _no_

If so, name of court: _____  Index No. _____

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

1.    **PLEASE SEND THE ORIGINAL PLUS ONE COPY OF YOUR COMPLAINT.  PLEASE INCLUDE TWO COPIES OF YOUR SUPPORTING DOCUMENTS.  DO NOT send your original supporting documents because we will not return them.**

2.    **You may copy the enclosed form as many times as you wish, or you may find it online.  Our website link is:**
        **http://www.nycourts.gov/courts/AD1/Committees&Programs/DDC/index.shtml**

3.      You may also state your allegations in a letter. We request separate complaint forms/letters for each attorney in question.

### PLEASE PRINT LEGIBLY OR TYPE IN ENGLISH

**Start from the beginning and be sure to tell us why you went to the attorney, when you had contact with the attorney, what happened each time you contacted the attorney, and what it was that the attorney did wrong. Please attach <u>copies</u> of all papers that you received from the attorney, if any, including a copy of <u>ANY RETAINER AGREEMENT</u> that you may have signed. <u>DO NOT FORGET TO SEND AN ORIGINAL AND ONE COPY OF THIS COMPLAINT AND ENCLOSURES.</u>**

Please See attached

_____

**UNSIGNED COMPLAINTS WILL NOT BE PROCESSED.**

Martin Stoner
_____
**Signature**

This is a complaint about attorney Myron Rumeld, a partner at Proskauer Rose who currently represents the Trustees of the American Federation of Musicians & Employers Pension Fund ("AFM-EPF") in a class action litigation, *Snitzer v. Board of Trustees of the American Federation of Musicians & Employers Pension Fund*, 2017-cv-5361 (S.D.N.Y.). Simultaneously with Proskauer's representation of the Defendants, another Proskauer partner, Robert Projansky, is Plan Counsel for the Pension Plan, which has a fiduciary duty of loyalty to Class members first under ERISA. This seems like an obvious conflict of interest for the firm Proskauer Rose and its attorneys to simultaneously represent the Trustees' fiduciary interests to members of the class, while at the same time representing the Trustees as Defendants against allegations of a breach of fiduciary duty brought by members of the Class. I believe therefore, that Mr. Rumeld and the Proskauer firm have engaged in conduct whcih violates Rule 1.7 of the ABA Rules of Professional Conduct, i.e., "Conflict of Interest".

 (1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

While Mr. Rumeld may assert that he has a waiver from his clients on this alleged conflict, that waiver is suspect, because the client Trustees have a conflicting obligation to represent members of the class first , i.e., the Plaintiffs in the class action lawsuit, commenced by two Class Representatives. For this reason, Proskauer should be forced to decide which side it is on, because it certainly cannot ethically represent both sides in this litigation. And Mr. Rumfld should be sanctioned for his breach of Rule 1.7

Additionally, Rule 1.8 also imposes some restrictions on Mr. Rumeld and Proskauer:

h) A lawyer shall not:

(1) make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement; or

> (2) settle a claim or potential claim for such liability with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection therewith.

Under the proposed non-opt out settlement, Mr. Rumeld is seeking a release of all claims against the trustees, their assigns, and representatives, including a release against Proskauer. However, in a non-opt out settlement, this would prevent me, as a class member, represented by Plan Counsel from Proskauer, from seeking litigation to hold Proskauer liable for its treacherous conduct. I don't want Proskauer seeking to limit my future rights to litigate against them while they also represent the interests of the class and the Plan as class counsel. That is a clear conflict of interest.

Separately, I have previously alleged in a complaint to the Grievance Committee for the Appellate Department, First Division, that another former Proskauer partner, Rory Albert, was engaged in wrongdoing as plan counsel when he advised the Trustees to withhold information about the Plan's dire financial status from Plan Participants. Defendant Trustees then published articles in the union newspapers and Pension Notes that misstated the facts about the funded status of the Plan based upon Mr. Albert's advice. Meanwhile, Mr. Albert had a duty to be loyal to members of the class first and not loyal to Proskauer, which was defending the Trustees in litigation.

