USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/06/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDREW SNITZER and PAUL LIVANT, individually and as representatives of a class of similarly situated persons, on behalf of the American Federation of Musicians and Employers' Pension Plan,

　　　　　　　　　　　　　　　　Plaintiffs,

- against -

THE BOARD OF TRUSTEES OF THE AMERICAN FEDERATION OF MUSICIANS AND EMPLOYERS' PENSION FUND, THE INVESTMENT COMMITTEE OF THE BOARD OF TRUSTEES OF THE AMERICAN FEDERATION OF MUSICIANS AND EMPLOYERS' PENSION FUND, RAYMOND M. HAIR, JR., AUGUSTINO GAGLIARDI, GARY MATTS, WILLIAM MORIARITY, BRIAN F. ROOD, LAURA ROSS, VINCE TROMBETTA, PHILLIP E. YAO, CHRISTOPHER J.G. BROCKMEYER, MICHAEL DEMARTINI, ELLIOT H. GREENE, ROBERT W. JOHNSON, ALAN H. RAPHAEL, JEFFREY RUTHIZER, BILL THOMAS, JOANN KESSLER, MARION PRESTON,

　　　　　　　　　　　　　　　　Defendants.

17-CV-5361 (VEC)

**ORDER**

---

VALERIE CAPRONI, United States District Judge:

　　WHEREAS on August 26, 2020, a Fairness Hearing was held with regard to the proposed Settlement of this matter;

　　WHEREAS on August 28, 2020, this Court issued a Final Approval of the Settlement Agreement; Final Judgment; Award of Attorneys' Fees, Expenses, and Service Awards; and Order of Dismissal with Prejudice ("Judgment"), Dkt. 205;

　　WHEREAS the Judgment awarded $713,204.45 to Class Counsel as reimbursement of reasonable expenses to be deducted from the Gross Settlement Amount, Dkt. 205 ¶ 16;

WHEREAS on September 4, 2020, Class Counsel filed a motion requesting the Court amend the final order to include an additional $91,925.62 in expenses that had not been included but also had not been expressly disallowed, Dkt. 208;

WHEREAS on September 9, 2020, the Ad Hoc Coalition of Objectors ("Ad Hoc Objectors") filed a new motion for an award of attorneys' fees ("New Motion"), Dkt. 212;

WHEREAS on September 14, 2020, Class Counsel responded to the New Motion, Dkt. 216, and on September 16, 2020, the Ad Hoc Objectors replied, Dkt. 217;

WHEREAS on September 15, 2020, Objector Martin Stoner, proceeding *pro se*, requested the Judgment be amended to include various provisions, Dkt. 220; and

WHEREAS on September 24, 2020, Class Counsel and Defendants responded to Mr. Stoner's request, Dkts. 222, 223;

IT IS HEREBY ORDERED that Class Counsel's motion to amend the Judgment to include additional expenses is GRANTED. The legal standard governing motions for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners*, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). The Court unintentionally failed to include certain allowed expenses in the amount to be paid to Class Counsel. Dkts. 169, 168-3. An Amended Judgment will be entered that changes the second sentence of paragraph 16 as follows: "Having considered all of those objections, Class Counsel are hereby awarded (i) attorneys' fees in the amount of $7,786,500 (29% of the Gross Settlement Amount) plus (ii) reimbursement of their reasonable expenses in the amount of $805,130.07, to be deducted from the Gross Settlement Amount."

IT IS FURTHER ORDERED that the New Motion for attorneys' fees is DENIED. The New Motion is properly characterized as a motion for reconsideration under Federal Rule of

Civil Procedure 59(e) and Local Civil Rule 6.3.[1]  "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'… ." *Analytical Surveys, Inc.*, 684 F.3d at 52 (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).  This is an attempted second bite by the Ad Hoc Objectors.  In a letter dated August 19, 2020, counsel for the Ad Hoc Objectors, Mr. Walfish, first made a request for attorneys' fees.  *See* Ex. 2, Order, Dkt. 204 at 5.  The request for fees was not supported by any citation to legal authority, and Mr. Walfish provided no billing records or other evidence documenting the number of hours expended.  At the Fairness Hearing, Mr. Walfish reiterated his fee request and discussed it with the Court.  Fairness Hearing Tr., Dkt. 218 at 44–46.  The Court denied the request.  *Id.* at 92–93; Judgment, Dkt. 205 ¶ 17.  The Ad Hoc Objectors' New Motion does nothing more than attempt to relitigate their prior request for fees, an issue already considered and decided by the Court.