Mr. Rumeld also failed to disclose Mr. Albert's wrongdoing to the Court and class members as required under ERISA and in violation of Rule 3.3(b):

> A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

Mr. Albert, Mr. Rumeld, and the Proskauer firm, therefore, should all be held accountable by the Grievance Committee for their blatant misconduct and class members should not be prevented under the settlement from suing Mr. Rumeld, Mr. Albert, and Proskauer for damages.

Sincerely,

Martin Stoner

**SUPREME COURT, APPELLATE DIVISION**
**FIRST JUDICIAL DEPARTMENT**
**ATTORNEY GRIEVANCE COMMITTEES**
**61 BROADWAY, 2ND FLOOR**
**NEW YORK, NEW YORK 10006**
**(212) 401-0800**

**Jorge Dopico**
**Chief Attorney**

DATE: _July 16, 2020_

<u>**ATTORNEY COMPLAINED OF:**</u>

Mr.( ) Ms.( ) Mrs.( ) _Albert_ _Rory_ ABA Registration #:
                  **Last**         **First**       **Initial** _1079995_

Address: _1 Versailles Ct._      Apt. No. _—_
      _Glen Head,_    _NY_    _11545_
            **City**           **State**        **Zip Code**

Telephone: Home: ( _—_ ) _UNKNOWN_    Office: ( _—_ ) _UNKNOWN_

          Cell : ( _—_ ) _UNKNOWN_    Email Address: _UNKNOWN_

<u>**YOUR NAME/INFORMATION (Complainant):**</u>

Mr.(X) Ms.( ) Mrs.( ) _Stoner_ _Martin_ _D._
                  **Last**         **First**       **Initial**

Address: _900 West End Ave._ Apt. No. _7F_
      _New York_    _NY_    _10025_
            **City**           **State**        **Zip Code**

Telephone: Home: ( _212_ ) _866-5447_    Office: ( _—_ ) _n/a_

          Cell : ( _—_ ) _n/a_    Email Address: _jilMar_10025@_
                                                  _yahoo.com_

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**Complaints to other agencies:**</u>

Have you filed a complaint concerning this matter with another Bar Association, District Attorney's Office or any other agency:

If so, name of agency: _____

Action taken by agency: _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**Court action against attorney complained of:**</u>

Have you brought a civil or criminal action against this attorney? _no_

If so, name of court: _____ Index No. _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.    **PLEASE SEND THE ORIGINAL PLUS ONE COPY OF YOUR COMPLAINT. PLEASE INCLUDE TWO COPIES OF YOUR SUPPORTING DOCUMENTS. DO NOT send your original supporting documents because we will not return them.**

2.    **You may copy the enclosed form as many times as you wish, or you may find it online. Our website link is:**
        **http://www.nycourts.gov/courts/AD1/Committees&Programs/DDC/index.shtml**

3.     You may also state your allegations in a letter.  We request separate complaint forms/letters for each
        attorney in question.

### PLEASE PRINT LEGIBLY OR TYPE IN ENGLISH

Start from the beginning and be sure to tell us why you went to the attorney, when you had contact with the
attorney, what happened each time you contacted the attorney, and what it was that the attorney did wrong.  Please
attach <u>copies</u> of all papers that you received from the attorney, if any, including a copy of <u>ANY RETAINER
AGREEMENT</u> that you may have signed.  <u>DO NOT FORGET TO SEND AN  ORIGINAL AND ONE COPY OF THIS
COMPLAINT AND ENCLOSURES.</u>

See attached letter re:
"Smitzer V. Board of Trustees of the
American Federation of Musicians Pension Fund
17-cv-5361 (VEC) Southern District of N.Y."

Rony Albert used to work at Proskaver Rose,
11 Times Square, New York, NY 10036
(they can provide his current whereabouts)

UNSIGNED COMPLAINTS WILL NOT BE PROCESSED.