But even if the Ad Hoc Objectors' New Motion were procedurally proper, it would be denied on the merits.  In the initial request for an award of attorneys' fees, Mr. Walfish reported having received a $15,000 retainer intended to cover the first 30 hours of work done on behalf of the Ad Hoc Objectors.  Ex. 2, Order, Dkt. 204 at 5.  He requested a total of $132,975 in attorneys' fees to cover 197 hours of work, at $675 an hour.[2]  *Id.*  The New Motion for attorneys'

---

[1] Counsel is correct that fee applications may be made after a fairness hearing and resulting judgment. Reply, Dkt. 217 at 1–2; *see also Park v. Thomson Corp.*, 633 F. Supp. 2d 8, 10 (S.D.N.Y. 2009).  The timing of the Ad Hoc Objectors' New Motion is not what is at issue.  Counsel's New Motion is his second fee request; this Court already denied his first fee request, both at the Fairness Hearing and in the Judgment.  Fairness Hearing Tr., Dkt. 218 at 92–93; Judgment, Dkt. 205 ¶ 17.  The Objectors made a strategic decision to move for fees prior to the Fairness Hearing.  That was a perfectly reasonable decision, but having had their motion denied, they do not get a mulligan.  In short, the New Motion must be considered a motion for reconsideration.

[2] Counsel represented that if his motion were granted, he would return the $15,000 retainer to the persons who hired him.  Ex. 2, Order, Dkt. 204 at 5.

3

fees revised downward the amount requested to $44,325 to be paid from the fees awarded to Class Counsel.  Mem. of Law, Dkt. 214 at 7.

The Court continues to view an award of attorneys' fees to the Ad Hoc Objectors to be unwarranted as their positive contribution to this matter was minimal.  The Ad Hoc Objectors argued for changes to the terms of the release that was contained in the proposed Settlement Agreement.  Their argument ultimately led to minor revisions to the text of the Settlement Agreement.³  The Ad Hoc Objectors contend that the changes made clarified that the release only covered claims made in the litigation and not new claims, and, therefore, that Mr. Walfish's legal work led to a materially better Settlement.  Objection, Dkt. 186 at 21–22.  The Court disagrees.  Even without the change, the scope of the release was clear.⁴  While edits were made – and one

---

³  The Court need not resolve whether the edits ultimately made could have been accomplished through correspondence between counsel for the Ad Hoc Objectors and the parties, Response, Dkt. 216 at 6 n.2, 8, but the Court suspects that counsel could have resolved the issue amongst themselves without requiring intervention by the Court.

⁴  *Compare* Initial Proposed Settlement Agreement, Dkt. 139-1 ¶ 2.22.1 (defining released claims as claims that "were asserted in the Complaint or Amended Complaint or that arise out of, relate in any way to, are based on, or have any connection with any of the factual or legal allegations asserted in the Complaint or Amended Complaint, including, but not limited to, those that arise out of, relate to, are based on, or have any connection with decisions made, prior to the OCIO Management Date, regarding (i) the Plan's asset allocation and the selection (including of the Plan's OCIO), retention, monitoring, oversight, compensation, fees, or performance of the Plan's investments or its investment managers; (ii) investment-related fees, costs, or expenses charged to, paid, or reimbursed by the Plan; (iii) disclosures or failures to disclose information regarding the Plan's investments and/or funding; or (iv) any alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties or prohibited transactions in connection with (i) through (iii) above;") *with* Proposed Judgment, Dkt. 195-1 ¶ 13 ("Consistent with the condition imposed by the Independent Settlement Evaluation Fiduciary regarding the scope of the release, the Court hereby incorporates the explanation of the release offered by Defendants in ECF# 189 and agrees that the release is limited to the period before the OCIO Management Date with respect to decisions regarding (i) the Plan's asset allocation and the selection (including of the Plan's OCIO), retention, monitoring, oversight, compensation, fees, or performance of the Plan's investments or its investment managers; (ii) investment-related fees, costs, or expenses charged to, paid, or reimbursed by the Plan; (iii) disclosures or failures to disclose information regarding the Plan's investments and/or funding; or (iv) any alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties or prohibited transactions in connection with (i) through (iii) above.") *and* Judgment, Dkt. 205 ¶ 13 ("For the avoidance of doubt about the scope of the release, the Court hereby finds that the release is limited to the period before the OCIO Management Date with respect to decisions regarding (i) the Plan's asset allocation, investment return and risk objectives, and the selection (including of the Plan's OCIO), retention, monitoring, oversight, compensation, fees, or performance of the Plan's investments or its investment managers; (ii) investment-related fees, costs, or expenses charged to, paid, or reimbursed by the Plan; (iii) disclosures or failures to disclose information regarding the Plan's investments and/or funding; or (iv) any alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties or prohibited transactions in connection with (i) through (iii) above.").

could argue that the ultimate language as it appears in the Judgment is better written than the originally agreed-upon language – the changes are in the nature of "happy to glad" edits.