_____
**Signature**

I am alleging that former Plan Counsel for the American Federation of Musician and Employers Pension Fund ("AFM-EPF"), Rory Albert, engaged in fraudulent conduct when he urged the Defendant Trustees of the Pension Plan to misrepresent the full, accurate, and undistorted financial information about the Pension Plan to Plan participants in violation of ERISA. This occurred on a number of occasions including specifically "Roadshows" in 2017 in New York City and in AFM and Union Publications like "Allegro", "International Musician Magazine", and "Pension Notes". The contemporaneous "Roadshow" notes along with the four paragraphs the Court recently released from the redacted Amended Complaint (attached herewith) clearly demonstrate that the Trustees used Plan Counsel's misguided advice and gave evasive and untruthful answers to Plan participants both in official documents and in in-person meetings with Plan Participants. As such,  Mr. Rory Albert participated in a conspiracy to commit fraud. Since in New York State there is no statute of limitation on attorney grievances, therefore, Mr. Albert also violated Rule 4.3:

> *Transactions With Persons Other Than Clients*
> In the course of representing a client a lawyer shall not knowingly:
> (a) make a false statement of material fact or law to a third person; or
> (b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

Moreover, attorney Rory Albert was conflicted when he was plan counsel for the American Federation of Musicians and Employers Pension Fund while also the partner of Proskauer's litigation counsel, Myron Rumfeld, in the Snitzer litigation. Because Mr. Albert was fired from the Plan two weeks after he gave a deposition in the Snitzer case and then was separated from Proskauer at the very same time, Proskauer had every reason to try to block from both the Court and the Plan Participants evidence of Rory Albert's misconduct. Thus, Proskauer attorney's, Myron Rumfeld and Deidre Grossman, requested and received permission from the Court to seal Mr. Albert's deposition as well as his personal notes of Trustee Board meetings and to redact any references to him in the Amended Complaint. It was only recently in July that I got the Court to release much of the sealed discovery including Mr. Albert's deposition, but not his notes, which are still sealed. Since Mr. Albert was replaced as plan counsel by another Proskauer partner, Mr. Robert Projansky, there is still a conflict of interest ongoing, since Plan Counsel cannot have primary loyalty both to the Pension Plan Trustees while

at the same time owe loyalty to Proskauer Rose in its litigation response to a class action complaint. ERISA says primary loyalty of Plan Trustees and their representatives must be to the Plan and its participants, not to a law firm. This creates a conflict of interest that has existed throughout the Snitzer litigation.

Myron Rumeld of Proskauer Rose also violated the ABA Rules of Professional Conduct, by failing to inform the Court that Rory Judd Albert of Proskauer Rose had engaged in fraudulent and criminal conduct when he was Plan Counsel, for which he was fired from the Plan and separated from the firm. See ABA Rules of Professional Conduct, Rule 3.3 (b):

> A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

*Martin Stone*

## FOUR UNSEALED PARAGRAPHS FROM THE *SNITZER* AMENDED COMPLAINT

¶14. As alleged herein, Plan records show that Defendants repeatedly recognized they lacked sufficient and effective standards and information to monitor and evaluate active manager performance, as the Fund and its active managers continued to underperform the benchmark. In fact, in light of the pervasive, abysmal active manager underperformance, Plan counsel urged → *Rory Albert* Defendants against disclosing the full Meketa reports to Plan participants because, among other reasons, the reports contain "damaging information" that "looks bad" reflecting that "[o]f the dozen or so active managers retained by the Fund, 10 have provided lackluster--or worse than lackluster--returns over more lengthy periods of time, and the average 5- and 10- (and in some cases 3-) year portrayals look worse…"

¶96. Meketa, likewise, had moved in the opposite direction of Defendants with emerging markets equities in the discretionary portfolios Meketa managed for clients. At a retreat in February 2016, Meketa reported to Defendants that its discretionary portfolios were completely out of emerging markets equities unless constrained to maintain such an allocation. Meketa also confirmed the significant downside risk and limited upside potential in the then-current environment, and observed that a change in the Fund's asset allocation posed the risk of trying to time the market twice. Meketa recommended de-risking of the Fund's allocation by 15% by reducing domestic equities by 3%, reducing developed international equities by 4%, reducing emerging markets equities by 6% and reducing natural resources by 2%. This would reduce the expected long-term return of the Fund to 7.8%. The Investment Committee postponed a decision regarding de-risking, and ultimately determined not to do so. In addition, Plan records show that the Investment Committee recognized it still lacked effective standards and methods to evaluate active manager performance. Over five years in to the active manager programs, Plan counsel, who had participated in the various deliberations of Defendants and the drafting of related meeting minutes, indicated that the Investment Committee still had no standard for how long the Fund should be patient with underperforming managers.