The Ad Hoc Objectors assert that attorneys' fees are also warranted because the Court recommended the Fund consider adopting certain points the Ad Hoc Objectors argued the absence of which justified denying approval of the Settlement.[5] But there is a huge difference between recommending to a Defendant that it reconsider deal points to which it had refused to agree and hinging approval of a Settlement on the Defendant adopting those deal points. The Ad Hoc Objectors argued that the Settlement should not be approved because of the absence of certain governance procedures. That entire argument, as to which their written submissions spilled much ink, rested on a fundamental miscalculation of the strength of Plaintiffs' case and, by extension, Plaintiffs' negotiating leverage. Mr. Walfish is correct that the Court recommended during the Fairness Hearing that the Fund reconsider adopting some of the governance provisions advocated by the Ad Hoc Objectors.[6] Mem. of Law, Dkt. 214 at 3–4. But, as Mr. Walfish acknowledges, those recommendations are non-binding, *id.* at 4 n.3, and were not included in the text of the Judgment. Plaintiffs simply did not have the negotiating power to insist that these provisions be included in the Agreement, and the Court's assessment was that the Settlement was fair without regard to those changes to the governance provisions.

---

[5] Such recommendations by the Court included disclosing the credentials of the Union trustees before and not after their appointment; lengthening the Neutral Independent Fiduciary's ("NIF") term; and granting the NIF with the power to approve board meeting minutes. Mem. of Law, Dkt. 214 at 3–4 (citing the Court's recommendations from the Fairness Hearing transcript and noting that such recommendations were also included in the Ad Hoc Objectors' filings).

[6] It should be noted that the provisions advocated by the Ad Hoc Objectors were not new or novel governance provisions that had not occurred to Class Counsel. Instead, at least some were provisions that Class Counsel had proposed but was unable to obtain due to resistance from the Defendants. *See, e.g.*, Fairness Hearing Tr., Dkt. 218 at 77–78 (describing negotiations between Class Counsel and the Defendants over the length of the NIF's term); *see generally id.* at 15–18; 63:13-20 (noting the give and take between Class Counsel and the Defendants in negotiations over the governance provisions).

Finally, the Ad Hoc Objectors also argued that the Neutral Independent Fiduciary ("NIF") ought to be given a unit vote. But that suggestion, which also occupied much of the Ad Hoc Objectors' argument, was based on a flawed understanding of the dynamics of a Taft-Hartley Benefit Fund. As both Defendants and Class Counsel explained at the Fairness Hearing, having an immediate neutral arbitrator (which would, in effect, be the result of giving the NIF a unit vote) would impede the deliberative consensus-building process that otherwise exists between union and employer trustees; that would likely be a net negative for the Fund. Fairness Hearing Tr., Dkt. 218 at 67–69 (Defendants' explanation); *id.* at 69–70 (Class Counsel's agreement with Defendants' explanation). While the Court appreciates the Ad Hoc Objectors' advocacy, their contribution to the ultimate resolution does not warrant an award of attorneys' fees.

IT IS FURTHER ORDERED that Mr. Stoner's request to amend the Judgment is DENIED. Mr. Stoner's request is treated as a motion for reconsideration under Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3. Mr. Stoner does not meet the strict standard of motions for reconsideration. First, he claims that he was not given the opportunity to "discuss any specific relevant facts or evidence that [he] personally had submitted to the Court in [his] objections of deceitful and fraudulent conduct by the trustees and their service providers … ." Dkt. 220. As Mr. Stoner recognizes, he had already submitted the alleged facts and evidence. A motion for reconsideration "is not a vehicle for relitigating old issues." *Analytical Surveys, Inc.*, 684 F.3d at 52. Second, Mr. Stoner requests that the Court's recommendations offered during the Fairness Hearing be incorporated into the Judgment itself. Dkt. 220. Mr. Stoner provides no legal authority for this request, and as the Court has pointed out *supra*, the Plaintiffs were not in a position to insist that such provisions be adopted by the Fund. While the Court encouraged the Fund to consider voluntarily adopting those suggestions, the Fund is free to ignore the Court's

suggestions. That being the case, the Court sees no basis for including its suggestions in the Judgment. Finally, Mr. Stoner objects to being given only five minutes to present his oral arguments at the Fairness Hearing. Mr. Stoner did not object at the Fairness Hearing to the time he was given, nor did he ask for more time. He made a complete and cogent (albeit ultimately not persuasive) presentation and was not cut off by the Court. Fairness Hearing Tr., Dkt. 218 at 53–57. Accordingly, it is hard to see how he was prejudiced by being given a limited amount of time orally to argue points he had previously made in voluminous written submissions.

For the reasons set forth in this order, Class Counsel's motion for reconsideration is GRANTED, the Ad Hoc Objectors' motion for reconsideration is DENIED, and Mr. Stoner's motion for reconsideration is DENIED.

The Clerk of Court is respectfully directed to terminate the open motions at docket entries 208 and 212.

**SO ORDERED.**

Date: October 6, 2020
New York, New York

**VALERIE CAPRONI**
**United States District Judge**