¶121. In February 2017, as Defendants considered what information to provide in response to the stunned participants after the Plan's disclosure of the Fund's emergency circumstances, *Rory Albert* → Plan counsel urged Defendants to limit the information provided concerning the bad performance of the Fund and its stable of active managers. Plan counsel wrote: "of the dozen or so active managers retained by the Fund, 10 have provided lackluster – or worse than lackluster - returns over more lengthy periods of time and the 'average 5- and 10- (and in some cases even 3-) year portrayals look worse, at least to my eye, than the single year returns….' I would, therefore, consider using the single year returns only." Similarly, Plan counsel wrote: "…I would at least delete the 'manager to peer universe rankings' entirely. First, I am not sure the peer universe replicates closely the Fund's actual peers. Second, purely from an optics perspective, and you don't need a 'trained eye' to come to the conclusion or very much analysis of the Fund's dozen or so active managers, 10 of them reflect 50th percentile rankings or worse when compared to 56 peers (and a few in the 90th percentile) during certain time periods."

¶149. As Defendants were preparing the information that would be provided to the participants in the roadshows, Plan counsel urged Defendants to provide enough information for participants to "chew on" but to "omit data that does not cast the Fund in the best light." Similarly, Plan counsel noted that providing Meketa's full reports for different periods of time to participants would provide reports "which may very well have other information that we may not want to reveal." Further, as alleged above, the full reports would show the abysmal pervasive underperformance by the active managers

Road Show #1

February 22, 2017
NY Pension Meeting

The Presentation:

*[The AFM-EPF Pension Fund has eight Union and eight Employer Trustees. At this meeting there were three from the Union side and two from the Employer side, plus legal and investment consultants and two staff.]*

Ray Hair (Union side - Trustee Co-Chair, AFM President)
Tino Gagliardi (Union side - NY Local 802 President)
Gary Matts (Union side - Chicago Local 10-208 former President)
Christopher Brockmeyer (Employer side - Trustee Co-Chair, Broadway League)
Jeffrey Ruthizer (Employer side)
Will Luebking (Director of Finance)
Maureen Kilkelly (Fund Administrator)
Alan Spatrick (Meketa Investment Group - Investment Consultant)
Kevin Camp (Milliman - Actuarial Consultant)
Robert Projansky (lawyer from Proskauer - Employer side)
Janie Rachelson (lawyer from Cohen, Weiss & Simon - Union side)

*[This was the initial meeting of a five-city "road show" by the Trustees after participants and beneficiaries received the December 2016 letter alerting us, for the first time, that the Fund could be in critical and declining status as early as 2017. There was considerable tension in the room — the presentation portion was a surprise to us, and more than an hour long; we were never told that this meeting would include a presentation. "They're running out the clock" was heard several times. At the beginning of the presentation the membership was admonished by Tino Gagliardi that the Trustees would not answer questions during the presentation. The meeting room was filled to capacity with overflow outside.]*

Tino Gagliardi was first to speak. He said the AFM had the highest returns of all multiemployer pension funds.  ḷ i̇ α ṛ ḷ
He said the PowerPoint presentation would be posted on afm-epf.org. *[This was posted on April 14, 2017.]*

Then Christopher Brockmeyer spoke. Perhaps in defense of the backlash against Maureen Klikelly for poor management, he pointed out that it is the Trustees ONLY who make financial decisions. Not financial managers, not anyone from the administration side. He said Maureen Klikelly does not make decisions for the Fund. Ms. Kilkelly was not sitting on the panel, and did not speak.

Kevin Camp, the Actuary, said the Fund had been well-funded for 40 years: $1.7 billion in assets, $1.3 billion in liabilities. Now, he said, the assets are the same, but the

liabilities are $2.9 billion.

Alan Spatrick, the investment advisor, said the AFM Pension Fund lost only 29% in the 2008-2009 crash, while index funds lost 38%. He said we needed a 41% return to get back the losses.

He reported that the Fund had fired eight investment managers. He said the Fund had revised its investment approach in 2015: it entered emerging markets, added some index funds, increased its equities, and reduced its fixed instruments. He showed a slide with a graph of small color blocks, indicating "broad diversification." *[He didn't say why it took until as late as 2015 to do so.]*

He said the "numbers" for calendar year 2016 were "good," but that they were "bad" for the fiscal year ending March 31st.

*[At this point there was an outburst from the members: Why the huge difference in status between calendar and fiscal years? It's only 3 months! And how could the investments lose money in a boom year?]*

Spatrick went on to the next slide without comment. It showed that the Fund has one or two managers for each asset class, and named the companies involved.

He reported that the Fund pays .54% in fees for active funds, which is "average," and that to reduce expenses the Fund has moved across 34th street ($600,000 rent reduction), and saved $800,000 in audit fees (which totaled $1.5 million).

He reported that staff costs had increased 2.16%.

Kevin Camp said that negative cash flow is due to a shift in population - more benefits are being paid out as beneficiaries age. He said that this year, so far, there has been an uptick in contributions and in investment performance, but that people are living longer, thus increasing the Fund's liabilities.

He said that if the actuary certifies the Fund as "critical and declining," it will "allow Trustees additional options and tools" as to what to do with the Fund. He did not specify what those options would be.

## The Q & A

Q: In 2015, Tino and Ray said we had solvency until 2047. But the 2016 letter said "critical and declining" was a possibility. With all your knowledge of funding mathematics, how could you be so off the mark?

A: You're probably a little bit mixed up on the dates. *[A long confusing speech...]* ... we reported at that time that MPRA had been drafted ... whether we would be implementing or looking at MPRA ... but the lookout period ... in 2015 no insolvency was projected ...

Q: How are you so off?
A: Actuarial projections are really doing the impossible.

Q: When will we know what will happen?
A: The actuarial report will be out in June.

Q: Can you share what steps will be taken?
A: We will try everything we can think of. We will bargain for more money from employers. Options have been passed into law. *[MPRA?!]*

Q: So what ARE the options for improving Fund performance if we reach "critical and declining" status?
A: Benefit reductions.
Q: Any other options?
A: Not at the moment.

Q: Why the sudden, unexpected decline in Fund status? Previous "red zone" letters said no insolvency is projected through 2047.
A. Actuarial projections extend decades, and can be dramatic in one year of bad investment returns and increased benefit projections.

Q: In 2008, assets declined by $800 million. Did the Fund hold onto those assets, and if so, why didn't they come back? If they were sold at the bottom, why??
A: *[a lengthy discussion of "realized" versus "real" losses, which I didn't understand]*

Q: I understand there are certain legal options to reduce our benefits. Can you tell us what they are?
A: The Multiemployer Pension Reform Act. There's an application to the government. Until it's created, we don't know. Benefits are reduced based on equitable factors. The application is on the IRS website. The goal of MPRA is to avoid the harshest of cuts. The more heavily subsidized benefits (those based on the higher multipliers) could be reduced more.

Q: When we apply for our pension, is payment individualized or according to group?
A: People are grouped according to certain classifications; everyone in the *[each]* group is treated the same.

Q: Are the Union Trustees perhaps too busy with other obligations to pay close enough attention to the Fund? Perhaps they are not the optimal people to be running such a complicated enterprise.
A: Trustees are volunteers, not paid.

Suggestion from a participant: Simplify the Fund's investments.

Suggestion from a participant: Hire managers familiar with the arts, like Berkshire Hathaway.

Suggestion from a participant: Transparency.

Response: "We will discuss it at our next meeting" *[with a grin at the panelist next to him]*

And then time was up.

*This is a summary of notes taken from the meeting and is provided for informational purposes only.*